## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **HOYA CORPORATION and HOYA SURGICAL OPTICS, INC.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LLC,**<br><br>    **Defendants.** | **Civil Action No.  3:20-cv-03629**<br><br><br>**JURY TRIAL** |

## ORIGINAL COMPLAINT

Plaintiffs HOYA Corporation and HOYA Surgical Optics, Inc. (collectively "HOYA" or "Plaintiffs") file this Original Complaint against Defendants Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, LLC (collectively "Alcon" or "Defendants") and hereby allege as follows:

## NATURE OF ACTION

1.      HOYA alleges that Alcon has infringed and continues to infringe at least one claim of U.S. Patent Nos. 9,901,442 ("the '442 Patent"); 9,980,811 ("the '811 Patent"); 9,655,718 ("the '718 Patent"); 9,877,826 ("the '826 Patent"); 9,907,647 ("the '647 Patent"); and 10,039,668 ("the '668 Patent") (collectively, "Patents-in-Suit").

2.      HOYA has been at the forefront of intraocular lens ("IOL") technology since 1987, when it produced its first IOL.  An IOL is a synthetic lens implanted in the eye as part of a treatment for cataracts.  A cataract is the clouding of the eye's natural lens and is the leading cause of vision loss for people over the age of 40.

1

3.      Cataract surgery is one of the most commonly conducted surgical procedures in the United States, and in the world, and it is essential to restoring vision and improving the quality of life of patients suffering from cataracts.   In cataract surgery, an IOL is implanted inside the anterior segment of the eye once the eye's natural lens has been removed.   As the number of cataract patients has increased with time, there has been an increased need for improved technologies that allow surgeons to safely and effectively treat these patients.

4.      For several decades, HOYA has been a leading developer of IOL technology. HOYA's IOLs and IOL insertion devices dramatically improved cataract surgery because they allow surgeons greater control and precision when implanting the IOL, eliminate the need for manual folding of the lens, and reduce the risk of infection as a result of the device's sterile packaging.   HOYA has secured numerous patents on its revolutionary inventions in this technology space, including the Patents-in-Suit, which cover methods and apparatuses for IOL insertion.

5.      Alcon infringes the Patents-in-Suit through the manufacture, use, sale, offer for sale, and/or import of at least Alcon's UltraSert Preloaded Delivery System ("UltraSert"). Alcon's UltraSert is a disposable IOL injector with a preloaded intraocular lens.   Alcon has marketed and sold UltraSert to others in the medical industry, including hospitals, medical centers, clinicians, doctors, nurse practitioners, and care providers, with knowledge of HOYA's intellectual property asserted herein.   As a result of such actions, Alcon infringes, contributes to the infringement of, and/or induces the infringement of each of the Patents-in-Suit.

## PARTIES

6.     Plaintiff HOYA Corporation is a corporation organized under the laws of Japan with its principal place of business at 20F Nittochi Nishishinjuku Building, 6-10-1 Nishi-Shinjuku, Shinjuku-ku, Tokyo 160-8347 Japan.

7.     Plaintiff HOYA Surgical Optics, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 15335 Fairfield Ranch Road, Suite 250, Chino Hills, CA 91709.  HOYA Surgical Optics, Inc. is a subsidiary of HOYA Corporation.

8.     HOYA Corporation owns a number of subsidiaries incorporated and headquartered in the United States, including in the state of Texas.  For example, HOYA Corporation, through a subsidiary, owns and operates a large facility at 651 E. Corporate Dr., Lewisville, TX 75057.

9.     Defendant Alcon Inc. is organized under the laws of Switzerland with its principal place of business at Chemin de Blandonnet 8, 1214 Vernier-Geneva, Switzerland.  Alcon Inc.'s principal office for U.S. operations is located in Fort Worth, Texas. Alcon Inc. is the ultimate parent company of Alcon Laboratories, Inc., Alcon Research, LLC, and other Alcon entities.

10.     Defendant Alcon Laboratories, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas 76134.  Alcon Laboratories, Inc. is licensed with the Texas Department of Health to manufacture and/or distribute medical devices in the State of Texas.  Alcon Laboratories, Inc. is a wholly-owned subsidiary of Alcon Inc.

11.     Defendant Alcon Research, LLC (formerly known as Alcon Research, Ltd.) ("Alcon Research") is a corporation organized under the laws of the state of Delaware, with its principal place of business at 6201 South Freeway, Fort Worth, Texas 76134.  Alcon Research is

3

licensed with the Texas Department of Health to manufacture and/or distribute medical devices in the State of Texas.  Alcon Research is a wholly-owned subsidiary of Alcon Inc.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the patent infringement claims asserted in this case under 28 U.S.C. §§ 1331 and 1338.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because Alcon has committed, and continues to commit, acts of infringement in this District and has a regular and established place of business in this District.   Alcon maintains regular and established places of business in the District at: 6201 South Freeway, Fort Worth, Texas 76134; 250 E. Altamesa Boulevard, Fort Worth, Texas 76134; 101 E. Altamesa Boulevard, Fort Worth, Texas 76134; 13155 Noel Rd., Dallas, Texas 75240; 777 Taylor St., Suite 900, Fort Worth, TX 76102; and 6551 South Freeway, Fort Worth, Texas 76134.

