**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| HOYA CORPORATION and HOYA SURGICAL OPTICS, INC. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LLC, | ) ) ) |
| Defendants. | ) ) ) |

**Civil Action No. 3:20-cv-03629**

JURY TRIAL DEMANDED

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' CLAIMS PURSUANT TO 12(B)(2) AND 12(B)(6)**

## <u>TABLE OF CONTENTS</u>

I.   Introduction ........................................................................................................ 1

II.  Statement of Facts ............................................................................................. 2

    A.   Plaintiffs' Indirect and Willful Infringement Allegations ...................................... 2

    B.   Defendant Alcon Inc. ............................................................................................. 4

III. Legal Standard .................................................................................................. 4

    A.   Motion to Dismiss Pursuant to Rule 12(b)(2) ........................................................ 4

    B.   Motion to Dismiss Pursuant to Rule 12(b)(6) ........................................................ 7

    C.   Indirect Infringement ............................................................................................. 8

    D.   Willful Infringement .............................................................................................. 8

IV.  Argument ............................................................................................................ 9

    A.   All Claims against Alcon Inc. Should Be Dismissed for Lack of Personal
        Jurisdiction ............................................................................................................ 9

        1.   Alcon Inc. is not subject to specific personal jurisdiction. ......................... 9

        2.   Alcon Inc. is not subject to general personal jurisdiction. ........................ 13

    B.   Plaintiffs' Allegations Do Not Support a Plausible Inference of
        Knowledge, Mandating Dismissal of the Pre-suit Indirect and Willful
        Infringement Claims ............................................................................................ 14

    C.   Plaintiffs' Allegations Do Not Support a Plausible Inference of a Pre-suit
        Intent to Infringe, Independently Mandating Dismissal of Plaintiffs' Pre-
        suit Induced Infringement Claims ....................................................................... 18

    D.   Plaintiffs' Allegations Do Not Support a Plausible Inference of
        "Egregious" Conduct Required for Enhanced Damages, Independently
        Mandating Dismissal of Plaintiffs' Willful Infringement Claims in Their
        Entirety ................................................................................................................ 19

    E.   Plaintiffs' Allegations Do Not Support a Plausible Inference of
        Contributory Infringement for the Folding Configuration Claims and the
        Apparatus Claims, Independently Mandating Dismissal of Those Claims .......... 21

        1.   For the Folding Configuration Claims, Plaintiffs' allegations do
            not support a plausible inference of no substantial non-infringing
            use. ........................................................................................................ 21

i

2.      For the Apparatus Claims, Plaintiffs' allegations fail to identify
        any "component" of a patented machine. ................................................. 22

**V.      Conclusion** ............................................................................................................... **23**

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) .................................................................18, 19

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)..............................15, 16

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
689 F.3d 1358 (Fed. Cir. 2012)...........................................................................5, 6

*Albritton v. Acclarent, Inc.*,
No. 3:16-CV-03340-M, 2017 WL 6628122 (N.D. Tex. Dec. 27, 2017) (Lynn,
C.J.)............................................................................................................21, 22

*Apeldyn Corp. v. AU Optronics Corp.*,
831 F. Supp. 2d 817 (D. Del. 2011), *aff'd,* 522 F. App'x 912 (Fed. Cir. 2013) .....................15

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018) .......................................................................17

*Asahi Metal Industry Co. v. Superior Court of Calif., Solano Cnty.*,
480 U.S. 102 (1987)................................................................................. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................. *passim*

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009)..............................................................4, 5, 9, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2001)...............................................................................7, 17, 20

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)..............................................................................7, 21

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017)......................................................................................13

*Calder v. Jones*,
465 U.S. 783 (1984).......................................................................................5, 10

*Celgard, LLC v. SK Innovation Co., Ltd.*,
792 F.3d 1373 (Fed. Cir. 2015)................................................................................6

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
 859 F.3d 1352 (Fed. Cir. 2017).................................................................................18, 19

*Commil USA, LLC v. Cisco Sys. Inc.*,
 135 S. Ct. 1920 (2015)...............................................................................................8, 19

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
 424 F.3d 1293 (Fed. Cir. 2005)........................................................................................8

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)..................................................................................................7, 13

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006)......................................................................................18

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
 802 F. Supp. 2d 527 (D. Del. 2011)................................................................................15

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
 563 U.S. 754 (2011)..................................................................................................8, 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011).........................................................................................................7

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
 136 S. Ct. 1923 (2016)..................................................................................8, 9, 19, 20

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
 466 U.S. 408 (1984)......................................................................................................13

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
 909 F.2d 1464 (Fed. Cir. 1990)......................................................................................22

*HSM Portfolio LLC v. Fujitsu Ltd.*,
 No. CV 11-770-RGA, 2014 WL 4468088 (D. Del. Sept. 9, 2014) .................................22, 23

*Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC*,
 No. SACV 20-1422 JVS (KESx), 2020 WL 7872961 (C.D. Cal. Nov. 20,
 2020) .............................................................................................................................16

*International Shoe Co. v. Washington*,
 326 U.S. 310 (1945).........................................................................................................5

*Iron Oak Techs., LLC v. Dell, Inc.*,
 No. 1:17-cv-999-RP, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018).......................................22

*J. McIntyre Mach., Ltd. v. Nicastro*,
 564 U.S. 873 (2011)......................................................................................................11

iv

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ...........................................................................................5

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006)........................................................................................18

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
   No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ......................................20

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
   No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)...........................16, 19

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
   263 F. Supp. 3d 498 (D. Del. 2017)..................................................................................11

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017)........................................................................................12

*Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharm., Inc.*,
   No. 18cv2434(DLC), 2018 WL 5282887 (S.D.N.Y. Oct. 24, 2018)...............................15, 19

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
   No. CV 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017) ...............................16

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ............................................................................................3

*Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*,
   No. CV 19-4952-MWF, 2019 WL 8161141 (C.D. Cal. Aug. 30, 2019)................................15

