# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| HOYA CORPORATION and HOYA SURGICAL OPTICS, INC. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Civil Action No. 3:20-cv-03629** ) ) JURY TRIAL DEMANDED |
| ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LLC, | ) ) ) |
| Defendants. | ) ) ) |

## APPENDIX TO DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIMS PURSUANT TO 12(B)(2) AND 12(B)(6)

Jeremy A. Fielding
Texas Bar No. 24040895
NDTX Bar No. 24040895
KIRKLAND & ELLIS LLP
1601 Elm Street, Suite 2700
Dallas, Texas 75201
Tel: (214) 972-1754
Fax: (214) 972-1771
jeremy.fielding@kirkland.com

Gregg F. LoCascio *(pro hac vice forthcoming)*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 2005
Tel: (202) 389-5000
Fax: (202) 389-5200
gregg.locascio@kirkland.com

Jeanne M. Heffernan *(pro hac vice forthcoming)*
Ryan Kane *(pro hac vice forthcoming)*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
jheffernan@kirkland.com
ryan.kane@kirkland.com

ATTORNEYS FOR DEFENDANTS
ALCON INC., ALCON LABORATORIES,
INC., AND ALCON RESEARCH, LLC

## TABLE OF CONTENTS

| Exhibit | Description | Appendix Range |
|---|---|---|
| Ex. 1 | Sworn affidavit of Jean-Baptiste Emery, dated Feb. 16, 2021. | APP.1–APP.6 |
| Ex. 2 | FDA Website, "Class 2 Device Recall Acrysof.IQ IOL w/UltraSert, System," available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRes/res.cfm?ID=181244 (last accessed Feb. 19, 2021). | APP.7– APP.10 |
| Ex. 3 | FDA Website, "Premarket Approval (PMA)," available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?ID=P930014S084 (last accessed Feb. 19, 2021). | APP.11– APP.14 |
| Ex. 4 | *Synergy Drone LLC, v. Parrot S.A. et al.*, 1:17-CV-00243-LY, D.I. 68 (W.D. Tex. Apr. 17, 2018) | APP.15– APP.27 |
| Ex. 5 | Screen captures from "Alcon UltraSert preloaded IOL delivery system," available at https://www.youtube.com/watch?v=uXWhS-BVcz4 (last accessed Feb. 19, 2021). | APP.28– APP.33 |

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| HOYA CORPORATION and HOYA SURGICAL OPTICS, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **Civil Action No. 3:20-cv-03629** |
| ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LLC, | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

**AFFIDAVIT OF JEAN-BAPTISTE EMERY
IN SUPPORT OF ALCON INC.'S MOTION TO DISMISS**

Jean-Baptiste Emery, being duly sworn, hereby deposes and states as follows:

1.     My name is Jean-Baptiste Emery.  I reside in Fribourg, Switzerland.  I am over eighteen years of age, am of sound mind, and am competent to make this Affidavit.

2.     I have personal knowledge of all of the facts hereinafter set forth.  I submit this Affidavit in support of the Motion to Dismiss filed by Alcon Inc.

3.     Since October 2018, I have been the Executive Director, Governance and Securities at Alcon Inc.  In that role, I am in particular responsible for Swiss law corporate governance and securities aspects that may apply to Alcon Inc.

4.     Alcon Inc. is a stock corporation organized under the laws of Switzerland in accordance with article 620 et seq. of the Swiss Code of Obligations and registered with the Register of Commerce of the Canton of Fribourg, Switzerland, under registration number CHE-234.781.164, domiciled in Fribourg, Switzerland, with its principal executive office and registered office located at Rue Louis-d'Affry 6, 1701 Fribourg, Switzerland.

1

5.      Alcon Inc. is registered in the Register of Commerce of the Canton of Fribourg, Switzerland under each of Alcon AG, Alcon SA, and Alcon Inc., all of which are stated in Alcon's Articles of Incorporation as the corporate name.

6.      Alcon Inc. was formed by Novartis AG in connection with the spin-off of the Alcon business from the Novartis group, effective as of the date of the registration of Alcon Inc. in the Register of Commerce of the Canton of Fribourg, Switzerland, on September 21, 2018.  Before September 21, 2018, Alcon Inc. named as a Defendant in this suit did not exist as a corporate entity.

7.      Alcon Inc. has never done business as Alcon Laboratories, Inc.  Alcon Laboratories, Inc. is a wholly-owned subsidiary of Alcon Inc.  Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in the State of Texas.  Alcon Inc. and Alcon Laboratories, Inc. are separate corporate entities, and their corporate formalities and separate identities have not been disregarded.  For example, Alcon Inc. and Alcon Laboratories, Inc. keep separate books and records, file separate tax returns, and have different corporate officers.

