IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HOYA CORPORATION, HOYA SURGICAL OPTICS, INC., HOYA LAMPHUN LTD., and HOYA MEDICAL SINGAPORE PTE LTD., <br>       Plaintiffs <br> v. <br> ALCON INC., ALCON LABORATORIES, INC., ALCON RESEARCH, LLC, and ALCON VISION LLC, <br>       Defendants. | No. 3:20-cv-3629-M <br><br> **FILED UNDER SEAL** |
| ALCON LABORATORIES, INC., ALCON RESEARCH, LLC, and ALCON VISION LLC, <br>       Counterclaim Plaintiffs, <br> v. <br> HOYA CORPORATION, HOYA SURGICAL OPTICS, INC., HOYA LAMPHUN LTD., and HOYA MEDICAL SINGAPORE PTE LTD., <br>       Counterclaim Defendants. | |

**MEMORANDUM OPINION AND ORDER**[1]

Defendants Alcon Inc., Alcon Laboratories, Inc., Alcon Research, LLC, and Alcon Vision LLC (collectively, "Alcon" or "Defendants") have filed a Motion to Compel

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

-1-

Production of Improperly Clawed Back and Withheld Documents, *see* Dkt. No. 287 (the "MTC"), "requesting that the Court enter an order compelling Plaintiffs HOYA Corporation, HOYA Surgical Optics, Inc., HOYA Lamphun Ltd., and HOYA Medical Singapore Pte Ltd. (collectively 'HOYA' or 'Plaintiffs') to: immediately produce (a) HOYA00585230 in the same format it was produced in on December 9, 2022; and (b) all 'native files' identified in [HOYA's damages expert] [John] Bone's April 14, 2023 'Documents Considered' list," *id.* at 1-2.

Senior District Judge Barbara M. G. Lynn has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 292.

The undersigned has reviewed the parties' briefing and public and sealed submission, along with Alcon's in camera submission with the MTC, and now GRANTS in part and DENIES in part the MTC for the reasons and to the extent that the Court explains below.

As the parties agreed at an earlier oral argument, Federal Rule of Civil Procedure 26(b)(5)(B) governs the procedure for resolving claw-back disputes, along with Federal Rule of Evidence 502(b), and Federal Circuit law governs these discovery disputes over materials relating to issues of substantive patent law. *See generally In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir 2000).

"The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients by assuring clients that their

disclosures will be held in confidence. The privilege is that of the client, not that of the attorney." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987) (cleaned up).

"Whether the attorney-client privilege applies should be determined on a case-by-case basis. The privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Spalding*, 203 F.3d at 805 (cleaned up). "It protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice." *Am. Standard*, 828 F.2d at 745 (cleaned up).

"Accordingly, the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *Spalding*, 203 F.3d at 805 (cleaned up). And the attorney-client privilege extends to communications between an inventor and a patent attorney. *See id.* at 806. It does not matter whether a communication "contain[s] technical information" or "refer[s] to prior art," as long as the "overall tenor of the document indicates that it is a request for legal advice or services." *Id.*

But the Federal Circuit would apply Fifth Circuit law as to any question of waiver by the disclosure of privileged material and has explained:

> It is vital to a claim of privilege that the communication have been made and maintained in confidence. A client waives the attorney-client privilege by failing to assert it when confidential information is sought in legal proceedings. Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected. Further inquiry

> into the substance of the client's and attorney's discussions does implicate the privilege and an assertion is required to preserve it. When a party voluntarily waives attorney-client privilege, that waiver extends to all communications pertaining to the subject matter of the communications.

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272-73 (Fed. Cir. 2001) (cleaned up).

And, "[g]enerally disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items." *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed.Cir.1997). "When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir.1999) (footnote omitted). And "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (cleaned up).

With those legal standards – as laid out in the Court's prior orders – in mind, the Court turns to each of the documents at issue on this MTC.

### 1. The "Finance Document" (HOYA00585230)

The Court determines that HOYA has not met its burden to show the Finance Document without the "preliminary damages assessment" redacted was inadvertently produced. And so Federal Rules of Evidence 502(b) and 502(d) and the Court's Order Regarding E-Discovery [Dkt. No. 41] and Protective Order [Dkt. No. 92] do not support HOYA's efforts to claw it back. Neither is this is an instance of

"[t]he mere production of documents or ESI in a litigation as part of a mass production" that the Court has ordered "shall not itself constitute a waiver for any purpose." Dkt. No. 41 at 8-9.

Rather, the Court is persuaded, as Alcon argues at length, that, "[b]y intentionally producing the unredacted Finance Document to Alcon twice – including after its extensive re-review process – HOYA either agreed the document was not privileged or intentionally waived any privilege" and that, "[i]n addition to producing the Finance Document twice, HOYA also waived any purported privilege when it permitted Alcon to question HOYA's witness about the Finance Document." Dkt. No. 303 at 13-17. In contrast to instances of production of privileged materials identified in the first instance after an initial mass production, the Court determines that "HOYA's production was not 'inadvertent,' as it produced the unredacted 'preliminary case assessment' a second time after its 'thorough and efficient' extensive attorney re-review process, rendering HOYA's invocation of Fed. R. Evid. 502(b), the Protective Order, and the ESI Order inapplicable." Dkt. No. 303 at 18; *see also* Dkt. No. 309 at 4-6.