14.     This Court has personal jurisdiction over each named Alcon entity.  Alcon was founded in 1945 within the Northern District of Texas.  Alcon Inc.'s global headquarters was located in the Northern District of Texas until 2019.  Alcon Inc.'s U.S. headquarters is currently located in the Northern District of Texas. Additionally, Alcon Laboratories, Inc.'s and Alcon Research's principal place of business is currently located in the Northern District of Texas.

15.     Alcon's largest production and research and development facility is located in the Northern District of Texas.

16.     Alcon Inc., Alcon Laboratories, Inc., and Alcon Research employ thousands of individuals within the Northern District of Texas, including sales managers, engineers, scientists, materials specialists, legal counsel, and financial analysts.

17.     Alcon conducts business extensively within the Northern District of Texas.  For example, Alcon employees within this District solicit orders for Alcon's products; demonstrate Alcon's products; maintain an inventory of Alcon's products; and/or fill orders from their inventory of Alcon's products within this District.

18.     Alcon has created a manufacturing, sales, and distribution system comprising substantial resources within the Northern District of Texas.  Through this distribution channel, Alcon introduces infringing products into the stream of commerce with the knowledge, expectation, and intent that they will be sold and used in the United States, including in the State of Texas and in this District.

## THE HOYA PATENTS

19.     On February 27, 2018, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,901,442 ("the '442 Patent"), entitled "Intraocular Lens Insertion Device," to inventors Kazunori Kudo and Masahiro Noda. HOYA owns all rights to the '442 Patent necessary to bring this action.  A true and correct copy of the '442 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

20.     On May 29, 2018, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,980,811 ("the '811 Patent"), entitled "Ocular Implant Insertion Apparatus and Methods," to inventors Kazunori Kudo and Masahiro Noda.  HOYA owns all rights to the '811 Patent necessary to bring this action.  A true and correct copy of the '811 Patent is attached hereto as Exhibit 2 and incorporated herein by reference.

21.     On May 23, 2017, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,655,718 ("the '718 Patent"), entitled "Intraocular Lens Insertion Device," to inventors Kazunori Kudo and Masahiro Noda.  HOYA owns all rights to the '718 Patent

necessary to bring this action. A true and correct copy of the '718 Patent is attached hereto as Exhibit 3 and incorporated herein by reference.

22.      On January 30, 2018, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,877,826 ("the '826 Patent"), entitled "Intraocular Lens Insertion Device," to inventors Kazunori Kudo and Masahiro Noda. HOYA owns all rights to the '826 Patent necessary to bring this action. A true and correct copy of the '826 Patent is attached hereto as Exhibit 4 and incorporated herein by reference.

23.      On March 6, 2018, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,907,647 ("the '647 Patent"), entitled "Intraocular Lens Insertion Device and Method for Controlling Movement of the Intraocular Lens," to inventor Masanobu Inoue. HOYA owns all rights to the '647 Patent necessary to bring this action. A true and correct copy of the '647 Patent is attached hereto as Exhibit 5 and incorporated herein by reference.

24.      On August 7, 2018, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,039,668 ("the '668 Patent"), entitled "Ocular Implant Insertion Apparatus and Methods," to inventors Kazunori Kudo and Masahiro Noda. HOYA owns all rights to the '668 Patent necessary to bring this action. A true and correct copy of the '668 Patent is attached hereto as Exhibit 6 and incorporated herein by reference.

## FACTUAL BACKGROUND

25.      For nearly three decades, HOYA has been a leading innovator in the design and manufacture of IOLs and IOL insertion devices, including HOYA's iSert® injector system. One of HOYA's revolutionary innovations is its IOL injector technology, which has increased the safety and effectiveness of cataract surgery as we know it today.

26.     Cataracts are a major cause of blindness worldwide, and cataract surgery is one of the most commonly performed eye surgeries in the world.  Cataract surgery typically involves removing the cloudy natural lens and replacing it with an IOL, which is implanted in the anterior chamber of the eye after the natural lens has been removed.

27.     To perform cataract surgery today, a physician typically makes an incision in the periphery of the cornea (the clear outer covering of the eye) and removes the diseased lens using phacoemulsification.  The physician then implants the new lens through the same incision.  The new lens that is implanted in the patient's eye is typically an IOL that is made of hydrogel, soft acrylic, silicone, or the like.