*Richmond v. SW Closeouts, Inc.*,
   No. 3:14-cv-4298-K, 2017 WL 722201 (N.D. Tex. Jan. 30, 2017),
   *report and recommendation adopted*, No. 3:14-CV-4298-K, 2017 WL 722029
   (N.D. Tex. Feb. 22, 2017).................................................................................................19

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985).........................................................................................8

*Synergy Drone LLC v. Parrot S.A. et al.*, No. 1:17-CV-00243-LY, D.I. 68 (W.D.
   Tex. Apr. 17, 2018) ...................................................................................................11, 13

*Vita-Mix Corp. v. Basic Holdings, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009).........................................................................................21

*Wright v. E-Sys. LLC*,
   No. 3:12-CV-04715-K, 2014 WL 11514932 (N.D. Tex. Jan. 8, 2014)..................................8

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
    395 U.S. 100 (1969)..............................................................................................4

*ZitoVault, LLC v. Int'l Bus. Machines Corp.*,
    No. 3:16-cv-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) (Lynn,
    C.J.)............................................................................................................ *passim*

**Statutes**

35 U.S.C. § 271(a), (b), (c) .................................................................................18

35 U.S.C. § 271(c) ..........................................................................................22, 23

35 U.S.C. § 284 ....................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2)........................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................1

Unless otherwise indicated, all emphasis has been added and internal quotation marks and citations have been omitted from quoted material.

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Alcon Inc. moves to dismiss the patent infringement claims brought by Plaintiffs HOYA Corporation and HOYA Surgical Optics, Inc. (collectively, "HOYA" or "Plaintiffs") against Alcon Inc. for lack of personal jurisdiction.  Alcon Inc., a company organized under the laws of Switzerland with its principal executive office in Switzerland, does not reside in Texas, is not licensed to do business in Texas, introduces no products into the stream of commerce in Texas, and thus lacks the minimum contacts necessary for specific personal jurisdiction, let alone contacts that could be deemed "continuous and systematic" for general personal jurisdiction.

Defendants Alcon Inc., Alcon Laboratories, Inc. ("Alcon Labs"), and Alcon Research, LLC ("Alcon Research") (collectively, "Defendants") also move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims.  Plaintiffs bring a laundry list of allegations against Defendants concerning the Alcon UltraSert Preloaded Delivery System ("UltraSert"), an intraocular lens insertion device, including direct, indirect, and willful infringement claims pertaining to six patents.[1]  Several claims are so inadequately pleaded or legally flawed that they should be dismissed at the outset of this case.  *First*, the Complaint fails to allege facts sufficient to support an inference that any Defendant had pre-suit knowledge of, or was willfully blind to, the Patents-in-Suit, which is a necessary element for Plaintiffs' pre-suit induced, contributory, and willful infringement claims.  *Second*, for pre-suit induced infringement, the Complaint fails to allege facts sufficient to support an inference that any Defendant acted with the requisite specific intent to induce infringement.  *Third*, the Complaint fails to allege facts sufficient to show that any

---

[1]     U.S. Patent Nos. 9,901,442 ("'442 Patent"); 9,980,811 ("'811 Patent"); 9,655,718 ("'718 Patent"); 9,877,826 ("'826 Patent"); 9,907,647 ("'647 Patent"); and 10,039,668 ("'668 Patent") (collectively, "Patents-in-Suit").

Defendant engaged in such "egregious" behavior as to warrant enhanced damages for willful infringement for either pre- or post-suit activities.  *Finally*, Plaintiffs' contributory infringement claims should be dismissed in their entirety with respect to:  (1) the asserted claims that require a specific lens folding configuration ("Folding Configuration Claims"), due to the Complaint's failure to allege facts sufficient to support an inference that there are no substantial non-infringing uses; and (2) the asserted claims directed to an apparatus ("Apparatus Claims"), due to the Complaint's failure to allege that Defendants sold a "component" of the allegedly patented invention.

For these reasons, the Court should dismiss:  (i) all of Plaintiffs' claims against Alcon Inc.; (ii) Plaintiffs' claims against all Defendants for pre-suit induced, contributory, and willful infringement; (iii) Plaintiffs' post-suit claims against all Defendants for willful infringement; and (iv) Plaintiffs' post-suit contributory infringement claims against all Defendants for the Folding Configuration and Apparatus Claims.

## II.   STATEMENT OF FACTS

Plaintiffs filed their patent infringement suit against Defendants on December 11, 2020, alleging that the UltraSert infringes the six Patents-in-Suit, which relate to certain devices and methods for inserting an intraocular lens ("IOL") into a patient's eye during cataract surgery.

### A.   Plaintiffs' Indirect and Willful Infringement Allegations

In addition to alleging direct infringement, Plaintiffs allege induced, contributory, and willful infringement.  D.I. 1 (Compl.), ¶¶ 42–115.  In an attempt to support the knowledge element for its indirect and willful infringement claims, Plaintiffs state:

> Alcon had actual or constructive knowledge and notice of infringement as to each of the Patents-in-Suit.  Alcon is a direct competitor of HOYA in the IOL insertion device market.  As such, Alcon knew, should have known, or was willfully blind as to the existence of the Patents-in-Suit at the time of Alcon's infringing acts.  Additionally, Alcon's patents cite a number of patent applications and publications

2

by the named inventors of the Patents-in-Suit and/or within the same family as the Patents-in-Suit, thereby confirming that Alcon is familiar with HOYA's intellectual property and knew, should have known, or was willfully blind as to the existence of the Patents-in-Suit at the time of Alcon's infringing acts.  *See, e.g.*, U.S. Patent Nos. 9,463,089; 9,724,191; 10,010,408; 10,172,706; 10,188,506; 10,568,735; 10,588,780.

D.I. 1 (Compl.), ¶ 45.  This is the totality of Plaintiffs' allegation regarding pre-suit knowledge of the Patents-in-Suit.