8.      Alcon Inc. has never done business as Alcon Research, LLC.  Alcon Research, LLC is a wholly-owned subsidiary of Alcon Inc.  Alcon Research, LLC is a Delaware corporation with its principal place of business in the State of Texas.  Alcon Inc. and Alcon Research, LLC are separate corporate entities, and their corporate formalities and separate identities have not been disregarded.  For example, Alcon Inc. and Alcon Research, LLC keep separate books and records, file separate tax returns, and have different corporate officers.

9.      Alcon Inc. is not authorized or empowered to act as an agent for Alcon Laboratories, Inc. or Alcon Research, LLC in the State of Texas or in any other State or United States territory.

2

10. Alcon Inc. does not have a registered address in the United States. Alcon Inc. has no principal office or headquarters in the State of Texas or in any other State or United States Territory.

11. Alcon Inc. is not authorized or licensed to do business in the State of Texas or in any other State or United States territory.

12. Alcon Inc. does not own or lease property in the State of Texas or in any other State or United States territory. Alcon Inc. does not have bank accounts or agents to accept service of process in the State of Texas or in any other State or United States territory. Likewise, Alcon Inc. does not have any distributors in the State of Texas or any other State or United States territory.

13. Alcon Inc. does not "employ thousands of individuals within the Northern District of Texas," as alleged in the complaint in the above-captioned lawsuit.

14. Alcon Inc. does not supply any goods or services in the State of Texas, nor does it market products in the State of Texas. Alcon Inc. has never maintained a national market in the United States or worked with a distributor or the equivalent whose sales territory was known by Alcon Inc. to include the State of Texas.

15. The UltraSert insertion device is a disposable intraocular lens ("IOL") injector with a preloaded IOL. It is my understanding that UltraSert is identified as the accused product in the Complaint in the above-captioned lawsuit.

16. Alcon Inc. did not sell in the United States, and has never sold in the United States, the UltraSert product that is the subject of the above-captioned lawsuit.

17. Alcon Inc. is not in the business of developing, packaging, marketing, manufacturing, promoting, selling, or distributing UltraSert or any other product or service in the State of Texas or in any other State or United States territory. In addition, Alcon Inc. does not

3

exercise any control or direction over activities with respect to the design or manufacture of UltraSert in the State of Texas or in any other State or United States territory.

18.    Alcon Inc. has never marketed, promoted, distributed or sold any product, including, without limitation, the UltraSert product, in the State of Texas or any other State or United States territory.

19.    No Alcon Inc. employee maintains or updates myalcon.com or alcon.com.

20.    Alcon Inc. is domiciled in Switzerland, and there would be a burden to Alcon Inc. if it were forced to defend itself against litigation in Texas.

21.    Alcon Inc. has not agreed to waive, and cannot waive, Article 271 of the Swiss Criminal Code, which impacts its ability to provide evidence in foreign proceedings in response to compulsory document requests, subpoenas, or any other judicial process subject to enforcement by civil or criminal sanction.

NAME _____

4

**AUTHENTICATION:** Verified for authentication of signature of Mr. **Jean-Baptiste EMERY**, in Fribourg (Switzerland), layout four of this original document.

Givisiez (Switzerland), 16th February 2021.

Certified :

# EXHIBIT 2

**FDA**

FDA Home[3] Medical Devices[4] Databases[5]

## Class 2 Device Recall Acrysof.IQ IOL w/UltraSert, System



[6] 510(k)|DeNovo[8]|   Registration &   |   Adverse   |Recalls[11]|PMA[12]|HDE[13]|Classification[14]|Standards[15]
[7]                 Listing[9]          Events[10]
CFR Title 21[16]|Radiation-Emitting Products[17]|X-Ray Assembler[18]|Medsun Reports[19]|CLIA[20]|TPLC[21]

New Search                                                              Back to Search Results