Where HOYA produced the document once on July 12, 2022 without this line redacted, then on October 1, 2-2022 re-produced it with the line redacted, and then (after an extensive re-review process) re-produced it on December 9, 2022 without the line redacted, the Court finds that this third production cannot be considered "inadvertent" for these purposes.

The Court grants the MTC on these grounds and orders HOYA to, by **Thursday, June 1, 2023**, re-produce to Alcon's counsel the "Finance Document" in the same format in which it was produced on December 9, 2022 (that is, without any redactions to the "Preliminary damages assessment").

### 2. "Native files" identified in Bone's "Documents Considered" list

Federal Rule of Civil Procedure 26(b)(4)(C) provides that Federal Rules of Civil Procedure "26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under [Federal Rule of Civil Procedure] 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C).

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) correspondingly requires that a testifying expert's "report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).

As another judge in this circuit has explained,

> Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts ... The new amendments to Rule 26, however, limit the amount of disclosure....

> First, a review of the standards for discovery relating to testifying experts. In 1993, Rule 26(a)(2)(B) was amended to require a testifying expert to produce a written report setting forth a complete statement of the expert's opinions, as well as "the data and other information considered by the witness in forming the opinions." Many courts interpreted the rule as establishing a "bright-line" approach that required disclosure of all attorney-expert communications, including "otherwise protected work product and attorney-client communications" if the expert "read or reviewed the privileged materials before or in connection with formulating his or her opinion." ... Such broad expert discovery carried with it several unfortunate consequences. It increased discovery costs and impeded effective communication between attorneys and their experts, sometimes even inducing parties to retain two separate sets of experts – one for consultation and another to testify. FED. R. CIV. P. 26 advisory committee's note (2010 Amendments)....

Therefore, "[i]n December 2010, Rule 26 was amended to address the undesirable effects of routine discovery into attorney-expert communications." Id. (citation omitted). Accordingly:

> First, Rule 26(a)(2)(B)(ii) was amended to require disclosure of "facts or data," rather than "data or other information," considered by an expert witness in forming the opinions to be offered. The advisory committee intended this change to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." ... That said, the committee urged that the amendment be interpreted broadly to cover "any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert" ...
>
> In addition, Rule 26(b)(4)(C) was added to provide work-product protection against discovery into communications between expert witnesses and counsel. The new provision applies work-product protections to "communications between the party's attorney and [testifying expert], regardless of the form of the communications." ... That said, the new provision withholds work-product protections from communications that
> * * *
>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.
>
> ... Communications that receive work-product protection are not discoverable unless the party seeking discovery "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(a)(ii).
>
> As for the exceptions enumerated in the above quotation, and which apply to the instant case,
>
>> [t]he exception [under subpart (ii)] applies only to communications "identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected.... Under [subpart (iii)] discovery regarding attorney-expert communications is permitted to identify any assumption that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed.... This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed.
>
> Finally,
>
>> [c]oncerning attorney-expert communications, parties will rarely be able to make this showing [of substantial need and undue hardship to obtain by other means] "given the broad disclosure and discovery otherwise allowed regarding the expert's testimony." FED. R. CIV. P. 26 advisory committee's note (2010 Amendments).

*United States v. 73.92 Acres of Land*, No. 3:09CV802-TSL-MTP, 2011 WL 3471096, at *1-*2 (S.D. Miss. Aug. 8, 2011) (cleaned up).

Another judge has more recently explained that,

> [u]nder Rule 26(a)(2)(B)(ii), as revised in 2010, an expert report must contain all "the facts or data considered by the [expert] in forming" the opinions that the expert is to offer. The Advisory Committee Notes to the 2010 amendments make plain that the Rule's focus on the disclosure of "facts or data"
>
>> is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, [however,] the intention is that "facts or data" be

> interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.
>
> FED. R. CIV. P. 26 Advisory Committee Notes…..
>
> …. Against this backdrop, courts have held that furnishing work-product of a factual nature to a testifying expert constitutes implied waiver of work-product protection to the extent that the expert considers the facts or data disclosed in forming [his] opinion. [T]he cases [also] make clear that the burden of showing that the expert did not read or review a document lies with the party resisting discovery.

*S.E.C. v. Rio Tinto PLC*, No. 17CV7994 (AT) (DF), 2021 WL 2186433, at *4 (S.D.N.Y. May 28, 2021) (cleaned up). Relatedly, another judge has explained that

> [a] party's expert disclosure "must contain … the facts or data considered by the [expert] in forming" the expert's opinions. FED. R. CIV. P. 26(a)(2)(B)(ii). The linchpin of this rule is the term "considered," which has been defined broadly to include materials that an expert reviews, reflects upon, reads, and/or uses.
>    Although an expert's representation as to whether or not he considered a document is not controlling, his testimony that he did not receive, read, review, or author a document will negate discovery absent evidence to the contrary. Any ambiguities as to what materials were considered should be resolved in favor of discovery.