28.     Prior to the introduction of IOL injectors, a surgeon performing cataract surgery would have to insert a rigid polymethylmethacrylate ("PMMA") lens or manually fold a soft foldable lens and place it in the patient's eye using forceps.  *See, e.g.*, '718 Patent at 1:25-2:4; '826 Patent at 1:28-3:18; '647 Patent at 1:25-3:07.  Performing cataract surgery in this manner was difficult and potentially problematic for several reasons.  First, the physician's use of forceps to place the lens in the patient's eye often caused damage to the IOL.  Second, performing cataract surgery in this manner required the physician to make large incisions in the cornea in order to be able to place and position the lens on the eye.  These large incisions often had to be closed using sutures, which increased the duration of the procedure.  Although the size of the incision could be minimized by using foldable lenses, which unfold after insertion, manually folding an IOL requires a high level of skill and presents additional room for error by the physician and possible infection.  For example, an uneven fold could cause the lens to be positioned improperly on the eye, which typically could only be remedied by enlarging the incision or making an additional incision.  *See, e.g.*, '718 Patent at 1:25-2:4; '826 Patent at 1:28-

7

3:18; '647 Patent at 1:25-3:07.  Assistive devices were eventually developed to help with the challenges presented as a result of having to manually fold the lens during surgery.  Although these assistive devices aided with standardizing the proportions of the fold, none of these devices eliminated the use of forceps or provided a method for more controlled and consistent lens insertion.

29.    The 1990s saw the development of reusable IOL injectors for soft deformable lenses, allowing physicians to inject an IOL into smaller incisions in the eye.  These injectors generally used a cartridge into which the physician loaded the IOL using forceps, and the cartridge was subsequently attached to the injector body.  The physician then slowly manipulated the plunger of the injector to advance the loaded IOL out of the injector cartridge and into the capsular sac of the eye.  Because physicians had to manually load the IOLs into these injectors, there was the potential for contamination and damage to the optic (round lens portion) or the haptics (*e.g.*, the arm-like supports attached to the optic) of the IOLs. *See, e.g.*, '718 Patent at 1:60-65; '811 Patent at 1:47-57; '647 Patent at 1:60-64.  Use of such injectors in certain circumstances could result in damage to the IOL due to the plunger riding up onto the rear haptic and optic, resulting in deformation of the IOL.  *See, e.g.*, '718 Patent at 1:66-2:23; '826 Patent at 1:58-2:6; '647 Patent at 1:65-2:20.

30.    In the 2000s, HOYA developed disposable, preloaded IOL injectors, which solved many of the challenges that existed with the prior cataract surgery methods and IOL injectors.  *See, e.g.*, '718 Patent at 2:57-3:14; '826 Patent at 3:21-67; '647 Patent at 2:50-4:51. To date, HOYA has sold more than nine million preloaded IOL injector systems.

## ALCON'S ACCUSED PRODUCTS

**A. Alcon Makes, Imports, Uses, Sells, and/or Offers for Sale Products that Infringe the Patents-in-Suit.**

31. Alcon makes, imports, uses, sells, and/or offers for sale IOL insertion devices that infringe at least one claim of each of the Patents-in-Suit ("Accused Products").

32. For example, Alcon manufactures, imports, tests, uses, offers for sale, and sells an IOL delivery system called UltraSert, which is preloaded with an IOL.   An image of the UltraSert injector is shown below:



https://2.myalcon.com/professional/cataract-surgery/intraocular-lens/ultrasert-preloaded-delivery-system/features-specifications (last visited 12/10/20).

33. Alcon received FDA approval for the UltraSert.

34. Alcon manufacturers UltraSert in the United States.    *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=181244 (last visited 12/10/2020);  https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=148530 (last visited 12/10/2020).

35. Alcon markets, sells, and/or provides UltraSert to hospitals, medical centers,

clinics, surgeons, and/or nurses in the United States directly, or through sales representatives or distributors, and provides instructions on how to use UltraSert.  For example, Alcon advertises its UltraSert product on public webpages registered to Alcon Inc. and using public videos branded and/or sponsored by Alcon Inc.  *See, e.g.*, https://professional.myalcon.com/cataract-surgery/intraocular-lens/ (last visited 12/10/20); https://www.alcon.com/media-release/alcon-introduces-newly-optimized-ultrasertr-pre-loaded-intraocular-lens-delivery (last visited 12/10/20); https://www.ophthalmologytimes.com/view/ultrasert-pre-loaded-delivery-system-surgical-pearls (last visited 12/10/20). Alcon Inc.'s recent SEC filings also include repeated mentions of its UltraSert product.  *See* Alcon Inc., Registration Statement (Form 20-F) at 100, 107-108, 110-11, 136 (Mar. 21, 2019).

36.    Alcon also regularly includes information concerning the production and sale of UltraSert in Alcon Inc.'s SEC filings and presentations to Alcon's investors.  *See, e.g.*, https://www.alcon.com/sites/g/files/rbvwei496/files/2019-04/Feb_Roadshow_Presentation_2.12.19.pdf (last visited 12/10/20); https://s1.q4cdn.com/963204942/files/doc_financials/2019/q4/Alcon-Form-20-F-2019.pdf (last visited 12/10/20).

37.    Use of UltraSert is depicted in a video titled "Alcon UltraSert preloaded IOL delivery system," available at https://www.youtube.com/watch?v=uXWhS-BVcz4 (last visited 12/10/20).  The following images of UltraSert are screenshots captured from this video.



*Id.* at 0:34.



*Id.* at 1:08.



*Id.* at 1:14.



*Id.* at 6:36.

38.     UltraSert is preloaded with an IOL that is comprised of a foldable optic, a bendable distal (*e.g.*, towards the eye) haptic that is attached to the optic at one end and free at another end, and a bendable proximal (*e.g.*, away from the eye) haptic that is attached to the optic at one end and free at another end. The preloaded IOL is positioned within a chamber atop lens supporting surfaces within the UltraSert injector. The UltraSert also has a main body, a

nozzle through which the IOL exits the device, and a tapered transition portion connecting the main body to the nozzle.

39.    UltraSert contains a plunger that the user can depress to move the plunger in the distal direction towards the eye.  The plunger has top, bottom, and side walls that form a recess, as well as a lens contacting portion.  As the plunger moves distally, it first contacts the unfolded proximal haptic and bends it distally in an upward direction such that the free end of the proximal haptic passes over an unfolded portion of the optic.  At least a portion of the proximal haptic enters the plunger recess as this occurs.  The lens contacting portion of the plunger contacts the optic as the plunger moves distally through the main body.  The sides of the optic fold in an upwards direction as the optic approaches the nozzle, and the free end of the upwardly bent proximal haptic enters the space in between the folded portions of the optic.  As the IOL is pushed through the nozzle and into the eye by the plunger, the IOL is in a folded configuration with the free end of the proximal haptic pointing in the distal direction and positioned in the space between the folded portions of the optic.

40.    When used or tested, UltraSert, and any other Alcon products that operate in substantially the same manner, either alone or in combination, directly infringe at least one claim of each of the Patents-in-Suit.

41.    UltraSert is designed and sold to be used only to deliver an intraocular lens in a specific way, as directed by the instructions in the manuals delivered with UltraSert and promotional materials concerning UltraSert.  The manuals and promotional materials provide specific instructions for using UltraSert in a way that infringes at least one claim of each of the Patents-in-Suit, and they do not contemplate any non-infringing uses.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

42.     Alcon has infringed and continues to directly and indirectly infringe at least one claim of each of the Patents-in-Suit by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c) and/or (f), including but not limited to one or more of making, using, selling, offering for sale, importing, exporting, and inducing and contributing to infringement by others, the Accused Products in this District and elsewhere in the United States.

43.     As a result of Alcon's infringement, HOYA has suffered and will continue to suffer harm in the form of reasonable royalties and/or lost profits.  HOYA seeks damages for infringing acts beginning as early as six years prior to the filing of this Original Complaint.

44.     HOYA also seeks an injunction prohibiting further acts of infringement.  Each of Alcon's acts of infringement has caused and will continue to cause HOYA irreparable harm for which there is no adequate remedy at law.  Such injunctive relief would not disserve the public interest, and is warranted when considering the balance of equities.

45.     Alcon had actual or constructive knowledge and notice of infringement as to each of the Patents-in-Suit.  Alcon is a direct competitor of HOYA in the IOL insertion device market. As such, Alcon knew, should have known, or was willfully blind as to the existence of the Patents-in-Suit at the time of Alcon's infringing acts.   Additionally, Alcon's patents cite a number of patent applications and publications by the named inventors of the Patents-in-Suit and/or within the same family as the Patents-in-Suit, thereby confirming that Alcon is familiar with HOYA's intellectual property and knew, should have known, or was willfully blind as to the existence of the Patents-in-Suit at the time of Alcon's infringing acts. *See, e.g.*, U.S. Patent Nos. 9,463,089; 9,724,191; 10,010,408; 10,172,706; 10,188,506; 10,568,735; 10,588,780.

46.     Alcon's infringement of the Patents-in-Suit has been, and continues to be, willful because Alcon has committed and continues to commit acts of infringement even though Alcon knew or should have known that its actions constituted an unjustifiably high risk of infringement.

47.     Alcon's infringement of the Patents-in-Suit has been, and continues to be, without permission, consent, authorization, or license.

## COUNT I: PATENT INFRINGEMENT OF THE '442 PATENT

48.     HOYA incorporates by reference the preceding paragraphs as though fully set forth herein.

49.     Alcon infringes, contributes to the infringement of, and/or induces infringement of the '442 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '442 Patent.

50.     The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one of more claims of the '442 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States, the Accused Products and thus directly infringes claims of the '442 Patent.

51.     For example, Claim 1 of the '442 Patent is reproduced below:

1. An intraocular lens insertion apparatus, comprising:

a main body;

an intraocular lens including an optic and haptics, each haptic having a free end, stored in the main body in such a manner that one of the haptics is a proximal haptic and one of the haptics is a distal haptic;

a nozzle associated with the main body and configured to be inserted into an eye; and

a plunger, carried within the main body and movable relative to the main body from a first position to a second position at the nozzle, including a lens contact portion and a recess that is located above the lens contact portion, that extends proximally from the lens

contact portion, that has a first lateral side that is open, a second lateral side that is closed by a lateral wall, and an open distal end, wherein the plunger is configured to hold a portion of the proximal haptic in the recess when the proximal haptic is bent such that the free end of the proximal haptic is positioned over the optic.

52.    As a non-limiting example, UltraSert is an intraocular lens insertion apparatus. This insertion apparatus includes a main body.

53.    UltraSert includes an intraocular lens including an optic and haptics, each haptic having a free end, stored in the main body in such a manner that one of the haptics is a proximal haptic and one of the haptics is a distal haptic.

54.    UltraSert includes a nozzle associated with the main body and configured to be inserted into an eye.

55.    UltraSert includes a plunger that is carried within the main body and movable relative to the main body from a first position to a second position at the nozzle.

56.    UltraSert includes a plunger including a lens contact portion and a recess that is located above the lens contact portion.

57.    UltraSert includes a plunger including a recess that extends proximally from the lens contact portion, that has a first lateral side that is open, a second lateral side that is closed by a lateral wall, and an open distal end.

58.    UltraSert includes a plunger wherein the plunger is configured to hold a portion of the proximal haptic in the recess when the proximal haptic is bent such that the free end of the proximal haptic is positioned over the optic.

59.    Alcon also indirectly infringes claims of the '442 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's distributors, customers, and end users, in this District and elsewhere in the United States.   For example, Alcon's customers and end users directly infringe through their use of the inventions claimed in the '442

16

Patent.  Alcon induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.  As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '442 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '442 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '442 Patent.

60.     Alcon also indirectly infringes claims of the '442 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  Alcon's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '442 Patent is directly infringed.  The accused components within the Accused Products are material to the invention of the '442 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '442 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '442 Patent and with intent, or willful blindness, that they cause the direct infringement of the '442 Patent.

## COUNT II: PATENT INFRINGEMENT OF THE '811 PATENT

61.     HOYA incorporates by reference the preceding paragraphs as though fully set

17

forth herein.

62.     Alcon infringes, contributes to the infringement of, and/or induces infringement of the '811 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '811 Patent.

63.     The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one or more claims of the '811 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States, the Accused Products and thus directly infringes claims of the '811 Patent.

64.     For example, Claim 1 of the '811 Patent is reproduced below:

1. An intraocular lens insertion apparatus, comprising:

an outer body including a lens placement section and a nozzle and defining a lens movement direction;

an intraocular lens, having an optic with a diameter and haptics with respective free ends, stored in the lens placement section in such a manner that the optic diameter is perpendicular to the lens movement direction, one of the haptics is a proximal haptic and one of the haptics is a distal haptic; and

a plunger, at least a portion of which is carried within the outer body, that is movable relative to the outer body and which has a distal region that defines a longitudinal axis, the distal region including

a bottom wall having an upper surface and defining a width in a direction transverse to the longitudinal axis of the distal region,

a lens contact surface extending downwardly from the bottom wall upper surface,

a top wall defining a width in a direction transverse to the longitudinal axis of the distal region that is less than the width of the bottom wall, and

a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the optic diameter that is perpendicular to the lens movement direction,

the top wall, bottom wall and lateral wall together defining a recess that is located above the bottom wall, that extends proximally from the lens contact surface, that has a first lateral side that is open, a

second lateral side that is closed by the lateral wall, and an open distal end, and that is configured to hold a portion of the proximal haptic when the proximal haptic is bent such that the free end is positioned over the optic.

65.   As a non-limiting example, UltraSert is an intraocular lens insertion apparatus. This insertion apparatus includes an outer body including a lens placement section and a nozzle and defining a lens movement direction.

66.   UltraSert includes an intraocular lens including an optic with a diameter and haptics with respective free ends, stored in the lens placement section in such a manner that the optic diameter is perpendicular to the lens movement direction, one of the haptics is a proximal haptic and one of the haptics is a distal haptic.

67.   UltraSert includes a plunger, at least a portion of which is carried within the outer body, that is movable relative to the outer body and which has a distal region that defines a longitudinal axis.

68.   UltraSert includes a plunger with a distal region including a bottom wall having an upper surface and defining a width in a direction transverse to the longitudinal axis of the distal region, a lens contact surface extending downwardly from the bottom wall upper surface, a top wall defining a width in a direction transverse to the longitudinal axis of the distal region that is less than the width of the bottom wall, and a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the optic diameter that is perpendicular to the lens movement direction, the top wall, bottom wall and lateral wall together defining a recess that is located above the bottom wall, that extends proximally from the lens contact surface, that has a first lateral side that is open, a second lateral side that is closed by the lateral wall, and an open distal end, and that is configured to hold a portion of the proximal haptic when the proximal haptic is bent such that the free end is positioned over the optic.

69.     Alcon also indirectly infringes claims of the '811 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's distributors, customers, and end users, in this District and elsewhere in the United States.   For example, Alcon's customers and end users directly infringe through their use of the inventions claimed in the '811 Patent. Alcon induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.   As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '811 Patent. Alcon has performed and continues to perform these affirmative acts with knowledge of the '811 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '811 Patent.

70.     Alcon also indirectly infringes claims of the '811 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.   Alcon's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '811 Patent is directly infringed.   The accused components within the Accused Products are material to the invention of the '811 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '811 Patent.   Alcon has performed and continues to

20

perform these affirmative acts with knowledge of the '811 Patent and with intent, or willful blindness, that they cause the direct infringement of the '811 Patent.

## COUNT III: PATENT INFRINGEMENT OF THE '718 PATENT

71.    HOYA incorporates by reference the preceding paragraphs as though fully set forth herein.

72.    Alcon infringes, contributes to the infringement of, and/or induces infringement of the '718 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '718 Patent.

73.    The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one or more claims of the '718 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States, the Accused Products and thus directly infringes claims of the '718 Patent.

74.    For example, Claim 1 of the '718 Patent is reproduced below:

> 1. A method for use with an intraocular lens, including an optic, a forward haptic having an end and a rear haptic having an end, that is located within an insertion device defining a lens travelling axis and including a nozzle, a transition section and a plunger that moves forwardly toward the nozzle and includes a forward region with a side wall and a bottom wall that together define a slot that extends rearwardly and is configured to receive a portion of the rear haptic, the method comprising the steps of:
>
> pushing the end of the rear haptic upwardly and forwardly relative to the optic;
>
> pushing the end of the rear haptic over the optic, while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger such that a portion of the rear haptic is bent and received in the slot that extends rearwardly;
>
> folding the optic such that there is a space between folded portions of the optic; and
>
> pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic.

21

75.    As a non-limiting example, UltraSert is used according to a method of use with an intraocular lens.  UltraSert is used with an intraocular lens including an optic, a forward haptic having an end and a rear haptic having an end.

76.    UltraSert is used according to a method in which the intraocular lens is located within an insertion device defining a lens travelling axis and including a nozzle, a transition section, and a plunger that moves forwardly toward the nozzle.

77.    UltraSert has a plunger which includes a forward region with a side wall and a bottom wall that together define a slot that extends rearwardly and is configured to receive a portion of the rear haptic.

78.    UltraSert is operated by pushing the end of the rear haptic upwardly and forwardly relative to the optic.

79.    UltraSert provides for pushing the end of the rear haptic over the optic, while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger such that a portion of the rear haptic is bent and received in the slot that extends rearwardly.

80.    The implantation method of UltraSert provides for folding the optic such that there is a space between folded portions of the optic.

81.    The implantation method of UltraSert provides for pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic.

82.    Alcon also indirectly infringes claims of the '718 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's distributors, customers, and end users, in this District and elsewhere in the United States.  For example, Alcon's

customers and end users directly infringe through their use of the invention claimed in the '718 Patent.  Alcon induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.  As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '718 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '718 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '718 Patent.

83.     Alcon also indirectly infringes claims of the '718 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  Alcon's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '718 Patent is directly infringed.  The accused components within the Accused Products are material to the invention of the '718 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '718 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '718 Patent and with intent, or willful blindness, that they cause the direct infringement of the '718 Patent.

## COUNT IV: PATENT INFRINGEMENT OF THE '826 PATENT

84.     HOYA incorporates by reference the preceding paragraphs as though fully set forth herein.

85.     Alcon infringes, contributes to the infringement of, and/or induces infringement of the '826 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '826 Patent.

86.     The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one or more claims of the '826 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States, the Accused Products and thus directly infringes claims of the '826 Patent.

87.     For example, Claim 1 of the '826 Patent is reproduced below:

> 1. A method performed by an intraocular lens insertion device on an intraocular lens, the intraocular lens including an optic, a forward haptic having an end and a rear haptic having an end, the insertion device including a nozzle, a transition section and a plunger having a forward region with a side wall and a bottom wall that together define an indentation and is configured to receive a portion of the rear haptic, the method comprising the steps of:
>
> pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic;
>
> pushing the rear haptic such that the end of the rear haptic passes over the optic , while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger in such a manner that the rear haptic is bent and a portion of the rear haptic is received in the indentation;
>
> folding a portion of the optic such that there is a space between folded portions of the optic; and
>
> pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic.

88.     As a non-limiting example, UltraSert is used according to a method of using an intraocular lens insertion device on an intraocular lens.   UltraSert is used according to a method

in which the intraocular lens includes an optic, a forward haptic having an end and a rear haptic having an end, the insertion device including a nozzle, a transition section and a plunger having a forward region with a side wall and a bottom wall that together define an indentation and is configured to receive a portion of the rear haptic.

89.    UltraSert is used according to a method which includes pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic.

90.    UltraSert is used according to a method which includes pushing the rear haptic such that the end of the rear haptic passes over the optic, while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger in such a manner that the rear haptic is bent and a portion of the rear haptic is received in the indentation.

91.    UltraSert is used according to a method which includes folding a portion of the optic such that there is a space between folded portions of the optic.

92.    UltraSert is used according to a method which includes pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic.

93.    UltraSert is operated by moving the free end of the rear haptic, from a position rearward of the optic, over the optic and into a space between folded portions of the optic with the plunger.

94.    Alcon also indirectly infringes claims of the '826 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's customers, and end users, in this District and elsewhere in the United States.  For example, Alcon's customers and end users directly infringe through their use of the inventions claimed in the '826 Patent. Alcon induces this direct infringement through its affirmative acts of manufacturing, selling,

distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.  As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '826 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '826 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '826 Patent.

95.    Alcon also indirectly infringes claims of the '826 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  Alcon's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '826 Patent is directly infringed.  The accused components within the Accused Products are material to the invention of the '826 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '826 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '826 Patent and with intent, or willful blindness, that they cause the direct infringement of the '826 Patent.

## COUNT V: PATENT INFRINGEMENT OF THE '647 PATENT

96.    HOYA incorporates by reference the preceding paragraphs as though fully set forth herein.

97.     Alcon infringes, contributes to the infringement of, and/or induces infringement of the '647 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '647 Patent.

98.     The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one or more claims of the '647 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States, the Accused Products and thus directly infringes claims of the '647 Patent.

99.     For example, Claim 1 of the '647 Patent is reproduced below:

> 1. A method of operating an insertion device including a main body, a nozzle, and a tapered transition portion proximal of the nozzle, the method comprising the steps of:
> applying force to an intraocular lens, located within the main body and having an optic, a leading loop haptic with a fixed end at the optic and a free end, and a trailing loop haptic with a fixed end at the optic and a free end, with a plunger, including a distal portion with a lens contact surface and a slot that extends proximally from the lens contact surface, in such a manner that a portion of the trailing loop haptic is located within the slot while being bent toward the nozzle by the distal portion and the free end of the trailing loop haptic points toward the nozzle; and
> pushing the intraocular lens into the nozzle with the plunger.

100.     As a non-limiting example, UltraSert is used according to a method of operating an insertion device.  The insertion device includes a main body, a nozzle, and a tapered transition portion proximal of the nozzle.

101.     UltraSert is used according to a method in which force is applied to an intraocular lens, located within the main body and having an optic, a leading loop haptic with a fixed end at the optic and a free end, and a trailing loop haptic with a fixed end at the optic and a free end, with a plunger.

102.     UltraSert is used according to a method which includes a plunger, including a distal portion with a lens contact surface and a slot that extends proximally from the lens contact

surface.

103.    UltraSert is operated by applying a force to the intraocular lens with a plunger in such a manner that a portion of the trailing loop haptic is located within the slot while being bent toward the nozzle by the distal portion and the free end of the trailing loop haptic points toward the nozzle.

104.    UltraSert is operated by pushing the intraocular lens into the nozzle with the plunger.

105.    Alcon also indirectly infringes claims of the '647 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's customers, and end users, in this District and elsewhere in the United States.  For example, Alcon's customers and end users directly infringe through their use of the inventions claimed in the '647 Patent. Alcon induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.  As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '647 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '647 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '647 Patent.

106.    Alcon also indirectly infringes claims of the '647 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  Alcon's affirmative acts of

selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '647 Patent is directly infringed.  The accused components within the Accused Products are material to the invention of the '647 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '647 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '647 Patent and with intent, or willful blindness, that they cause the direct infringement of the '647 Patent.

### COUNT VI: PATENT INFRINGEMENT OF THE '668 PATENT

107.   HOYA incorporates by reference the preceding paragraphs as though fully set forth herein.

108.   Alcon infringes, contributes to the infringement of, and/or induces infringement of the '668 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '668 Patent.

109.   The Accused Products directly infringe, literally and/or by the doctrine of equivalents, one or more claims of the '668 Patent.  Alcon makes, uses, sells, offers for sale, and/or imports, in this District and elsewhere in the United States the Accused Products and thus directly infringes claims of the '668 Patent.

110.   For example, Claim 1 of the '668 Patent is reproduced below:

1. An intraocular lens insertion apparatus, comprising:

an outer body that defines a lens movement direction, that includes a nozzle and a lens placement section with lens supporting surfaces having portions that are spaced from one another in a spacing direction that is perpendicular to the lens movement direction, and that is configured to store an intraocular lens, having an optic with

29

a diameter and haptics with respective free ends in such a manner that diametrically opposed portions of the optic are on the lens supporting surface portions that are spaced in the spacing direction that is perpendicular to the lens movement direction, one of the haptics is a proximal haptic, and one of the haptics is a distal haptic; and

a plunger, at least a portion of which is carried within the outer body, that is movable relative to the outer body and which has a distal region that defines a longitudinal axis, the distal region including a bottom wall having an upper surface and defining a width in a direction transverse to the longitudinal axis of the distal region, a lens contact surface extending downwardly from the bottom wall upper surface, a top wall defining a width in a direction transverse to the longitudinal axis of the distal region that is less than the width of the bottom wall, and a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the spacing direction that is perpendicular to the lens movement direction, the top wall, bottom wall and lateral wall together defining a recess that is located above the bottom wall, that extends proximally from the lens contact surface , that has a first lateral side that is open, second lateral side that is closed by the lateral wall and an open distal end, and that is configured to hold a portion of the proximal haptic when the proximal haptic is bent such that the free end is positioned over the optic.

111.    As a non-limiting example, UltraSert is an intraocular lens insertion apparatus. This insertion apparatus includes an outer body and a plunger.

112.    UltraSert includes an outer body that defines a lens movement direction, that includes a nozzle and a lens placement section with lens supporting surfaces having portions that are spaced from one another in a spacing direction that is perpendicular to the lens movement direction, and that is configured to store an intraocular lens, having an optic with a diameter and haptics with respective free ends in such a manner that diametrically opposed portions of the optic are on the lens supporting surface portions that are spaced in the spacing direction that is perpendicular to the lens movement direction, one of the haptics is a proximal haptic, and one of the haptics is a distal haptic.

113.    UltraSert includes a plunger, at least a portion of which is carried within the outer body, that is movable relative to the outer body and which has a distal region that defines a

longitudinal axis, the distal region including a bottom wall having an upper surface and defining a width in a direction transverse to the longitudinal axis of the distal region, a lens contact surface extending downwardly from the bottom wall upper surface, a top wall defining a width in a direction transverse to the longitudinal axis of the distal region that is less than the width of the bottom wall, and a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the spacing direction that is perpendicular to the lens movement direction, the top wall, bottom wall and lateral wall together defining a recess that is located above the bottom wall, that extends proximally from the lens contact surface, that has a first lateral side that is open, second lateral side that is closed by the lateral wall and an open distal end, and that is configured to hold a portion of the proximal haptic when the proximal haptic is bent such that the free end is positioned over the optic.

114.   Alcon also indirectly infringes claims of the '668 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Alcon's customers, and end users, in this District and elsewhere in the United States.  For example, Alcon's customers and end users directly infringe through their use of the inventions claimed in the '668 Patent. Alcon induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, online technical support, marketing, product manuals, advertisements, and other information to customers and end users suggesting they use the Accused Products in an infringing manner.  As a result of Alcon's inducement, Alcon's customers and end users use the Accused Products in the way Alcon intends and directly infringe the '668 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '668 Patent and with the intent, or willful blindness, that the induced acts

31

directly infringe the '668 Patent.

115.   Alcon also indirectly infringes claims of the '668 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  Alcon's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale, contribute to Alcon's customers' and end users' use of the Accused Products, such that the '668 Patent is directly infringed.  The accused components within the Accused Products are material to the invention of the '668 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Alcon to be especially made or especially adapted for use in infringement of the '668 Patent.  Alcon has performed and continues to perform these affirmative acts with knowledge of the '668 Patent and with intent, or willful blindness, that they cause the direct infringement of the '668 Patent.

## PRAYER FOR RELIEF

WHEREFORE, HOYA respectfully requests that this Court enter judgment in its favor as follows and award HOYA the following relief:

(a)     an award of damages adequate to compensate HOYA for infringement of the Patents-in-Suit by Alcon, in an amount to be proven at trial, including supplemental post-verdict damages until such time as Alcon ceases its infringing conduct;

(b)     a permanent injunction prohibiting Alcon and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, all affiliated entities, and all others acting in privity with Alcon, from committing further acts of infringement;

(c)     enhanced damages for willful infringement;

(d)     the costs of this action, as well as attorneys' fees as provided by 35 U.S.C. § 285;

(e)     pre-judgment and post-judgment interest at the maximum amount permitted by law;

(f)     all other relief, in law or equity, to which HOYA is entitled.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: December 11, 2020.              **MCKOOL SMITH, P.C.**

                                       /s/ *Theodore Stevenson, III*
                                       Theodore Stevenson, III
                                       Texas State Bar No. 19196650
                                       tstevenson@mckoolsmith.com
                                       **MCKOOL SMITH, P.C.**
                                       300 Crescent Court Suite 1500
                                       Dallas, TX 75201
                                       Telephone: (214) 978-4000
                                       Telecopier: (214) 978-4044

                                       Lauren Fornarotto
                                       New York State Bar No. 4804340
                                       lfornarotto@mckoolsmith.com
                                       **MCKOOL SMITH, P.C.**
                                       One Manhattan West
                                       395 9th Avenue, 50th Floor
                                       New York, New York 10001-8603
                                       Telephone: (212) 402-9400
                                       Telecopier:  (212) 402-9444

                                       Geoffrey L. Smith
                                       Texas State Bar No. 24041939
                                       gsmith@mckoolsmtih.com
                                       **MCKOOL SMITH, P.C.**
                                       300 W. 6th Street, Suite 1700
                                       Austin, Texas 78701
                                       Telephone: (512) 692-8700
                                       Telecopier:  (512) 692-8744

                                       **ATTORNEYS FOR PLAINTIFFS**