Relevant to the contributory infringement claims, the particular IOL described in the Patents-in-Suit has an optic (lens) portion with at least two haptics (support structures) attached to the optic.  *See* D.I. 1 (Compl.), ¶ 29; *see also id*., ¶¶ 51, 64, 74, 87, 99, 110.  According to the Complaint, the Folding Configuration Claims require a particular folding configuration of the IOL within the insertion device, such that the free end of the rear haptic is positioned over the optic portion of the IOL.  Specifically, the asserted claims of the '442, '881, and '668 Patents recite that the proximal haptic of the IOL be "bent such that the free end [of the proximal haptic] is positioned over the optic" (D.I. 1 (Compl.), ¶¶ 51, 64, 110), and the asserted claims of the '718 and '826 Patents similarly require that "the end of the rear haptic is in the space between the folded portions of the optic."  D.I. 1 (Compl.), ¶¶ 74, 87.  The Complaint relies on screenshots from a video titled "Alcon UltraSert preloaded IOL delivery system" ("UltraSert Video"),[2] available at https://www.youtube.com/watch?v=uXWhS-BVcz4, when describing operation of the UltraSert. D.I. 1 (Compl.), ¶¶ 37–39; *see also* Ex. 5 at APP.29.  The Complaint also alleges infringement of "[f]or example, Claim 1" of the '442, '811, and '668 Patents (D.I. 1 (Compl.), ¶¶ 51–58, 64–68, 110–13), which constitute the three Apparatus Claims asserted against Defendants.

---

[2]   Because Plaintiffs rely on the UltraSert Video in their Complaint (D.I. 1 (Compl.), ¶¶ 37–39), the Court can consider it with this motion.  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

### B.    Defendant Alcon Inc.

As Plaintiffs acknowledge (D.I. 1 (Compl.), ¶ 9), Alcon Inc. is a foreign company organized under the laws of Switzerland and with its principal place of business in Switzerland. Ex. 1 ("Emery Aff.") at APP.2–APP.3, ¶¶ 4–5.   Alcon Inc. was formed by Novartis AG in connection with a separation from Novartis AG, effective as of the date of the registration of Alcon Inc. in the Swiss Register of Commerce on September 21, 2018.   *Id*. at APP.3, ¶ 6.   Before September 21, 2018, Alcon Inc. did not exist as a corporate entity.   *Id*.  Alcon Inc. is not authorized or licensed to do business in Texas.   *Id*. at APP.4, ¶ 11; *see also id*. at APP.3–APP.4, ¶¶ 9–10. Alcon Inc. does not own or lease property in Texas, has no bank accounts in Texas, and has no agents to accept service of process in Texas.   *Id*. at APP.4, ¶ 12.  Alcon Inc. does not exercise any control or direction over activities with respect to the design or manufacture of the UltraSert in the state of Texas or in any other State or United States territory, and has never marketed, promoted, distributed, or sold any product, let alone the UltraSert, in Texas.  Ex. 1 (Emery Aff.) at APP.4–APP.5, ¶¶ 14–18.

## III.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Rule 12(b)(2)

"[A] court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant."   *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 110 (1969).   The propriety of exercising personal jurisdiction over defendants in patent infringement suits is governed by Federal Circuit law because "the jurisdictional issue is intimately involved with the substance of the patent laws."   *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).   On a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that a defendant is subject to personal jurisdiction based on pleadings and affidavits.   *Id*. at 1017.

4

In the context of specific jurisdiction, "[d]etermining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics*, 566 F.3d at 1017.  The "Texas long-arm statute extends to the limits of federal due process." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Thus, "the two inquires collapse into a single inquiry:  whether jurisdiction comports with due process." *Autogenomics*, 566 F.3d at 1017.

The Federal Circuit has articulated a three-factor test to ascertain whether exercising specific personal jurisdiction comports with due process: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics*, 566 F.3d at 1018. "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Autogenomics*, 566 F.3d at 1019.  In other words, Plaintiffs must satisfy all three preconditions to ensure that the two cornerstones of specific personal jurisdiction are met:  (1) that each defendant has the requisite minimum contacts with the forum; and (2) that notions of fair play and substantial justice are not offended.  *Id.* at 1018–19. "Each [D]efendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

The Federal Circuit on occasion analyzes whether sufficient minimum contacts exist to find specific personal jurisdiction using the "stream-of-commerce" theory.  *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012).  The precise contours of the stream-of-commerce theory are unsettled at best, as the "Supreme Court has yet to reach a consensus on

the proper articulation of the theory." *Id.* at 1362.  The competing viewpoints on the theory stem from the Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court of Calif., Solano Cnty.*, 480 U.S. 102 (1987).  Specifically, it is not clear whether a defendant is subject to specific personal jurisdiction in the forum state merely because it placed a product in the stream of commerce and that product reached the state, or whether an additional action by the defendant demonstrating purposeful direction toward the state is required.  *Compare Asahi*, 480 U.S. at 112 ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."), *with id.* at 117 (Brennan, J., concurring in part and concurring in judgment) (noting that other courts "have not required a showing of additional conduct" beyond "the placement of a product into the stream of commerce").  The Federal Circuit has abstained from "tak[ing] a side on the *Asahi* divide" and has instead repeatedly found that the "result is clear" in cases implicating the stream-of-commerce theory, irrespective of which formulation of the theory is applicable.  *AFTG-TG*, 689 F.3d at 1364–65; *see also Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1382 (Fed. Cir. 2015) ("[T]he results of the case are the same under either formulation of the stream-of-commerce test . . . .  [The] evidence fails to show . . . that [the Defendant] can foresee that [the accused products] will make their way [to the forum state] . . . .  We hold that the district court correctly declined to exercise jurisdiction under a stream-of-commerce theory.").  Thus, under Federal Circuit law, courts should assess "personal jurisdiction premised on the stream-of-commerce theory on a case-by-case basis by inquiring whether the particular facts of a case support the exercise of personal jurisdiction."  *AFTG-TG*, 689 F.3d at 1362.

For a court to properly exercise general jurisdiction over a foreign corporate defendant, the corporation must be "essentially at home in the forum State," such that the "corporation's

affiliations with the State in which suit is brought are so constant and pervasive" that they justify the assertion of jurisdiction "to hear any and all claims against it." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  For a corporation, the place of incorporation and principal place of business are "paradigm bases for the exercise of general jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

### B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2001)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  This pleading standard applies to claims of direct, indirect, and willful infringement.  *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335, 1336–37 (Fed. Cir. 2012); *ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-cv-0962-M, 2018 WL 2971131, at *1 (N.D. Tex. Mar. 29, 2018) (Lynn, C.J.).

Courts analyze a complaint's sufficiency using a two-step process.  First, the court identifies the complaint's allegations that are merely conclusions and thus "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Specifically, the court must disregard "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement."  *Id*. at 678.  Second, the court considers the complaint's remaining factual allegations to determine whether, if the allegations are accepted as true, they plausibly suggest an entitlement to relief.  *Id*. at 678–79.  "Where the factual allegations do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief."  *ZitoVault,* 2018 WL 2971131,

at *1; *see also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

### C.    Indirect Infringement

"[L]iability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys. Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  Knowledge of the patent alone is insufficient for induced infringement. *Id*.  Thus, "[i]nduced infringement is properly pleaded if a patentee alleges there has been direct infringement and that the alleged infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Wright v. E-Sys. LLC*, No. 3:12-CV-04715-K, 2014 WL 11514932, at *2 (N.D. Tex. Jan. 8, 2014) (quoting *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)).

"Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926.  "A plaintiff properly pleads contributory infringement by alleging:  (1) direct infringement; (2) that the defendant 'knew that the combination for which its components were especially made was both patented and infringing'; and (3) that the defendant's components have 'no substantial non-infringing uses.'" *Wright*, 2014 WL 11514932, at *2 (quoting *Cross Med. Prods.*, 424 F.3d at 1312).

### D.    Willful Infringement

To state a claim for willful infringement, a plaintiff must plausibly allege knowledge of the asserted patents.  *See ZitoVault*, 2018 WL 2971131, at *1.  "To willfully infringe *a patent*, . . .  one must have knowledge of it."  *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original).  Willful infringement can, at the district court's discretion, give rise to enhanced damages.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016) (citing

8

35 U.S.C. § 284).  As the Supreme Court has explained, the award of enhanced damages is limited "to egregious cases of misconduct beyond typical infringement."  *Id.*

## IV.    ARGUMENT

### A.    All Claims against Alcon Inc. Should Be Dismissed for Lack of Personal Jurisdiction

The Complaint is devoid of any plausible basis to exercise either specific or general personal jurisdiction over Alcon Inc., warranting dismissal of Plaintiffs' claims against that entity.

#### 1.    Alcon Inc. is not subject to specific personal jurisdiction.

##### a.    Alcon Inc. lacks the requisite minimum contacts with the State of Texas.

Plaintiffs' boilerplate allegations regarding jurisdiction over Alcon Inc. are facially deficient, as Plaintiffs fail to allege that Alcon Inc. purposefully directed its activities at residents in the state of Texas.  *See Autogenomics*, 566 F.3d at 1018.  Plaintiffs do not allege that Alcon Inc. engaged in direct sales in Texas; rather, Plaintiffs appear to allege jurisdiction under a stream-of-commerce theory, contending that "Alcon,"[3] writ large, sold the accused product in Texas.  D.I. 1 (Compl.), ¶ 18.

It is unnecessary for this Court to delve into the Supreme Court's competing approaches elucidated in *Asahi* because the allegations in Plaintiffs' Complaint lack two critical preconditions necessary to apply the stream-of-commerce theory:  (1) the participation of Alcon Inc. in the relevant stream of commerce; and (2) the purposeful direction of the accused UltraSert product to the state of Texas.

---

[3]    Plaintiffs refer to the three Defendants collectively as "Alcon" throughout the Complaint. *See, e.g.*, D.I. 1 (Compl.) at 1.

*First*, the essence of the stream-of-commerce theory is that the particular defendant raising the defense of lack of personal jurisdiction is a "participant" in the stream of commerce. *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part). Plaintiffs cannot meet this requirement because Alcon Inc. plays no role in the sale, marketing, or distribution of UltraSert in the United States, the state of Texas, or this District. Ex. 1 (Emery Aff.) at APP.4–APP.5, ¶¶ 14–18. As listed on the website of the Food and Drug Administration ("FDA"), Alcon Research is listed as the manufacturer for the UltraSert. *See* D.I. 1 (Compl.), ¶ 34 (referring to https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=181244); Ex. 2 at APP.8 (same, listing manufacturer as Alcon Research). And Alcon Labs is the registered applicant with FDA approval to market the UltraSert in the United States. Ex. 3 at APP.12 (available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?ID=P930014S084); *see also* D.I. 1 (Compl.), ¶ 33 (referencing FDA approval for the UltraSert).

Plaintiffs' conclusory assertions that "Alcon" and "Alcon employees," without any acknowledgement of corporate distinctions, "solicit orders for Alcon's products," "demonstrate Alcon's products," "maintain an inventory of Alcon's products," "fill orders from their inventory," "introduce[] infringing products into the stream of commerce," and "employ thousands of individuals" in this District does not change this analysis. D.I. 1 (Compl.), ¶¶ 16–18. Not only are these allegations incorrect as to Alcon Inc., *see* Ex. 1 (Emery Aff.) at APP.3–APP.4, ¶¶ 7–14, but Plaintiffs cannot side-step their burden of demonstrating the adequacy of "each [D]efendant's contacts" by lumping together three distinct corporate entities. *Calder*, 465 U.S. at 790.

Indeed, Plaintiffs' Complaint alleges that Alcon Labs and Alcon Research—not Alcon Inc.—are "licensed with the Texas Department of Health to manufacture and/or distribute medical devices in the State of Texas." D.I. 1 (Compl.), ¶¶ 10–11. As Plaintiffs impliedly recognized,

Alcon Inc. plays no role in distributing the accused UltraSert products anywhere in the United States, which is fatal to their attempt to use a stream-of-commerce theory. Ex. 1 (Emery Aff.) at APP.4–APP.5, ¶¶ 14–18; *see also Synergy Drone LLC v. Parrot S.A. et al.*, No. 1:17-CV-00243-LY, D.I. 68 at 7–8 (W.D. Tex. Apr. 17, 2018) (attached as Ex. 4) (finding insufficient contacts by foreign defendants based on a stream-of-commerce theory where U.S. defendant had "exclusive responsibility for processing all United States sales and distribution of the accused products in the United States," and foreign defendants had not "shipped a single accused product to Texas"); *see also Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 504–505 (D. Del. 2017) (same).

*Second*, Plaintiffs' allegations cannot support application of the stream-of-commerce theory because they lack a specific nexus to the state of Texas. Facts that "may reveal an intent to serve the U.S. market" are irrelevant for stream-of-commerce purposes because "they do not show that [Defendants] purposefully availed [themselves] of the [forum state's] market." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011). Again, Plaintiffs' boilerplate allegation that "***Alcon*** introduces infringing products into the stream of commerce with the knowledge, expectation, and intent that they will be sold and used in the United States, including in the State of Texas and in this District," is insufficient because it fails to distinguish between Alcon Inc. and the U.S. Defendants, and lacks a sufficient nexus to the state of Texas. D.I. 1 (Compl.), ¶ 18.

In sum, because Alcon Inc. has no part in the manufacture, sales, and distribution of the accused UltraSert products in the United States (Ex. 1 (Emery Aff.) at APP.4–APP.5, ¶¶ 14–18), Alcon Inc. has not foreseen "the regular and anticipated flow" of the accused products to Texas. *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part). Any attempt to base personal jurisdiction over Alcon Inc. through a stream-of-commerce theory must therefore fail.

11

Plaintiffs' remaining allegations (D.I. 1 (Compl.), ¶¶ 14–16) are likewise insufficient to establish that Alcon Inc. has had the requisite minimum contacts with the state of Texas.[4]  Contrary to Plaintiffs' allegations, Alcon Inc. has no headquarters in Texas and operates no production, research, or development facilities.  D.I. 1 (Compl.), ¶¶ 14–15; Ex. 1 (Emery Aff.) at APP.4–APP.5, ¶¶ 10–12, 17.  Alcon Inc. does not have any distributors in Texas, nor does it have any bank accounts or agents to accept service of process in Texas.  *Id.*, ¶ 12.  Thus, Alcon Inc. does not have minimum contacts with Texas.  *See, e.g.*, *NexLearn*, 859 F.3d at 1380–81 (affirming finding of no specific personal jurisdiction, where alleged infringer's limited contacts were "insufficient to establish a substantial connection with" the forum state).

> **b.      The exercise of personal jurisdiction against Alcon Inc. would not comport with notions of "fair play and substantial justice."**

Because Alcon Inc. does not have sufficient minimum contacts with Texas, the Court need not determine whether exercise of personal jurisdiction offends traditional notions of "fair play and substantial justice."  *See Autogenomics*, 566 F.3d at 1019.  Even so, it is fundamentally unfair and antithetical to notions of fair play and substantial justice to force a Swiss corporation that lacks minimum contacts with the state of Texas to defend itself against a lawsuit filed in that forum.  *See Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign

---

[4]   Although not relied upon by Plaintiffs in the "[j]urisdiction" section of the Complaint to establish personal jurisdiction (D.I. 1 (Compl.), ¶¶ 14–18), Plaintiffs' allegations about "Alcon" websites (*id.*, ¶¶ 34–35) are also insufficient to establish minimum contacts by Alcon Inc. because Plaintiffs do not allege that the websites are directed at Texas residents, nor do they allege that the websites resulted in sales of the accused UltraSert to Texas residents.  *See NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378–79 (Fed. Cir. 2017) ("The existence of [a] website, without more, is insufficient to show . . . minimum contacts. . . . Something more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State.").  In fact, Alcon Inc. employees do not maintain or update myalcon.com or alcon.com.  Ex. 1 (Emery Aff.) at APP.5, ¶ 19.

legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *see also* Ex. 1 (Emery Aff.) at APP.5, ¶ 20.

**2.      Alcon Inc. is not subject to general personal jurisdiction.**

Alcon Inc. lacks minimum contacts with Texas, let alone contacts that could be characterized as "continuous and systematic general business contacts" so as to render it "essentially at home" and subject to general jurisdiction. *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 416 (1984); *Daimler*, 571 U.S. at 122.  To begin with, Alcon Inc. is not incorporated under the laws of Texas and does not have a registered address in Texas.  Ex. 1 (Emery Aff.) at APP.2–APP.4, ¶¶ 4–5, 10–11.  Plaintiffs' allegation that "Alcon Inc.'s U.S. headquarters is currently located in the Northern District of Texas" is incorrect.  D.I. 1 (Compl.), ¶ 14.  Alcon Inc. maintains no "headquarters" or principal offices in the United States, let alone in Texas.  Ex. 1 (Emery Aff.) at APP.4, ¶ 10; *see also id*. at APP.2–APP.3, ¶¶ 4–5.  In fact, Alcon Inc. does not lease or own any real property in Texas, has no bank accounts or agents to accept service in Texas, and is not authorized or licensed to do business in Texas.  *Id*. at APP.4, ¶¶ 10–12.  Thus Alcon Inc. is not "essentially at home" in Texas, and therefore cannot be subject to general jurisdiction.  *Synergy Drone*, No. 1:17-CV-00243-LY, D.I. 68 at 6 (finding no general jurisdiction over French defendants where they "lack[ed] company affiliations with Texas that are so constant and pervasive as to justify the court's assertion of general personal jurisdiction over the foreign defendants."); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (finding no general jurisdiction over a company where it was "not incorporated in Montana and does not maintain its principal place of business there" and further was not "so heavily engaged in activity in Montana as to render it essentially at home in that State").

Because this Court lacks personal jurisdiction over Alcon Inc., the claims against Alcon Inc. must be dismissed from this case.

**B.**     **Plaintiffs' Allegations Do Not Support a Plausible Inference of Knowledge, Mandating Dismissal of the Pre-suit Indirect and Willful Infringement Claims**

Plaintiffs' Complaint sets forth two speculative and conclusory avenues through which it alleges Defendants had pre-suit knowledge of the Patents-in-Suit:  first, by operating as "direct competitor[s] of HOYA in the IOL insertion device market," and, second, because certain "Alcon"[5] patents "cite a number of patent applications and publications by the named inventors of the Patents-in-Suit and/or within the same family as the Patents-in-Suit."  D.I. 1 (Compl.), ¶ 45. According to Plaintiffs, each of these shows that Defendants "knew, should have known, or w[ere] willfully blind as to the existence of the Patents-in-Suit."  *Id.*

But even accepting these two sets of allegations as true and drawing reasonable inferences in Plaintiffs' favor, neither makes it at all plausible that any Defendant knew, or should have known, of the Patents-in-Suit.  At best, the Complaint's conclusory assertion that operating as a competitor in the same market would, or should, have resulted in knowledge of the Patents-in-Suit merely gives rise to the potential for such knowledge and therefore leads only to an inference of "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  The same is true for the Complaint's conclusory assertion that citing to references tangentially related to the Patents-in-Suit would, or should, have resulted in knowledge of the Patents-in-Suit—nothing in those factual allegations gives rise to more than just the "sheer possibility" of that knowledge.  *Id.*

Other courts have rejected Plaintiffs' theory that being "direct competitors" in a market is, by itself, a sufficient basis for inferring knowledge (or willful blindness) of a particular patent.

---

[5]     That Plaintiffs resort to lumping all three Defendants together in alleging pre-suit knowledge further underscores the generalized and conclusory nature of these allegations.  Pre-suit knowledge must be shown for each Defendant entity, not the amorphous combination Plaintiffs refer to as "Alcon."  *See, e.g.*, *ZitoVault*, 2018 WL 2971131, at *2–3 (discussing knowledge element of pre-suit willfulness for each defendant entity).

*See, e.g.*, *Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. CV 19-4952-MWF (RAOx), 2019 WL 8161141, at \*4 (C.D. Cal. Aug. 30, 2019) (dismissing willful infringement claims and request for enhanced damages where, "[a]lthough Plaintiff alleges that Defendants are competitors in the market, Plaintiff does not allege additional facts to establish how Defendants would have been aware of [its] patents"); *Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharm., Inc.*, No. 18cv2434(DLC), 2018 WL 5282887, at \*3 (S.D.N.Y. Oct. 24, 2018) (concluding that allegation of, *inter alia*, alleged infringer's awareness of patentee's "existence in the marketplace as a competitor" was "insufficient to state a claim for willful infringement"); *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 533 (D. Del. 2011) (rejecting patentee's assertion "that defendants knew or should have known of the '757 patent by virtue of their participation in the interactive television market" and dismissing indirect infringement claim). Such a theory, if adopted by courts, would effectively impute to companies knowledge of all of their competitors' patents, an absurd proposition, particularly here, given the great number of patents that exist in the IOL space. *See, e.g.*, *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at \*5 (W.D. Tex. Apr. 30, 2014) ("There is simply no indication that constructive notice [of a patent for willful blindness purposes] is meant to embrace the hundreds, if not thousands, of listed patents that would be generated in many cases based on the listing of a patent on the face of another patent." (quoting *Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817, 831 (D. Del. 2011), *aff'd,* 522 F. App'x 912 (Fed. Cir. 2013))).

Plaintiffs' theory that citing to certain "patent applications and publications by the named inventors of the Patents-in-Suit and/or within the same family as the Patents-in-Suit" (D.I. 1 (Compl.), ¶ 45) as a basis for inferring knowledge or willful blindness with respect to the (uncited) Patents-in-Suit is also without support.  Courts consistently reject the proposition that citing to

related patents, or even to the patent application that ultimately issued as the asserted patent, is sufficient to demonstrate knowledge of the asserted patent itself. *See, e.g.*, *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018) (concluding that the complaint's allegation that "the parent application of the Asserted Patents was cited in the course of prosecuting five Cisco-owned patents . . . is too attenuated to plausibly infer that Cisco had pre-suit knowledge of the Asserted Patents"); *Affinity Labs.*, 2014 WL 12551207, at *5 ("[T]he defendant's awareness of a plaintiff's patent portfolio is not enough to support a willful blindness claim to defeat a motion to dismiss."); *see also Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC*, No. SACV 20-1422 JVS (KESx), 2020 WL 7872961, at *2 (C.D. Cal. Nov. 20, 2020) (dismissing claims for induced and willful infringement where patentee's allegations of knowledge were all "derivative from the central theory that Sony knew of the '109 Patent because it knew of the '109 application and monitored it"); *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. CV 13-335-LPS-CJB, 2017 WL 6337188, at *1 (D. Del. Dec. 12, 2017) ("PDIC asks the Court to do more than infer knowledge of a patent cited by Ubisoft during prosecution; PDIC contends that Ubisoft's citation of a patent that itself discusses the '129 patent makes it plausible that Ubisoft knew of the '129 patent before this litigation.  PDIC's complaint does not support such an inference.").

     This Court's ruling in *ZitoVault* is instructive.  There, the patentee alleged that IBM had pre-suit knowledge of the asserted patent "because [it] 'was cited as prior art during the prosecution' of IBM's own patent" and was a reference upon which the examiner relied to reject several of IBM's pending claims.  *ZitoVault*, 2018 WL 2971131, at *2.  As a result, "[t]he Court can reasonably infer that [IBM] knew of the '257 patent because [IBM] attempted to distinguish its patent from the '257 patent during prosecution."  *Id.*  Here, when discussing "Alcon's patents,"

Plaintiffs' Complaint **does not** assert that any "Alcon" patent cites to the Patents-in-Suit, or that the Patents-in-Suit were before the U.S. Patent and Trademark Office during the prosecution of "Alcon's patents." *See* D.I. 1 (Compl.), ¶ 45.

Further, the Complaint does not provide any information regarding which Defendant (if any) was actually involved in the prosecution of "Alcon's patents." *See* D.I. 1 (Compl.), ¶ 45. To the extent that any Defendant has direct connection to the "Alcon" patents discussed in the Complaint, then the allegations regarding "Alcon's" pre-suit knowledge based on "Alcon's patents" would require imputing knowledge among corporate entities, which Plaintiffs fail to do. Merely pointing out the corporate relationship among entities is insufficient. *See ZitoVault*, 2018 WL 2971131, at *3 ("Knowledge of a patent by a parent corporation is not necessarily imputed to its subsidiary. . . . Plaintiff needs to set out, in its Complaint, more than just the bare facts of the parent/subsidiary relationship in order to plausibly allege that [IBM subsidiary] SoftLayer had knowledge of the '257 patent.").

The allegations of induced infringement and contributory infringement, which are merely bare recitations of the respective claim elements, do not add anything more regarding Defendants' alleged pre-suit knowledge of the Patents-in-Suit. *See* D.I. 1 (Compl.), ¶¶ 59–60, 69–70, 82–83, 94–95, 105–106, 114–15. Such "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2001); *see also Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018). The Complaint's inability to offer anything more than "'naked assertion[s]' devoid of 'further factual enhancement'" renders it insufficient with respect to pleading pre-suit knowledge of the Patents-in-Suit. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

17

Finally, although willful blindness can satisfy the knowledge requirement, the Complaint lacks any factual allegations that would support a plausible inference that Defendants "subjectively believe[d] that there is a high probability that a fact exists" (*i.e.*, that the Patents-in-Suit exist), but nonetheless took "deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).

In sum, because Plaintiffs failed to adequately plead pre-suit knowledge of the Patents-in-Suit—a prerequisite for both indirect and willful infringement (*see supra* at III.C, III.D)—their pre-suit indirect infringement and willful infringement claims should be dismissed.[6]

### C.    Plaintiffs' Allegations Do Not Support a Plausible Inference of a Pre-suit Intent to Infringe, Independently Mandating Dismissal of Plaintiffs' Pre-suit Induced Infringement Claims

In addition to failing to plead pre-suit knowledge of the Patents-in-Suit, Plaintiffs fail to plead facts relating to Defendants' pre-suit activity "that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal of indirect infringement claim where complaint "simply recites the legal conclusion that Defendants acted with specific intent"). Indeed, "knowledge of the acts alleged to constitute infringement is not enough." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). Rather,

---

[6]    Although the Complaint generally alleges "acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f)" (D.I. 1 (Compl.), ¶ 42), the specific counts address only direct, induced, and contributory infringement under § 271(a), (b), and (c), respectively. *Id.*, ¶¶ 48–115. To the extent Plaintiffs are alleging infringement under § 271(f), then the arguments herein with respect to failure to plead pre-suit knowledge of the Patents-in-Suit or pre-suit specific intent to infringe apply to that claim as well. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1222–23 (Fed. Cir. 2006) (noting that § 271(f)'s inducement requirement "requires . . . a requisite showing of intent" to infringe).

"specific intent and action to induce infringement must be proven."  *Id.*; *see also Commil*, 135 S. Ct. at 1926 ("[L]iability for induced infringement can only attach if the defendant knew of the patent *and knew as well that 'the induced acts constitute patent infringement*.'").  But the Complaint fails to plausibly allege pre-suit knowledge of the Patents-in-Suit, let alone knowledge that any allegedly induced acts constituted infringement, and "simply recit[ing] the legal conclusion that Defendants acted with specific intent" is insufficient.  *Addiction*, 620 F. at 938.

Because Plaintiffs additionally failed to adequately plead pre-suit intent to infringe the Patents-in-Suit, their pre-suit induced infringement claims should be dismissed.

> **D.     Plaintiffs' Allegations Do Not Support a Plausible Inference of "Egregious" Conduct Required for Enhanced Damages, Independently Mandating Dismissal of Plaintiffs' Willful Infringement Claims in Their Entirety**

The Complaint does not plead any facts plausibly showing that Defendants engaged in any egregious conduct that would support a finding of pre- or post-suit willful infringement.  Mere knowledge of the Patents-in-Suit is insufficient to support Plaintiffs' willfulness allegation, as "[a]n award of enhanced damages is 'generally to be reserved for egregious cases typified by willful misconduct.'"  *See Richmond v. SW Closeouts, Inc.*, No. 3:14-cv-4298-K, 2017 WL 722201, at *6 (N.D. Tex. Jan. 30, 2017) (quoting *Halo*, 136 S. Ct. at 1934), *report and recommendation adopted*, No. 3:14-CV-4298-K, 2017 WL 722029 (N.D. Tex. Feb. 22, 2017); *see also Meetrix IP*, 2018 WL 8261315, at *3 (dismissing willful infringement claim for failing to allege "any facts raising a plausible inference of the egregious behavior required under *Halo*" where it "wholly lacks such factual allegations" that would "permit[] a plausible inference of subjective willfulness," a "fatal flaw[]"); *Novartis*, 2018 WL 5282887, at *2 ("In order to survive a motion to dismiss a claim of willful misconduct, a complaint must plausibly plead facts sufficient to support an inference that the infringement at issue is 'egregious' in addition to pleading subjective intent." (collecting cases)).

Here, Plaintiffs' entire allegation regarding willfulness is set out in one sentence: "Alcon's infringement of the Patents-in-Suit has been, and continues to be, willful because Alcon has committed and continues to commit acts of infringement even though Alcon knew or should have known that its actions constituted an unjustifiably high risk of infringement." D.I. 1 (Compl.), ¶ 46. This is a legal conclusion, not a factual allegation, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Neither Plaintiffs' conclusory willfulness allegation nor anything else in the Complaint suggests that Defendants' conduct, either pre- or post-suit, was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932. Even "[a]ssuming for the sake of argument that the complaint put [Defendants] on notice of the existing patents, and [Defendants] continued [their] manufacturing [of their] infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness." *M & C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (dismissing willful infringement claim and request for enhanced damages because "no reasonable inference can be made that the alleged post-suit conduct in this case constitutes willful infringement" where "there is an insufficient factual basis to support the allegation [of] pre-suit knowledge" and defendant's post-suit conduct amounted to "garden-variety" patent infringement). For this additional reason, Plaintiffs' willful infringement claim should be dismissed in its entirety.

20

**E.** **Plaintiffs' Allegations Do Not Support a Plausible Inference of Contributory Infringement for the Folding Configuration Claims and the Apparatus Claims, Independently Mandating Dismissal of Those Claims**

**1.** **For the Folding Configuration Claims, Plaintiffs' allegations do not support a plausible inference of no substantial non-infringing use.**

To properly "state a claim for contributory infringement, . . . a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Bill of Lading*, 681 F.3d at 1337. "A substantial non-infringing use is one that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Albritton v. Acclarent, Inc.*, No. 3:16-CV-03340-M, 2017 WL 6628122, at *5 (N.D. Tex. Dec. 27, 2017) (Lynn, C.J.) (quoting *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327–29 (Fed. Cir. 2009)). Thus, "[t]he relevant inquiry is 'whether the accused products can be used for purposes other than infringement.'" *Id*. (quoting *Bill of Lading*, 681 F.3d at 1338).

The UltraSert Video incorporated into the Complaint shows that the IOL, as it is advanced through the UltraSert for insertion, can be folded such that the free end of the rear haptic is positioned neither over the optic nor between the folded portions of the optic, as recited by the Folding Configuration Claims. *See* Ex. 5 at APP.31 (showing rear haptic fully extended away from the optic), APP.32 (showing rear haptic partially extended way from the optic); *see also id*. at APP.30 (showing multiple folding configurations, including where the rear haptic is partially extended away from the optic and where the rear haptic is fully extended away from the optic), APP.33 (comparing "tucked" rear haptic configuration to "loosely looped but not straight" rear haptic configuration). Thus, "[a]lthough the [Complaint] recites the [UltraSert] devices have no substantial non-infringing uses," it "also incorporates [Alcon] marketing materials that show the [UltraSert] devices have a non-infringing use, in that the materials depict" configurations of the IOL where the free end of the rear haptic is ***not*** positioned over the optic or between the folded

21

portions of the optic. *Albritton*, 2017 WL 6628122, at *5. "Because the [Complaint] contains information that the [UltraSert] devices can have non-infringing uses," the Court should conclude—as it did in *Albritton*—that Plaintiffs have failed to state a claim for contributory infringement for the Folding Configuration Claims. *Id*.

> **2.     For the Apparatus Claims, Plaintiffs' allegations fail to identify any "component" of a patented machine.**

Contributory infringement of a "patented machine" involves the sale, offer to sell, or importing of "a component of [the] patented machine." 35 U.S.C. § 271(c); *see also Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (noting that contributory infringement "deal[s] with the situation where a seller would sell a component which was not itself technically covered by the claims of a product or process patent"). The Complaint, through its allegations of direct infringement, is clear that the UltraSert itself is the (allegedly) infringing device. *See, e.g.*, D.I. 1 (Compl.), ¶¶ 31, 40, 50, 63, 73, 86, 98, 109. As such, Plaintiffs' allegations of contributory infringement of the Apparatus Claims are defective because the UltraSert is not "a component of a patented machine," and the Complaint fails to identify any specific "component" that contributes to the infringement of the Patents-in-Suit. *See, e.g.*, D.I. 1 (Compl.), ¶ 31 (alleging that "Alcon makes, imports, uses, sells, and/or offers for sale ***IOL insertion devices*** that infringe at least one claim of each of the Patents-in-Suit ('Accused Products')."). Courts routinely dismiss contributory infringement claims where a patentee fails to sufficiently identify any "component" of the patented machine. *See, e.g.*, *Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-cv-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) (dismissing contributory infringement claim where the "amended complaint d[id] not identify the component, material, or apparatus that allegedly contributes to the direct infringement of" the asserted patents); *HSM Portfolio LLC v. Fujitsu Ltd.*, No. CV 11-770-RGA, 2014 WL 4468088, at *1 (D. Del.

Sept. 9, 2014) (dismissing contributory infringement claim because "[c]ontributory infringement requires 'a *component* of a patented [invention].'" (quoting 35 U.S.C. § 271(c))).

Perhaps recognizing this dilemma, Plaintiffs make vague reference to "[t]he accused components within" the UltraSert in their contributory infringement allegations.  D.I. 1 (Compl.), ¶¶ 60, 70, 83, 95, 106, 115.  But, in those same allegations, it is the accused ***UltraSert***—not the device's component parts—that Plaintiffs accuse Defendants of "selling and offering to sell" and "causing . . . to be manufactured, used, sold, and offered for sale."  *Id*.  The UltraSert cannot be both the (allegedly) patented invention ***and*** a component of the same.  *See HSM Portfolio*, 2014 WL 4468088, at * 1 ("Toshiba's main argument is that the accused semiconductor chips are not components especially designed for an infringing product because they are accused of direct infringement in and of themselves.  I agree.").  Thus, Plaintiffs' claim for contributory infringement for the Apparatus Claims should be dismissed.

## V.   CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court dismiss (i) all of Plaintiffs' claims against Alcon Inc.; (ii) Plaintiffs' claims against all Defendants for pre-suit induced, contributory, and willful infringement; (iii) Plaintiffs' post-suit claims against all Defendants for willful infringement; and (iv) Plaintiffs' post-suit contributory infringement claims against all Defendants for the Folding Configuration and Apparatus Claims.

23

Respectfully submitted,          Dated: February 19, 2021


KIRKLAND & ELLIS LLP

*/s/ Jeremy A. Fielding*

Jeremy A. Fielding
Texas Bar No. 24040895
NDTX Bar No. 24040895
KIRKLAND & ELLIS LLP
1601 Elm Street, Suite 2700
Dallas, Texas 75201
Tel: (214) 972-1754
Fax: (214) 972-1771
jeremy.fielding@kirkland.com

Gregg F. LoCascio (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20005
Tel: (202) 389-5000
Fax: (202) 389-5200
gregg.locascio@kirkland.com

Jeanne M. Heffernan (*pro hac vice forthcoming*)
Ryan Kane (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
jheffernan@kirkland.com
ryan.kane@kirkland.com


ATTORNEYS FOR DEFENDANTS
ALCON INC., ALCON LABORATORIES, INC.,
and ALCON RESEARCH, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Jeremy A. Fielding*
Jeremy A. Fielding, P.C.