### Class 2 Device Recall Acrysof.IQ IOL w/UltraSert, System

See Related Information[22]

| | |
|---|---|
| **Date Initiated by Firm** | April 17, 2020 |
| **Create Date** | June 05, 2020 |
| **Recall Status[1]** | Terminated [3] on February 05, 2021 |
| **Recall Number** | Z-2287-2020 |
| **Recall Event ID** | 85563[23] |
| **PMA Number** | P930014S084[24] |
| **Product Classification** | intraocular lens[25] - Product Code HQL[26] |
| **Product** | Acrysof, IQ IOL w/UltraSert System, AcrySof IQ ASPHERIC IOL, 20.5 D, SP ACRYLIC FOLDABLE LENS, w/UltraSert DELIVERY SYSTEM, UV w/BLUE LIGHT FILTER. 13.0mm. LENGTH, 6.0mm ANTERIOR ASYMMETRIC BICONVEX OPTIC, PLANAR HAPTICS. |
| **Code Information** | Lot number 12726594; Model Number: AU00T0V205; UDI # 038065GMN000065H7; 0380652394772(17)220630(21)12726594000(30)1 |
| **Recalling Firm/ Manufacturer** | Alcon Research LLC Aspex Facility 6201 South Fwy Fort Worth TX 76134-2099 |
| **For Additional Information Contact** | Heather Attra 817-293-0450 |
| **Manufacturer Reason for Recall** | Incorrect IOL diopter |
| **FDA Determined Cause [2]** | Process control |
| **Action** | On 04/17/2020, the firm sent an "Urgent: Voluntary Medical Device Removal' letter to customers via overnight mail that the firm became aware that there was a potential problem relating to the IOL of wrong sized diopter, in a pre-loaded delivery system. Should a patient be implanted with an IOL having incorrect optical power, a refractive error would result. Patients with a refractive error may experience symptoms from mild blurred vision to decreased vision, which may require additional interventions such as spectacles or surgical intervention to correct. The firm is instructing customers to: (i) Return any unused product of specified lot number (ii) The firm's Customer Service will contact customers to arrange for the return and replacement of affected Pre-loaded delivery system (iii) Fill out "Response Form" (iv) Return the "Response form" via fax or email to the firm, provided of contact information: Fax No.: 817-302-4337 ; E-mail: Market.Actions@alcon.com Additionally, the |

**APP.8**

firm is asking customers to: Reach out to firm's Sales Representative for any questions.

| | |
|---|---|
| **Quantity in Commerce** | 84 units |
| **Distribution** | US Nationwide distribution including in the states of TX, PA, CT, IA, MI, NE. |
| **Total Product Life Cycle** | TPLC Device Report[27] |

[1] A record in this database is created when a firm initiates a correction or removal action. The record is updated if the FDA identifies a violation and classifies the action as a recall, and it is updated for a final time when the recall is terminated. Learn more about medical device recalls[28].

[2] Per FDA policy, recall cause determinations are subject to modification up to the point of termination of the recall.

[3] For details about termination of a recall see Code of Federal Regulations (CFR) Title 21 §7.55[29].

**PMA Database**      PMAs with Product Code = HQL and Original Applicant = ALCON LABORATORIES, INC.[30]

---

**Links on this page:**

1. http://www.addthis.com/bookmark.php?u508=true&v=152&username=fdamain
2. http://www.addthis.com/bookmark.php
3. https://www.fda.gov/
4. http://www.fda.gov/MedicalDevices/default.htm
5. http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/Databases/default.htm
6. /scripts/cdrh/devicesatfda/index.cfm
7. /scripts/cdrh/cfdocs/cfPMN/pmn.cfm
8. /scripts/cdrh/cfdocs/cfpmn/denovo.cfm
9. /scripts/cdrh/cfdocs/cfRL/rl.cfm
10. /scripts/cdrh/cfdocs/cfMAUDE/TextSearch.cfm
11. /scripts/cdrh/cfdocs/cfRES/res.cfm
12. /scripts/cdrh/cfdocs/cfPMA/pma.cfm
13. /scripts/cdrh/cfdocs/cfHDE/hde.cfm
14. /scripts/cdrh/cfdocs/cfPCD/classification.cfm
15. /scripts/cdrh/cfdocs/cfStandards/search.cfm
16. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm
17. /scripts/cdrh/cfdocs/cfPCD_RH/classification.cfm
18. /scripts/cdrh/cfdocs/cfAssem/assembler.cfm
19. /scripts/cdrh/cfdocs/Medsun/searchReportText.cfm
20. /scripts/cdrh/cfdocs/cfClia/Search.cfm
21. /scripts/cdrh/cfdocs/cfTPLC/tplc.cfm
22. http://www.fda.gov/safety/recalls/enforcementreports/default.htm
23. /scripts/cdrh/cfdocs/cfRES/res.cfm?start_search=1&event_id=85563
24. /scripts/cdrh/cfdocs/cfpma/pma.cfm?ID=P930014S084
25. /scripts/cdrh/cfdocs/cfPCD/classification.cfm?ID=HQL
26. /scripts/cdrh/cfdocs/cfPCD/classification.cfm?ID=HQL

27. /scripts/cdrh/cfdocs/cfTPLC/tplc.cfm?id=HQL

28. http://www.fda.gov/MedicalDevices/Safety/ListofRecalls/ucm329946.htm

29. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm?fr=7.55

30. /scripts/cdrh/cfdocs/cfPMA/pma.cfm?
start_search=1&productcode=HQL&applicant=ALCON%20LABORATORIES%2C%20INC%
2E

Page Last Updated: 02/18/2021

Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Language Assistance Available: Español | 繁體中文 | Tiếng Việt | 한국어 | Tagalog | Русский | العربية | Kreyòl Ayisyen | Français | Polski | Português | Italiano | Deutsch | 日本語 | فارسی | English

Accessibility Contact FDA Careers FDA Basics FOIA No FEAR Act Nondiscrimination Website Policies / Privacy

**FDA**

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA 📞 (1-888-463-6332 📞)
Contact FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**

# EXHIBIT 3

**FDA**

# Premarket Approval (PMA)



New Search[22]                                    Back to Search Results

Note: This medical device record is a PMA supplement. A supplement may have changed the device description/function or indication from that approved in the original PMA. Be sure to look at the original PMA[23] record for more information.

| | |
|---|---|
| **Device** | ACRYSOF IQ ASPHERIC IOL WITH THE ULTRASERT PRELOADED DELIVERY SYSTEM |
| **Generic Name** | Intraocular Lens |
| **Regulation Number** | 886.3600[24] |
| **Applicant** | ALCON LABORATORIES, INC. 6201 South Freeway Dr. Fort Worth, TX 76134 |
| **PMA Number** | P930014 |
| **Supplement Number** | S084 |
| **Date Received** | 08/07/2015 |
| **Decision Date** | 09/29/2015 |
| **Product Code** | HQL[25] |
| **Advisory Committee** | Ophthalmic |
| **Supplement Type** | Real-Time Process |
| **Supplement Reason** | Change Design/Components/Specifications/Material |
| **Expedited Review Granted?** | No |
| **Combination Product** | No |

**Approval Order Statement**

APPROVAL TO MODIFY THE ACRYSERT C DELIVERY SYSTEM BY REDUCING THE SIZE OF THE NOZZLE TIP, ADDING AN EXTERNAL NOZZLE TIP DEPTH GUARD, AND ADDING A PLUNGER SPRING AND PLUNGER LOCK, THE DEVICE, AS MODIFIED, WILL BE MARKETED UNDER THE TRADE NAME ACRYSOF IQ ASPHERIC INTRAOCULAR LENS WITH ULTRASERT PRELOADED DELIVERY SYSTEM. THE ACRYSOF IQ POSTERIOR CHAMBER INTRAOCULAR LENSES ARE INDICATED FOR THE REPLACEMENT OF THE HUMAN LENS TO ACHIEVE VISUAL CORRECTION OF APHAKIA IN ADULT PATIENTS FOLLOWING CATARACT SURGERY. THE LENS IS INTENDED FOR PLACEMENT IN THE CAPSULAR BAG.

---

**Links on this page:**

1. http://www.addthis.com/bookmark.php?
   u508=true&v=152&username=fdamain

2. http://www.addthis.com/bookmark.php

3. https://www.fda.gov/

4. https://www.fda.gov/Medical-Devices

5. https://www.fda.gov/medical-devices/device-advice-comprehensive-
   regulatory-assistance/medical-device-databases

6. /scripts/cdrh/devicesatfda/index.cfm

7. /scripts/cdrh/cfdocs/cfPMN/pmn.cfm

8. /scripts/cdrh/cfdocs/cfpmn/denovo.cfm

9. /scripts/cdrh/cfdocs/cfRL/rl.cfm

10. /scripts/cdrh/cfdocs/cfMAUDE/TextSearch.cfm

11. /scripts/cdrh/cfdocs/cfRES/res.cfm

12. /scripts/cdrh/cfdocs/cfPMA/pma.cfm

13. /scripts/cdrh/cfdocs/cfHDE/hde.cfm

14. /scripts/cdrh/cfdocs/cfPCD/classification.cfm

15. /scripts/cdrh/cfdocs/cfStandards/search.cfm

16. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm

17. /scripts/cdrh/cfdocs/cfPCD_RH/classification.cfm

18. /scripts/cdrh/cfdocs/cfAssem/assembler.cfm

19. /scripts/cdrh/cfdocs/Medsun/searchReportText.cfm

20. /scripts/cdrh/cfdocs/cfClia/Search.cfm

21. /scripts/cdrh/cfdocs/cfTPLC/tplc.cfm

22. /scripts/cdrh/cfdocs/cfpma/pma.cfm

23. /scripts/cdrh/cfdocs/cfpma/pma.cfm?
    start_search=1&PMANumber=P930014&SupplementType=NONE

24. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm?FR=886.3600

25. /scripts/cdrh/cfdocs/cfPCD/classification.cfm?
    start_search=1&ProductCode=HQL

Page Last Updated: 02/15/2021

Note: If you need help accessing information in different file formats, see Instructions for
Downloading Viewers and Players.
Language Assistance Available: Español | 繁體中文 | Tiếng Việt | 한국어 | Tagalog | Русский | العربية
| Kreyòl Ayisyen | Français | Polski | Português | Italiano | Deutsch | 日本語 | فارسی | English

   Accessibility Contact FDA Careers FDA Basics FOIA No FEAR Act Nondiscrimination Website
   Policies / Privacy

FDA

U.S. Food and Drug Administration

https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?ID=P930014S084                    2/19/2021

10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA 📞 (1-888-463-6332 📞)
Contact FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety
Emergency Preparedness International Programs News & Events Training and Continuing
Education Inspections/Compliance State & Local Officials Consumers Industry Health
Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

18 APR 17  PM 12: 08

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| SYNERGY DRONE LLC, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO.  1:17-CV-00243-LY |
| | § | |
| PARROT S.A., | § | |
| PARROT DRONES S.A.S., AND | § | |
| PARROT, INC., | § | |
| DEFENDANTS. | § | |

## ORDER GRANTING DEFENDANTS PARROT S.A.'S AND PARROT DRONES S.A.S' MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)

Before the court in the above styled and numbered patent-infringement action are Defendants Parrot S.A. ("Parrot") and Parrot Drones S.A.S.'s ("Parrot Drones") Motion To Dismiss the Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) filed October 10, 2017 (Clerk's Document No. 44), Plaintiff Synergy Drone LLC's Response in Opposition to Parrot and Parrot Drones' Motion To Dismiss the Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) filed October 24, 2017 (Clerk's Document No. 46), Parrot and Parrot Drones' Reply Memorandum in Support of Their Motion To Dismiss the Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) filed October 31, 2017 (Clerk's Document No. 47), and the parties' Stipulation of Facts filed March 22, 2018 (Clerk's Document No. 63).  Parrot and Parrot Drones, both French companies, contend that Synergy Drone's First Amended Complaint For Patent Infringement filed September 11, 2017 (Clerk's Document No. 36) fails to establish a preliminary showing that the court has personal jurisdiction over them.  Having considered the motion, response, reply, the exhibits, the parties'

stipulation of facts, the case file, and the applicable law, the court will grant the motion to dismiss.

**Background and arguments**

Synergy Drone, a Texas corporation with its principal place of business in Austin, Texas, is the assignee of five patents, each relating to "methods, systems, and devices for controlling radio-controlled vehicles, including helicopters and other aircraft 'RC vehicles'" ("Synergy Drone Patents").[1] The first amended complaint alleges generally that each of the Defendants–Parrot, Parrot Drones, and Parrot, Inc.–is directly infringing the Synergy Drone Patents and that each of the Defendants knowingly and intentionally induce and contribute to others' infringement.[2]

Synergy Drone alleges that three theories support the court's exercise of personal jurisdiction over Parrot and Parrot Drones. First, the amended complaint alleges that "Defendants, acting in consort, placed the accused infringing drones in the stream of commerce directed to the United States, including the State of Texas" and "knew the likely destination of the products would include the State of Texas." Further, the complaint alleges that (1) Parrot Inc. is responsible for distribution in the United States of drones and drone-related products, and is part of the "distribution channels" used by Parrot and Parrot Drones to sell these products in Texas; (2) Parrot and Parrot Drones are listed on the packaging, manuals, and shipping invoices accompanying the accused products; and (3)

---

[1] Each of the five patents-in-suit is titled "Radio Controlled Aircraft, Remote Controller and Methods for Use Therewith" and are numbered as follows:  U.S. Patent Nos. 8,200,375 ("the '375 Patent"); 8,380,368 ("the '368 Patent"); 8,649,918 ("the '918 Patent"); 9,079,116 ("the '116 Patent"); 9,568,913 ("the '913 Patent").

[2] Defendant Parrot, Inc. does not challenge the court's exercise of personal jurisdiction.  In amending the complaint, Synergy Drone primarily added many allegations related to the court's personal jurisdiction over Parrot and Parrot Drones.

Parrot and Parrot Drones own "all United States Parrot patents and trademarks, including the Parrot trademarks affixed to the accused infringing drones."

Second, the complaint alleges that Parrot and Parrot Drones "have failed to observe corporate formalities, thus justifying piercing the corporate veil." The specific allegations supporting this theory are that: (1) the "Parrot entities" have "common officers and directors;" (2) Parrot has offered "stock options as compensation to employees of Parrot, Inc.;" (3) "[o]n information and belief," Parrot has comingled its insurance on accounts receivable with Parrot Drones and Parrot, Inc., and that Parrot has "comingled operating funds with Parrot, Inc." because of the possibility that, "on occasion," the two companies may "pay expenses for one another;" (4) "Parrot [] has grossly undercapitalized Parrot, Inc." compared to other Parrot subsidiaries; and (5) Parrot and Parrot Drones have "intentionally ignored corporate formalities" by directing customers to the legal department of "Parrot and/or Parrot Drones" for intellectual property issues, and, by filing with Parrot, Inc., a declaratory-judgment action in Delaware to protect their intellectual property.[3]

Finally, the complaint alleges that, based on the federal long-arm statute,[4] and the fact that: (1) "the United States is the primary geographical focus of Parrot and Parrot Drones for their drone technology;" (2) United States retailers are listed by Parrot as key retailers, that Parrot, through Parrot, Inc., reported more than $82 million in United States sales in 2015; (3) Parrot paid salaries in the United States of over $3 million in 2015; and (4) Parrot and Parrot Drones have protected their intellectual property in the United States and have, in the manuals accompanying the accused

---

[3] *Parrot S.A. v. QFO Labs, Inc.*, No. 16-CV-682-GMS (Dist. Del. July 31, 2017) (stay ordered pending IPR proceedings).

[4] Fed. R. Civ. P. 4(k)(2).

3

products, identified the legal department of Parrot or Parrot Drones as being responsible for intellectual property issues.

By their motion to dismiss, Parrot and Parrot Drones contend: (1) the amended complaint is devoid of any allegations that either Parrot or Parrot Drones purposefully shipped, sent, or directed any of the accused products to Texas, which is the essential prerequisite for the viability of a stream-of-commerce theory of personal jurisdiction; (2) that Synergy Drone has failed to plead any facts from which the court could plausibly infer that either Parrot or Parrot Drones has completely dominated or controlled Parrot, Inc., such that piercing the corporate veil is warranted; and (3) that Synergy Drone's reliance on the federal long-arm statute amounts to nothing because neither Parrot nor Parrot Drones has sufficient contacts with the United States to warrant invocation of the federal long-arm statute.

Included with Parrot and Parrot Drones' motion is the Second Declaration of Ludovic Floret, who is a resident of the Republic of France and is Group General Counsel at Parrot. Floret, *inter alia*, declares:

> 4. Parrot, Inc. has exclusive responsibility for the sales, distribution, and delivery of products in the United States. Neither [Parrot nor] Parrot Drones play any role in selling, distributing, or delivering products to United States customers.
>
> 5. As a result, Parrot, Inc., in connection with its United States distributors, determines the destinations of products sold in the United States, a process that neither Parrot [] nor Parrot Drones are involved in.
>
> 6. Parrot[] (and now Parrot Drones) are identified on the packaging and manuals accompanying products due to the centralization of intellectual property management within the Parrot entities–as I believe is common with many international groups–and are similarly

4

identified on products shipped and delivered by all Parrot subsidiaries worldwide.

7. Parrot, Inc. pays the salaries of all United States employees, not Parrot [] or Parrot Drones.

8. Parrot, Inc. maintains separate insurance on accounts receivable from either Parrot[] or Parrot Drones.

9. Parrot, Inc. pays its own operating expenses.

Following a period of limited jurisdictional discovery, the parties filed a Stipulation of Facts regarding several matters related to Synergy Drone's stream-of-commerce basis for personal jurisdiction.[5]

### Personal jurisdiction

At issue is whether the exercise of general or specific personal jurisdiction over Parrot and Parrot Drones by this court is fair and reasonable. Determining whether personal jurisdiction exists over out-of-state defendants involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). The Texas long-arm statute extends to the limits of federal due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Thus, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process. *See Xilinx, Inc. v. Papst Licencing GMBH & Co.*, 848 F.3d 1346, 1353 (Fed. Cir. 2017).

In the case of specific, as opposed to general jurisdiction, the Federal Circuit has a three-factor test to determine whether exercising specific jurisdiction comports with due process:

---

[5] The parties requested and the court allowed the Stipulation of Facts to be filed under seal (Clerk's Document No. 63).

5

> (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair.

*Id.* (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1359, 1360 (Fed. Cir. 2001)). For both Parrot and Parrot Drones, Synergy Drone must satisfy all three preconditions to ensure that each defendant has the requisite minimum contacts with this forum and that notions of fair play and substantial justice are not offended. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Xilinx*, 848 F.3d at 1353. The first two factors correspond with the minimum-contacts prong of the analysis, and the third factor corresponds with the fair-play-and-substantial-justice prong of the analysis. *Id.* Additionally, Parrot and Parrot Drones' contacts with Texas must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

In reviewing general jurisdiction, a defendant must be "essentially at home in the forum state" such that the "corporation's affiliations with the State in which suit is brought are so constant and pervasive" in order to justify the assertion of jurisdiction over a foreign corporation "to hear any and all claims against [it]." *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014). The contacts must be so "continuous and systematic" to support exercising personal jurisdiction based on contacts unrelated to the claims at issue. *Id.* at 754.

In reviewing the amended complaint, the court finds no allegations that Parrot or Parrot Drones conduct business to the extent that they each are essentially at home in Texas. The court finds lacking company affiliations with Texas that are so constant and pervasive as to justify the court's assertion of general personal jurisdiction over the foreign defendants.

6

The court will addresses each of Synergy Drones's bases for this court to exercise specific personal jurisdiction over Parrot and Parrot Drones.

### *Specific jurisdiction based on stream-of-commerce theory*

Synergy Drones does not claim that Parrot and Parrot Drones engaged in direct sales in Texas, rather Synergy Drones argues for jurisdiction under a stream-of-commerce theory, contending that Parrot and Parrot Drones, through their subsidiary, Parrot, Inc., sold the accused products in Texas.

The stream of commerce "refers to the movement of goods from manufacturer through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). For a stream-of-commerce theory, the principal inquiry is

> whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Here, the court may exercise personal jurisdiction over Parrot and Parrot Drones only if each of them targeted Texas; as a general rule, it is not enough that each of these parties might have predicted that its goods will reach Texas. *See id.*

The court finds that neither Parrot nor Parrot Drones engaged in activities that show they purposefully availed themselves of the privilege of conducting business in Texas. The parties' stipulation and the second declaration of Floret establish that neither Parrot nor Parrot Drones play any role whatsoever in the sale and distribution of the accused products in the United States, the State of Texas, or this district. Rather, the evidence establishes that Parrot, Inc. has exclusive responsibility

7

for processing all United States sales and distribution of the accused products in the United States. Neither Parrot nor Parrot Drones shipped a single accused product to Texas.

Neither Parrot nor Parrot Drones has the requisite minimum contacts with Texas or this district upon which this court may exercise personal jurisdiction over them. The court concludes that any attempt by Synergy Drones to base this court's personal jurisdiction over Parrot or Parrot Drones based on a stream-of-commerce theory is denied.

### *Piercing the corporate veil, alter ego, or agency theory*

Synergy Drone also argues that this court may exercise personal jurisdiction over Parrot and Parrot Drones based on an alter ego theory. "For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015). "In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third party." *Id.* " Alternatively, a plaintiff may establish personal jurisdiction under an alter ego theory." *Id.* Indicia of an alter-ego relationship include a failure to adhere to "corporate formalities," operation of a subsidiary "without the oversight of a formal board of directors," and the purposeful manipulation of the corporation form to thwart "recovery of [a] judgment." *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985). The corporate form will not be lightly cast aside and the general rule is that the corporate form "should be recognized and upheld, unless specific, unusual circumstances call for an exception." *3D Sys. Inc. v. Araotech Labs. Inc.*, 160 F.3d 1373, 1380-81 (Fed. Cir. 1998) (internal quotation marks and citations omitted). Moreover, where, as here, a "subsidiary is wholly-owned by the parent," courts must exercise caution in inferring an alter ego relationship based on a normal parent-subsidiary

8

relationship as in the case of a wholly-owned subsidiary, "operating the subsidiary independently of the parent company . . has little practical meaning." *United States v. Jon-T Chemicals*, 768 F.2d 686, 690 (5th Cir. 1985). "[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Id.*

Initially the court finds that Synergy Drone does not allege how Parrot Drones has failed to observe corporate formalities. As for Parrot, Synergy Drone argues that Parrot Inc.'s director, Edward Planchon, in the past had responsibilities at Parrot. Planchon's past responsibilities are, however, irrelevant to this analysis because "the relevant time for determining [personal] jurisdiction is the filing of the complaint." *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1295 (Fed. Cir. 2012); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990). Planchon had no responsibilities at Parrot or Parrot Drones at the time Synergy Drone filed its original complaint.

Synergy Drone also alleges that Parrot has comingled compensation, insurance on accounts receivable, and operating funds with Parrot Inc., and these are grounds for piercing Parrot Inc.'s corporate veil. The court finds Synergy Drone's allegations are conclusory and lack factual support. Additionally, Synergy Drone alleges that Parrot offers "stock options" to employees of Parrot Inc., and such offerings are evidence of comingling compensation between Parrot Inc. and Parrot. Offering stock options however to subsidiary employees is a common feature of parent-subsidiary relationships. There is no comingling regarding insurance as Parrot and Parrot, Inc. maintain separate insurance on accounts receivable.

Synergy Drone also attempts to base personal jurisdiction on the fact that Parrot and Parrot Drones are identified in the manuals and packaging for the accused products, as well as the three Defendants filing a lawsuit in Delaware for declaratory relief. The court notes that the Delaware

9

court action was commenced to mitigate against a threatened patent-infringement suit against all three Defendants. The court finds these issues immaterial and they do not demonstrate that Parrot Inc. was controlled by Parrot or Parrot Drones.

The court concludes that Synergy Drone has not carried its burden on the dispositive element necessary for piercing the corporate veil: "total[] control[] [over] the actions of the subsidiary" such that the parent and the subsidiary "are the same entity." *Systems Div., Inc. v. Teknek Elecs., Ltd.*, 253 Fed. App'x 31, 37 (Fed. Cir. 2007). Synergy Drone has failed to show that Parrot Inc. is the alter ego of either Parrot or Parrot Drones.

### *Federal long-arm statute theory*

The federal long-arm statute permits the exercise of personal jurisdiction over a foreign defendant if: (1) the claim arises under federal law; (2) the defendant is not subject to the jurisdiction in any state's court of general jurisdiction; and (3) "exercising jurisdiction is consistent with the United States Constitution an laws." Fed. R. Civ. P. 4(k)(2). The first two requirements are met, as patent-infringement actions arise under federal law, and Parrot and Parrot Drones are not subject to personal jurisdiction in any state's court of general jurisdiction. The propriety of subjecting Parrot and Parrot Drones to personal jurisdiction based on the federal long-arm statute turns on due process, which is evaluated based on each defendant's "contacts with the entire United States, as opposed to the state in which the district court sits." *Touchcom, Inc. v. Breskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009). The court remains mindful of "risks to international comity" and "[c]onsiderations of international rapport" when considering the exercise of personal jurisdiction over corporations, who reside only foreign soil, is proper. *Bauman*, 134 S.Ct. at 763.

10

Synergy Drone argues, without citation to binding authority, that Parrot's registered United States trademarks and the Delaware lawsuit satisfy the minimum-contacts requirement under the federal long-arm statute. The court disagrees. Neither registration of a trademark, nor the Delaware lawsuit, either separately or collectively, satisfy the minimum contacts requirement under the federal long-arm statute. The same is true for the identification of Parrot and Parrot Drones in the packaging accompanying the accused products as responsible for intellectual property issues, as neither Parrot nor Parrot Drones sends the packaged accused products to the United States. *See Xilinx*, 848 F.3d at 1353.

**Conclusion**

The court concludes that exercising personal jurisdiction over either Parrot or Parrot Drones does not comport with due process. Neither Parrot nor Parrot Drones purposefully directed activities at residents in Texas nor do the claims in this action arise out of or relate to Parrot or Parrot Drones's activities in Texas. The court concludes that neither Parrot nor Parrot Drones has the requisite minimum contacts with Texas to support the court's exercise of personal jurisdiction over them. Were the court to exercise personal jurisdiction over Parrot or Parrot Drones, the court concludes that such exercise would offend the notions of fair play and substantial justice. *See International Shoe Co.*, 326 U.S. at 316.

**IT IS ORDERED** that Defendants Parrot S.A. and Parrot Drones S.A.S.'s Motion To Dismiss the Amended Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) filed October 10, 2017 (Clerk's Document No. 44) is **GRANTED**.

**IT IS FURTHER ORDERED** that because the court lacks personal jurisdiction over Defendants Parrot S.A. and Parrot Drones S.A.S., Plaintiff Synergy Drone LLC's claims alleged

11

against Defendants Parrot S.A. and Parrot Drones S.A.S. are **DISMISSED WITHOUT PREJUDICE**.

SIGNED this _____17th_____ day of April, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

12

APP.27

# EXHIBIT 5











**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2021, a copy of the above and foregoing document was served by electronic transmission on all counsel for record via the Court's ECF system.


*/s/ Jeremy A. Fielding*
Jeremy A. Fielding