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 6504419, at *3 (N.D. Fla. Nov. 5, 2020) (cleaned up).

Against this backdrop, HOYA submitted the Declaration of John Bone in Support of Hoya's Response to Defendants' Motion to Compel Production of Improperly Clawed Back and Withheld Documents, in which Mr. Bones attests that

> 6. A member of my team erroneously included the "Native File" section on Appendix B. To correct this error, on April 18, 2023, I submitted a revised Appendix B that removed this section. The revised

Appendix B represents the documents that I considered and/or relied upon in forming the opinions contained in my opening report.

7. One of the native files, UltraSert Demo Steps & Key Talking Points.pptx, was produced by Alcon as ALCON_NDTX_0036394. I considered this document in forming my opinions, and it was listed in Appendix B by the production number.

8. I did not consider or rely on the other eight native files in forming my opinions. This is confirmed by the fact that none of these documents are discussed, referenced, or cited anywhere in my report.

9. The only native file that I received was Hoya Alcon – Lost Profits Memo.docx. This document was attached to an email from Counsel on October 13, 2021. I understand it was sent in connection with the preparation for a mediation between the parties that HOYA anticipated would take place within the months to follow. While I reviewed the email from Counsel, I have no recollection of having viewed the attached document. Rather, I forwarded the email and attached document to a member of my team to assist counsel with preparation for the mediation. Further, since my report does not offer any opinions related to lost profits, I would not have considered this memo in forming the opinions in my report.

10. Members of my team determined the remaining native files to be irrelevant. While I potentially could have accessed these documents by requesting them from my team, I did not do so at any point in time.

11. Though members of my team may have viewed the native files, any such review did not impact the opinions expressed in my opening report because I did not consider or rely on the native files in formulating those opinions.

12. It is common practice that members of my team may view documents that I ultimately do not consider or rely on when drafting an expert report.

13. I understand that I will have the opportunity to confirm the materials that I considered and/or relied upon in forming my opinions in my future deposition.

Dkt. No. 300 at 12-13 of 19.

Mr. Bones admits that he received the "Hoya Alcon – Lost Profits Memo.docx" in connection with his work as HOYA's damages expert in this case. HOYA's arguments that the document is irrelevant and therefore not subject to discovery

under Rule 26 fails to persuade for all the reasons that Alcon recites in the MTC and reply in support. And HOYA has not met its burden to establish that this memo – as opposed to the email transmitting it (which Alcon does not seek) – is itself a protected communication between HOYA's attorney and Mr. Bones.

As for the remaining "native files," the Court is persuaded that Rule 26's references to "witness" do not encompass "witness and his or her team." *In re Maxus Energy Corp.*, No. 16-11501, 2022 WL 517261, at *6 (Bankr. D. Del. Feb. 22, 2022). And Mr. Bone's declaration establishes that he did not receive, read, or review these documents, and Alcon offers no evidence to the contrary. And the Court will not compel these documents' productions under Alcon's Request for Production No. 4 – even if a Federal Rule of Civil Procedure 34 request could properly seek testifying expert discovery that may exceed Rule 26's limits – because Mr. Bone's declaration establishes that he was not "shown" or "given" these documents. *See generally Halcyon Thruput, LLC v. United Nat'l Ins. Co.*, No. 3:21-cv-3136-K, 2022 WL 5250287, at *1 (N.D. Tex. Oct. 6, 2022) ("Federal Rule of Civil Procedure 26(b)(4) governs discovery from a testifying expert witness.").

The Court grants the MTC only in part on these grounds and orders HOYA to, by **Thursday, June 1, 2023**, produce the "Hoya Alcon – Lost Profits Memo.docx" to Alcon's counsel.

* * * *

Based on the Court's rulings above, the Court determines that in camera review of any or all of the documents that HOYA proposes to submit in connection with the MTC is neither necessary nor appropriate. *See* Dkt. No. 301; Dkt. No. 307.

Finally, after considering all of the circumstances here and the Court's rulings above, the Court determines that, under Rule 37(a)(5)(C), the parties will bear their own expenses, including attorneys' fees, in connection with the MTC.

And, although this Memorandum Opinion and Order may not contain any confidential information, the Court will, out of an abundance of caution, conditionally enter it under seal because the underlying motion papers quoted or cited above were filed under seal. And the parties are ORDERED to file a joint status report by **Monday, June 12, 2023** that (1) sets forth their views on whether this Memorandum Opinion and Order contains any confidential information – and, if so, where – and should therefore remain sealed and (2), if at least one party asserts that this Memorandum Opinion and Order should remain sealed, attaches for the Court's consideration a proposed public version of the Memorandum Opinion and Order with any and all assertedly confidential information redacted.

SO ORDERED.

DATED: May 30, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE