**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HOYA CORPORATION, HOYA SURGICAL OPTICS, INC., HOYA LAMPHUN LTD., and HOYA MEDICAL SINGAPORE PTE LTD., | ) ) ) ) ) | **Civil Action No. 3:20-cv-03629-M** |
| | ) | |
| Plaintiffs, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) ) | |
| ALCON INC., ALCON LABORATORIES, INC., ALCON RESEARCH, LLC, and ALCON VISION LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |
| ALCON LABORATORIES, INC., ALCON RESEARCH, LLC, and ALCON VISION LLC, | ) ) ) ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| HOYA CORPORATION, HOYA SURGICAL OPTICS, INC., HOYA LAMPHUN LTD., and HOYA MEDICAL SINGAPORE PTE LTD., | ) ) ) ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ALCON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.  Factual Background ........................................................................................... 2

    A.  Alcon's Long History of Innovation with IOL Insertion Devices ......................... 3

        1.  Monarch ...................................................................................... 3

        2.  AcrySert ..................................................................................... 4

        3.  AcrySert C ................................................................................. 6

        4.  UltraSert .................................................................................... 7

    B.  HOYA and the Asserted Patents ....................................................................... 8

II.  Summary Judgment Standard ......................................................................... 11

III.  UltraSert Does Not Infringe the '647, '668, '811, '442, & '718 Patents ..................... 11

    A.  Legal Standard .................................................................................. 11

    B.  Argument ......................................................................................... 12

        1.  UltraSert Does Not Infringe the '668 and '811 Patents Because It
Lacks a Perpendicular Lateral Wall ............................................... 12

        2.  UltraSert Does Not Infringe Claims 12, 13, 15, and 16 of the '718
Patent and Claims 12–14 and 16 of the '826 Patent Because It
Does Not Fold the IOL in the Sequence Required by the Claims ........... 15

        3.  UltraSert Does Not Infringe the '647, '442, '811, and '668 Patents
Because UltraSert Does Not Have a Plunger with a "Slot" or
"Recess" "that Extends Proximally from the Lens Contact
Surface/Portion," or the Recess "Shown in Figure 14" of the '442
Patent ........................................................................................... 18

        4.  UltraSert Does Not Infringe Claims 1, 4, and 8–11 of the '718
Patent Because Its Plunger Does Not "Push[] the End" of the Rear
Haptic .......................................................................................... 21

        5.  UltraSert Does Not Infringe the '647 Patent Literally or Under the
Doctrine of Equivalents Because UltraSert Does Not Meet the
"Slot" / "Elongate Slot" Limitations ............................................... 22

IV.  HOYA Cannot Prove Willful Infringement as a Matter of Law ............................. 29

    A.  Legal Standard .................................................................................. 29

B.     Argument ......................................................................... 29

       1.     There Is No Evidence of Pre-Suit Knowledge of the '647, '718, '826, or '442 Patents ............................................. 30

       2.     There Is No Evidence of Deliberate or Intentional Infringement After Awareness of Any Asserted Patent .................................. 32

**V.    Claims 1-6 of the '826 Patent Are Anticipated as a Matter of LAw by Alcon's AcrySert Product ......................................................... 33**

A.     Legal Standard ................................................................ 33

B.     Argument ......................................................................... 33

       1.     It Is Undisputed that AcrySert Is Prior Art to the '718 and '826 Patents ......................................................... 34

       2.     Despite Being Aware of AcrySert, HOYA Did Not Disclose the Device to the USPTO ................................................... 34

       3.     Claims 1–6 of the '826 Patent Are Anticipated by AcrySert................ 35

       4.     If Alcon's Motion for Summary Judgment of Noninfringement of the '718 Patent Is Denied, Then Claims 1, 4, and 8–11 of the '718 Patent Are Also Anticipated by AcrySert.................................. 45

**VI.    The '647 Patent Is Not Entitled to Claim Priority to JP2007-182535 ...................... 45**

**VII.    HOYA Cannot Meet Its Evidentiary Burden to Establish Pre-suit Notice of Alleged Infringement ............................................................ 47**

A.     Background on HOYA's Allegedly Covered Products ......................... 47

B.     Legal Standard ................................................................ 47

C.     Argument ......................................................................... 48

**VIII.   Conclusion ..................................................................... 50**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
    949 F.3d 1366 (Fed. Cir. 2020)...................................................................................33

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993)......................................................................................50

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994)......................................................................................48

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................................................11

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)..................................................................................48

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    950 F.3d 860 (Fed. Cir. 2020)..............................................................................48, 50

*Arigna Tech. Ltd. v. Nissan Motor Co.*,
    2022 WL 17978913 (E.D. Tex. Oct. 5, 2022) ..........................................................30

*Bai v. L & L Wings, Inc.*,
    160 F.3d 1350 (Fed. Cir. 1998)..................................................................................12

*Bayer AG v. Elan Pharm. Rsch. Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000)..................................................................................12

*Bayer Healthcare LLC v. Baxalta Inc.*,
    989 F.3d 964 (Fed. Cir. 2021)..............................................................................29, 32

*Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*,
    642 F.3d 1031 (Fed. Cir. 2011)..................................................................................33

*bioMerieux, S.A. v. Hologic, Inc.*,
    2020 WL 759546 (D. Del. Feb. 7, 2020) ............................................................31, 32

*Bioverativ Inc. v. CSL Behring LLC*,
    2020 WL 1332921 (D. Del. Mar. 23, 2020................................................................30

*Boudreaux v. Swift Transp. Co.*,
    402 F.3d 536 (5th Cir. 2005) .....................................................................................11

*Brown v. Ill. Cent. R.R. Co.*,
    705 F.3d 531 (5th Cir. 2013) ....................................................................14, 20, 22

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)..................................................................................12

*Conroy v. Reebok Int'l, Ltd.*,
    14 F.3d 1570 (Fed. Cir. 1994)..................................................................................12

*CoreValve, LLC v. Edwards Lifesciences Corp.*,
    741 F.3d 1359 (Fed. Cir. 2014)................................................................................46

*CUPP Cybersecurity, LLC v. Trend Micro, Inc.*,
    No. 3:18-CV-1251, D.I. 329 (N.D. Tex. Jan. 18, 2023) (Lynn, J.) .........................31

*DePuy Spine, Inc. v. Medtronic Sofarmor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009)..........................................................................12, 27

*Droplets, Inc. v. E*Trade Bank*,
    887 F.3d 1309 (Fed. Cir. 2018)................................................................................46

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020)................................................................................29

*Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*,
    609 F.3d 1345 (Fed. Cir. 2010)................................................................................46

*ESCO Grp. LLC v. Deere & Co.*,
    2023 WL 4199413 (D. Del. June 22, 2023) (Bryson, J. sitting by designation) ....18

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)................................................................................26

*Firtiva Corp. v. Funimation Glob. Grp., LLC*,
    No. 2:21-CV-00111-JRG-RSP, D.I. 163 (E.D. Tex. June 1, 2022).........................32

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008)................................................................................33

*GREE, Inc. v. Supercell OY*,
    2020 WL 4059550 (E.D. Tex. July 27, 2020) ........................................................31

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*,
    897 F.2d 508 (Fed. Cir. 1990)..................................................................................30

*H-W Tech., L.C. v. Overstock.com, Inc.*,
    758 F.3d 1329 (Fed. Cir. 2014)................................................................................47

*Hemphill v. State Farm Mut. Auto. Ins. Co.*,
   805 F.3d 535 (5th Cir. 2015) .......................................................................11, 31

*Icon-IP Pty Ltd. v. Specialized Bicycle Comps., Inc.*,
   87 F. Supp. 3d 928 (N.D. Cal. 2015) ...........................................................26

*Intell. Ventures I LLC v. Symantic Corp.*,
   234 F. Supp. 3d 601 (D. Del. Feb. 13, 2017),
   *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) .....................................................32

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
   2019 WL 1987172 (E.D. Tex. Apr. 12, 2019),
   *adopted*, 2019 WL 1979866 (E.D. Tex. May 3, 2019) ...............................31

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)....................................................................28

*Jang v. Boston Sci. Corp.*,
   872 F.3d 1275 (Fed. Cir. 2017).....................................................................12

*Janssen Biotech, Inc. v. Celltrion Healthcare Co.*,
   2018 WL 10910845 (D. Mass. July 30, 2018),
   *aff'd*, 796 F. App'x 741 (Fed. Cir. 2020)......................................................29

*Marquip, Inc. v. Fosber Am., Inc.*,
   198 F.3d 1363 (Fed. Cir. 1999)....................................................................29

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)........................................................................................35

*Minkin v. Gibbons, P.C.*,
   680 F.3d 1341 (Fed. Cir. 2012).....................................................................17

*Not Dead Yet Mfg., Inc. v. Pride Sols., LLC*,
   222 F. Supp. 3d 657 (N.D. Ill. 2016) ...........................................................26

*Novo Indus., LP v. Micro Molds Corp.*,
   350 F.3d 1348 (C.D. Cal. 2003)....................................................................47

*OneSubsea IP UK Ltd. v. FMC Techs., Inc.*,
   2020 WL 7263266 (S.D. Tex. Dec. 10, 2020) .............................................26

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
   157 F.3d 866 (Fed. Cir. 1998).............................................................. *passim*

*Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*,
   387 F. Supp. 3d 404 (D. Del. May 22, 2018),
   *aff'd*, 943 F.3d 929 (Fed. Cir. 2019) ............................................................32

*PrinterOn Inc. v. BreezyPrint Corp.*,
   93 F. Supp. 3d 658 (S.D. Tex. 2015) ...................................................................19

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   853 F.3d 1370 (Fed. Cir. 2017)...........................................................................48

*Salas v. Carpenter*,
   980 F.2d 299 (5th Cir. 1992) ...............................................................................31

*Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*,
   400 F.3d 910 (Fed. Cir. 2005).............................................................................49

*SRI Int'l Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)...........................................................................32

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,
   175 F.3d 974 (Fed. Cir. 1999).............................................................................27

*Sw. Software, Inc. v. Harlequin Inc.*,
   226 F.3d 1280 (Fed. Cir. 2000)...........................................................................46

*TechSearch, L.L.C. v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002).................................................................. *passim*

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001)...........................................................................22

*Toro Co. v. White Consol. Indus., Inc.*,
   266 F.3d 1367 (Fed. Cir. 2001)...........................................................................12

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
   204 F.3d 1360 (Fed. Cir. 2000)...........................................................................27

*VLSI Tech. v. Intel Corp.*,
   2021 WL 2773013 (W.D. Tex. Apr. 12, 2021).....................................................50

*X-Tra Light MFG Inc. v. Acuity Brands, Inc.*,
   2007 WL 7117888 (S.D. Tex. Feb. 13, 2007) ......................................................31

**Statutes**

35 U.S.C. § 120...........................................................................................................46

35 U.S.C. § 255...........................................................................................................46

35 U.S.C. § 287(a) ................................................................................................48, 49

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................................11

Unless otherwise indicated, all emphasis has been added and internal quotation marks, brackets, and citations have been omitted from quoted material.

**Table of Abbreviations**[1]

| Abbreviation | Description |
|---|---|
| DFU | Directions for Use |
| ESCRS | European Society of Cataract and Refractive Surgery |
| IOL | Intraocular lens |
| USPTO | U.S. Patent and Trademark Office |

---

[1] Defendants' Appendix includes exhibits numbered "DX-_" with pages numbered "DA____."

Alcon, founded in Fort Worth, is the largest eye care device company in the world and has been a leader in eye care since the 1940s. For decades Alcon has developed and sold medical products for use in cataract surgery, including devices designed to insert an intraocular lens (or "IOL") into the eye. Alcon's accused technology is rooted in, and works fundamentally the same as, Alcon injector technology developed in the early 2000s. The accused device in this case, UltraSert, launched in 2015 as the latest iteration in Alcon's long line of prior art IOL insertion devices: Monarch II and III, AcrySert, and AcrySert C.

████████████████████████████████████████████████████████

████████████████████ in the U.S., the world's largest cataract surgery market. The same year Alcon launched UltraSert, ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████, HOYA sought and received claims that do not actually "cover" UltraSert. As explained below in Section III, UltraSert does not infringe these claims as a matter of law. *Second*, HOYA can muster no evidence that Alcon willfully infringed the asserted patents. *Third*, HOYA expanded its patent

1

claims so drastically beyond its own work that its asserted patents are invalid in light of the prior art, including Alcon's long line of prior art injector devices. As explained below in Section V, certain of the asserted claims are facially invalid, making them ripe for summary judgment. *Fourth*, because HOYA failed to meet the requirements for claiming priority for the '647 patent, it is not entitled to claim priority back to that patent's original Japanese application as a matter of law. *Finally*, HOYA's failure to provide notice means that it is legally foreclosed from obtaining certain pre-suit damages, and Alcon should be granted summary judgment on that issue, too.

Alcon respectfully requests the Court grant its motion for partial summary judgment in full. Should the Court deny any individual ground, Alcon respectfully requests that the Court grant on Alcon's remaining grounds.

## I.      FACTUAL BACKGROUND

Cataract surgery involves removing a cloudy natural lens from a patient's eye and replacing it with a synthetic IOL. D.I. 49 (Am. Compl.) ¶¶ 31–32; D.I. 52 (Ans. Am. Compl.) ¶¶ 31–32. The first IOL was implanted in 1949, and since then, advances in technology have made cataract surgery increasingly safe and effective. DA9-13 (Davis Op. Rpt.) ¶¶ 97–103. The first IOLs were made of rigid plastic, and the incisions through which they were implanted needed to be as large as the IOL itself. *Id.* In the mid-1980s, doctors developed foldable IOLs made of flexible materials, which could be folded lengthwise, allowing them to be implanted through much smaller incisions, leading to reduced risk of infection, faster healing, and reduced inflammation at the incision. *Id.* Foldable IOLs like those described in the asserted patents were common by the 1990s. DA9–14 (*Id.*) ¶¶ 97–107. An image of Alcon's "single piece" foldable AcrySof lens is pictured below. Each IOL has an optic portion to correct vision and haptics to hold the optic in place after implantation.

DA11–12 (*Id.*) ¶ 101. In recent decades, surgeons have implanted IOLs using reusable IOL insertion devices (which require some manual folding of the IOL) or preloaded IOL insertion devices (which mechanically fold the IOL without user intervention). Such preloaded IOL insertion devices have been available since at least the early 2000s. DA15–16 (*Id.*) ¶ 112; DA315–16, 19 (DX-7); DA331 (DX-8).



Alcon's AcrySof lens launched more than two decades ago, has been implanted more than 135 million times, and is the most implanted IOL in the world. DA362–63 (DX-9); DA309 (Long Dep.) at 143:2–17. It is the most implanted medical device in history. *Id*.

## A.     Alcon's Long History of Innovation with IOL Insertion Devices

For decades, Alcon has been a market leader in the development of IOLs and IOL insertion devices. Over the past 25 years, Alcon employee Kyle Brown has been one of Alcon's leading innovators of IOL insertion devices, including Alcon's Monarch II, as well as Alcon's long line of preloaded devices, including AcrySert, AcrySert C, and UltraSert. DA1785 (Brown Decl.) ¶¶5–8.

### 1.     Monarch

Alcon's Monarch handpiece was first offered for sale in 1998 and is a reusable IOL insertion device designed to be used with single-use, disposable cartridges. DA376, 386 (DX-10). Monarch II was first sold in the U.S. in August 2001 (DA389 (DX-11)) and is the most frequently used IOL insertion device worldwide. DA407 (DX-13). Monarch III launched in 2007. *See, e.g.*, DA402 (DX-12). Monarch II and III are designed to be used with the Monarch II loading forceps and can be used to deliver an AcrySof lens. DA410 (DX-14); DA413 (DX-15).

3

As shown in the Monarch II loading instructions from 2002 (DA411 (DX-14)), forceps are used to fold and place the IOL into the cartridge, which is then placed onto the reusable Monarch handpiece for IOL implantation. DA397–400 (DX-12). Specifically, the surgeon grasps the optic with the forceps and inserts the IOL into the back of the cartridge, folding the forward haptic over the top of the optic during this process. DA415–16 (DX-16) at 0:54–1:06. Next, the surgeon holds the forceps closed, forming a groove in the forceps' tip to securely capture the rear haptic. *Id.* at 1:24 (annotated, above right). The surgeon then moves the rear haptic with the closed forceps using the groove to bend the haptic towards the cartridge to fold the haptic over the optic. *Id*. at 1:24–1:28. Then, the surgeon uses the lower recessed vertical wall on the closed forceps to contact the edge of the optic and push it forward into the body of the cartridge, the sides of which narrow like a funnel. *Id*. at 1:34–1:42. As the surgeon pushes the IOL forward, the narrowing sides of the cartridge fold the IOL into a taco-like shape, with both haptics folded over the optic. *Id.* at 1:42–1:50. The cartridge is then loaded on the handpiece, and the handpiece plunger is advanced until the folded IOL is pushed out of the cartridge's nozzle into the eye. DA411 (DX-14).



### 2.    AcrySert

Following Monarch II, Alcon began to develop AcrySert, its first-generation product with an IOL preloaded into the device, ready for insertion into the eye. DA424 (Brown Dep.) at 79:23–80:1, 84:11–85:14. AcrySert was developed in the early 2000s and patented as U.S. Patent No. 7,156,854 ("Brown Patent"), which was filed in 2003 and published in 2004. DA1785 (Brown Decl.) ¶7; DA449 (DX-19). Alcon began selling AcrySert in the U.S. in June 2005, with model

SA60AS ("2005 AcrySert"). DA319 (DX-7); DA1785 (Brown Decl.) ¶10. A second version of AcrySert launched in the U.S. in February 2007, with model SN60WS ("2007 AcrySert"). DA319 (DX-7); DA1785 (Brown Decl.) ¶11. AcrySert used Alcon's AcrySof lens. DA465 (DFU).





DA465 (AcrySert DFU) (annotated)          DA1224 (DX-71) (annotated)

As shown above, AcrySert is preloaded with an IOL inside the device, with the rear haptic sitting on a ramp, and the optic sitting unfolded. DA430, 433 (Brown Dep.) at 112:5–18, 122:16–123:24; DA1789 (Brown Decl.) ¶¶20–22; DA543 (Cameron Dep.) at 326:7–327:9. The user operates AcrySert by advancing a plunger, which first contacts the rear haptic. DA430 (Brown Dep.) at 112:5–18; DA1789 (Brown Decl.) ¶21; DA543 (Cameron Dep.) at 326:7–327:9; DA469 (AcrySert DFU). As the plunger is advanced and the rear haptic moves, a portion of the rear haptic rests in the indentation on the plunger tip, known as a relief area. DA482–83 (DX-20); DA526–27, 543, 549, 570 (Cameron Dep.) at 191:25–194:2, 326:7–327:9, 349:5–13, 537:9–539:9; DA430–33 (Brown Dep.) at 112:5–18, 116:22–118:5, 120:6–23, 122:16–124:2; DA1789 (Brown Decl.) ¶¶18, 23–25; DA591 (DX-26). As the plunger continues to advance, the plunger pushes the rear haptic up a ramp and folds the rear haptic over the optic. DA430–33 (Brown Dep.) at 112:5–18, 113:3–16, 122:16–125:1; DA543 (Cameron Dep.) at 326:7–327:9; DA577 (Olson Dep.) at 108:11–109:1. The plunger then contacts the optic, pushing it forward. DA432 (Brown Dep.) at 120:6–23; DA543 (Cameron Dep.) at 327:10–14. As the plunger continues to advance, the IOL is pushed through a narrowing interior space (referred to as a transition section), which folds the

sides of the optic upwards and folds the forward haptic over the optic. DA430 (Brown Dep.) at 112:19–113:2; DA469–70 (AcrySert DFU); DA1789–90 (Brown Decl.) ¶¶26–28; DA543–44 (Cameron Dep.) at 327:10–328:8. As the plunger continues to advance, the IOL is folded like a "taco" with haptics folded in over the optic, and the IOL is eventually pushed out of the tip of the nozzle by the plunger. DA430–33 (Brown Dep.) at 112:19–113:2, 120:6–23, 122:16–124:6; DA600 (DX-27); DA465, 69–70 (AcrySert DFU); DA543–44 (Cameron Dep.) at 327:10–328:8; DA1707–8 (DX-117); DA418–19 (DX-17). Both the 2005 and 2007 versions of AcrySert function this way. DA432–33 (Brown Dep.) at 120:6–23, 122:16–124:2; DA1789 (Brown Decl.) ¶19.

The only relevant difference between the 2005 and 2007 AcrySert is the shape of the indentation (or relief area) on the plunger's distal end. As shown below, the 2005 plunger includes an "L"-shaped indentation, whereas the 2007 plunger has a rounded indentation.



DA482 (DX-20) (annotated); DA1786–89 (Brown Decl.) ¶¶13–18; DA508–09 (DX-23) (AcrySert design history file plunger drawings); DA547-48 (Cameron Dep.) at 340:16–341:23, 345:4–345:19. Both designs serve the function of holding a portion of the rear haptic. DA1786–89 (Brown Decl.) ¶¶13–18; DA432 (Brown Dep.) at 120:2–23.

### 3.    AcrySert C

Following AcrySert, Alcon developed a second-generation preloaded IOL insertion device called AcrySert C. This device included a smaller nozzle size compared to AcrySert as well as a

modification of the plunger. By January 17, 2007, Alcon had conceived of and fully reduced to practice a prototype. DA31–35 (Bumbalough Op. Rpt.) ¶¶ 130–136; DA604–610 (DX-28). Between 2007 and 2010, Alcon continually worked on and perfected the device, including for manufacturability. DA31–42 (Bumbalough Op. Rpt.) ¶¶ 130–144. AcrySert C launched in the United States in 2010. DA320 (DX-7). AcrySert C and its plunger are shown below.




DA613 (DX-29); DA620 (DX-30). The preparation steps for AcrySert C remained the same as for AcrySert, and the devices fold IOLs in the same way. DA439 (Brown Dep.) at 160:16–25; DA468–70 (AcrySert DFU); DA634–636 (DX-31); DA1790 (Brown Decl.) ¶29.

Prior to launching AcrySert C in 2010, Alcon publicly disclosed the design of AcrySert C as early as September 2008 at an ESCRS conference in Berlin, Germany ("ESCRS 2008"). DA600, 620 (DX-27); DA646–647 (DX-32).

### 4. UltraSert

Alcon launched its third-generation preloaded IOL insertion device, UltraSert, in 2015. D.I. 52 (Counterclaims) p. 24, ¶ 4. UltraSert and its plunger are shown below.




DA648 (DX-33). UltraSert is based on, and a continuation of, AcrySert C. DA444 (Brown Dep.)

█████████████████

at 235:15–236:22; DA1785, 1790 (Brown Decl.) ¶6, 34–35. Compared to AcrySert C, UltraSert

offers some models with a smaller nozzle tip and additional features like a nozzle tip depth guard

and a tension spring. DA653 (DX-34); DA1790 (Brown Decl.) ¶36. The similarities among

AcrySert, AcrySert C, and UltraSert are apparent from the DFU images:



| AcrySert DFU 2006 | AcrySert C DFU 2010 | UltraSert DFU 2015 |
|---|---|---|
| DA465, 470 (AcrySert DFU) | DA631, 635 (DX-31) | DA653, 57 (DX-34) |

*See also* DA544 (Cameron Dep.) at 278:1–12, 331:4–332:1.

**B.    HOYA and the Asserted Patents**





██████████████████

████████████████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████

## II.      SUMMARY JUDGMENT STANDARD

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

## III.     ULTRASERT DOES NOT INFRINGE THE '647, '668, '811, '442, & '718 PATENTS

### A.      Legal Standard

_____

████████████████████████████████████████

███████

Infringement issues are "properly decided upon summary judgment when no genuine issue of material fact exists." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Assessing infringement includes a two-step analysis: first, the claims are construed; second, the allegedly infringing device or method is compared to the construed claims. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004). For literal infringement, the patentee must show that the accused device or method contains each limitation of the asserted claims. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* "To infringe a claim under the doctrine of equivalents, an accused device or method must include an equivalent" element for each limitation that is literally absent. *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001).

Ensnarement is "the longstanding principle that the prior art restricts the scope of equivalency that the party alleging infringement under the doctrine of equivalents can assert." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994). "Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofarmor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). "A patentee…bears the burden of proving that it is entitled to the range of equivalents which it seeks." *Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1287 (Fed. Cir. 2017). Ensnarement may be determined as a matter of law on a motion for summary judgment. *DePuy Spine*, 567 F.3d at 1323.

### B.     Argument

#### 1.     UltraSert Does Not Infringe the '668 and '811 Patents Because It Lacks a Perpendicular Lateral Wall

All asserted claims of the '668 patent require "a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the spacing direction that is perpendicular to

12



the lens movement direction." DA1606 ('668 Pat.) at Cl. 1. Similarly, all asserted claims of the '811 patent require "a lateral wall that extends from the bottom wall to the top wall in a direction perpendicular to the optic diameter that is perpendicular to the lens movement direction." DA1581 ('811 Pat.) at Cl. 1. The claims of both patents also require that the spacing direction or optic diameter be perpendicular to the lens movement direction. DA1606 ('668 Pat.) at Cl. 1; DA1581 ('811 Pat.) at Cl. 1. The plain language requires—and all parties agree—that "perpendicular" means "90 degrees." DA565 (Cameron Dep.) at 497:11–14.



Dr. Cameron's "naked opinion," unsupported by admissible evidence, is insufficient for HOYA to avoid summary judgment. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[U]nsupported or conclusory averments are insufficient to avoid summary judgment where the moving party has met its initial burden."); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (similar); *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013) ("[W]e have long held that without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.").

14

In light of the unrebutted evidence that UltraSert's accused "lateral wall" **is not** perpendicular, there is no genuine dispute that UltraSert does not meet every limitation of the asserted claims of the '811 and '668 patents. Thus, as a matter of law, UltraSert does not literally infringe the '668 and '811 patents. Because HOYA does not allege infringement under the doctrine of equivalents, the Court should grant summary judgment of noninfringement with respect to the '811 and '668 patents.

### 2. UltraSert Does Not Infringe Claims 12, 13, 15, and 16 of the '718 Patent and Claims 12–14 and 16 of the '826 Patent Because It Does Not Fold the IOL in the Sequence Required by the Claims

Asserted claim 12 of the '718 patent and asserted claim 12 of the '826 patent, as well as their dependent claims, require folding the IOL in a four-step sequence. DA1497 ('718 Pat.) at Cl. 12; DA1518 ('826 Pat.) at Cl. 12. The Court has already determined that "neither Step 2 nor Step 3 can start until the optic has been folded such that there is a space between folded portions of the optic for a haptic." D.I. 184 at 41–45. For the '826 patent, "Step 2" consists of "moving the free end of the rear haptic, from a position rearward of the optic, over the optic and into a space between folded portions of the optic with the plunger." *Id.* at 42. For the '718 Patent, "Step 2" consists of "moving the end of the rear haptic over the optic and into the space between the folded portions of the optic with the plunger." *Id*. With respect to the UltraSert, there is no genuine dispute that "Step 2" starts before the optic is folded in UltraSert. Accordingly, UltraSert does not meet claim 12 as construed by the Court, and Alcon should be granted summary judgment of noninfringement.

It is undisputed that, as UltraSert's plunger is advanced by the user, "the first thing the plunger touches inside the UltraSert is the rear haptic." *See, e.g.,* DA561 (Cameron Dep.) at 482:16–483:5. At that point, the rear haptic begins to bend before the plunger makes any contact with the optic. *Id*. (Dr. Cameron agreeing that "the first thing that happens is the rear haptic starts

15

moving towards the optic"). HOYA's expert's admission ends the inquiry because Step 2, which includes moving the rear haptic with the plunger, is actually the first thing that happens in UltraSert, occurring before the optic is even contacted by the plunger. *Id*. But per the claims, and the Court's claim construction, this step cannot start until ***after*** the optic begins to fold. D.I. 184 at 42–45.

Alcon's technical expert, Mr. Bumbalough, also explains that only after the rear haptic is pushed by the plunger and the plunger continues to advance in the device, does the plunger contact the optic. DA137–38 (Bumbalough Reb. Rpt.) ¶ 269. As the optic moves through the device, it eventually enters a narrowing section, which causes the sides of the optic to fold upwards. DA132–35, 138 (*Id*.) ¶¶ 263, 270 ("Optic folding only begins when the optic is moved into the 'narrowing portion of the delivery channel. . .'"); ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████ *see also* DA130–37 (Bumbalough Reb. Rpt.) ¶¶ 260–267. None of the evidence cited by Dr. Cameron demonstrates that UltraSert ***first*** folds the optic to create a "space" for the haptics to move into, as required by claim 12. DA215–18, 228–32 (Cameron Op. Rpt.) ¶¶ 575, 577, 729, 731. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████. Dr.

Cameron's unsupported opinion to the contrary does not create a genuine dispute of material fact

and is insufficient to avoid summary judgment. *See, e.g.*, *Minkin v. Gibbons, P.C.*, 680 F.3d 1341,

1352 n.5 (Fed. Cir. 2012).

HOYA also does not explain how UltraSert can simultaneously infringe claim 1 and claim

12 of the '718 and '826 patents. As Mr. Bumbalough explained, those claims are mutually

exclusive: "Claim 1 of both patents requires that the optic **remain unfolded** before the haptic is

pushed over it." DA124–25, 130 (Bumbalough Reb. Rpt.) ¶¶ 213, 257; DA1496 ('718 Pat.) Cl. 1;

DA1518 ('826 Pat.) Cl. 1. Conversely, under claim 12 "neither Step 2 nor Step 3 can start **until**

**the optic has been folded** such that there is a space between folded portions of the optic for a

haptic." D.I. 184 at 42–45; DA124–25, DA130 (Bumbalough Reb. Rpt.) ¶¶ 213, 257; DA1497

('718 Pat.) Cl. 12; DA1518 ('826 Pat.) Cl. 12. Unbelievably,███████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████: 

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████   ██████████       █████████   █████████
       ███████████           ███████████
█████████████████████████████████████

Because there is no genuine dispute that UltraSert does not literally infringe claim 12 as construed by the Court, and HOYA does not allege infringement under the doctrine of equivalents, the Court should grant summary judgment of noninfringement of claims 12, 13, 15, and 16 of the '718 patent and claims 12–14 and 16 of the '826 patent.

> **3.    UltraSert Does Not Infringe the '647, '442, '811, and '668 Patents Because UltraSert Does Not Have a Plunger with a "Slot" or "Recess" "that Extends Proximally from the Lens Contact Surface/Portion," or the Recess "Shown in Figure 14" of the '442 Patent**

All asserted claims of the '647, '442, '811, and '668 patents require the plunger to have a "slot" ('647 patent) or "recess" ('442, '811, and '668 patents) "that extends proximally from the lens contact surface/portion." DA1538–39, 1555–56, 1581–82, 1606–07 ('647, '442, '811, and '668 patents). The accused "slot" or "recess" of UltraSert's plunger, however, indisputably extends from a point ***distal*** of the lens contact surface/portion. Because there is no genuine dispute that UltraSert's plunger does not contain a "slot" or "recess" "that extends proximally from the lens contact surface/portion," the Court should grant summary judgment of noninfringement for these asserted claims.

Engineering drawings and photos show that the UltraSert plunger contains a space for a portion of the rear haptic, which HOYA asserts is a "slot" or "recess." DA173–76, 237–40, 241–42, 259–60, 243–45 (Cameron Op. Rpt.) ¶¶ 210–217, 800–806, 865–870, 934–936, 1040–1042. Critically, these asserted claims require that such a "slot" or "recess" must "extend proximally ***from*** the lens contact surface/portion." *See supra*. The plain and ordinary meaning of "from" indicates a starting point. *See* DA1853 (DX-134); *see also* DA93–101, 114–22, 151–57 (Bumbalough Reb. Rpt.) ¶¶ 82–86, 192–197, 322–326; *ESCO Grp. LLC v. Deere & Co.*, 2023 WL 4199413, at *4 (D. Del. June 22, 2023) (Bryson, J. sitting by designation) (granting summary judgment of non-infringement, construing "extending from," and explaining that "under the plain

18

and ordinary meaning of 'from,' it would not be proper to say, for example, that someone is traveling 'from the courthouse to his office' when that person actually begins his journey three blocks away from the courthouse. Such a statement would be proper only if the person were actually at the courthouse when beginning to travel"); *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F. Supp. 3d 658, 683 (S.D. Tex. 2015) (finding "from" to mean "starting at"). ███████████████

███████████████████████████████████████████████████████████

███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████  As shown above, the lens contact surface/portion is the portion of the plunger that is below the accused "slot" or "recess," and is more proximal compared to the accused "slot" or "recess." *Id*. In other words, the accused "slot" or "recess" does not start at the lens contact portion/surface. Instead, it starts distal of it.

Claim 25 of the '442 patent uses different, but narrower, means-plus-function claim language. DA1539 ('442 Pat.) at cl. 25. The parties agreed—and the Court ordered—that this language requires the plunger to contain "[t]he recess (50) shown in Figure 14 [of the '442 patent]

and equivalents thereof." D.I. 184 at 61. As shown below, Figure 14's "recess" also "extends proximally from the lens contact portion," and therefore is not infringed for the same reasons.[3]

In contrast to the UltraSert, the asserted patents describe a "slot" or "recess" "that extends from"—*i.e.*, starts at—the "lens contact surface/portion."



DA92–93, DA112–13, DA147 (Bumbalough Reb. Rpt.) ¶¶ 80 (annotating '647 patent, figs. 4, 7–8), 190 (annotating '442 patent, fig. 14), 317 (annotating '668 and '811 patents, fig. 24). HOYA's iSert covered products track the images in the asserted patents and have a "slot" or "recess" that starts at the lens contact portion/surface, unlike UltraSert. *See, e.g.*, DA292–96 (Cameron Reb. Rpt., Ex. A) at 7, 60, 91, 123.

While HOYA's expert, Dr. Cameron, asserts that UltraSert has a "slot" or "recess" "that extends proximally from the lens contact surface/portion," her conclusory opinion is contradicted by the evidence she herself cites and is therefore insufficient to avoid summary judgment. *TechSearch*, 286 F.3d at 1372; *Phillips Petroleum*, 157 F.3d at 876; *Brown*, 705 F.3d at 537.

---

[3] HOYA never disclosed an equivalents theory for claim 25 of the '442 patent.

Indeed, despite repeatedly refusing to answer a straightforward question about where the accused "recess" begins (DA563–64 (Cameron Dep.) at 488:3–494:13), she eventually admitted that a "part" of the "recess" "starts from a position forward of the lens contact portion." *Id*. at 492:16–23.

Accordingly, the Court should grant summary judgment of non-infringement for the asserted claims of the '647, '442, '811, and '668 patents.

### 4.    UltraSert Does Not Infringe Claims 1, 4, and 8–11 of the '718 Patent Because Its Plunger Does Not "Push[] the End" of the Rear Haptic

Asserted claims 1, 4, and 8–11 of the '718 patent require the step of "***pushing the end*** of the rear haptic upwardly and forwardly relative to the optic." Because there is no genuine dispute that UltraSert instead pushes the ***middle*** of the rear haptic instead of "the ***end***" of the rear haptic, Alcon should be granted summary judgment of noninfringement.

Claim 1 of the '718 patent requires a user to "push[] the end of the rear haptic upwardly and forwardly relative to the optic." '718 Pat., Cl. 1 ███████████

21

██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Despite the clear requirement of "***pushing the end*** of the rear haptic," HOYA and its expert appear to contend that pushing ***any*** part of the rear haptic satisfies the claims so long as the end of the rear haptic moves. Not so. In contrast to the '826 patent, which merely requires "pushing the rear haptic," the plain language of the claims of the '718 patent requires that a specific portion of the haptic be pushed, *i.e.*, "the end." HOYA is not permitted to rewrite the claims of the '718 patent to be broader in scope. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("To find literal infringement, each limitation of the claim must be present in the accused device. Any deviation from the claim precludes such a finding."). To the extent Dr. Cameron is providing an actual opinion that the end of the rear haptic is pushed, such an opinion fails to avoid summary judgment as it is conclusory and unsupported by the evidence she herself cites. *TechSearch*, 286 F.3d at 1372; *Phillips Petroleum*, 157 F.3d at 876; *Brown*, 705 F.3d at 537.

Accordingly, HOYA cannot demonstrate that UltraSert literally infringes asserted claims 1, 4, and 8–11 of the '718 patent. HOYA also does not allege infringement under the doctrine of equivalents. Thus, there is no genuine dispute that UltraSert does not infringe as a matter of law claims 1, 4, and 8–11 of the '718 patent and that summary judgment is appropriate.

5. **UltraSert Does Not Infringe the '647 Patent Literally or Under the Doctrine of Equivalents Because UltraSert Does Not Meet the "Slot" / "Elongate Slot" Limitations**

All asserted claims of the '647 patent require a plunger with a "slot" or "elongate slot." DA1555–56 ('647 Pat.) Cl. 1–4, 6–7, 10–13. The Court construed "slot" to mean a "groove in the plunger having a bottom face, two side faces, and a back face" and "elongate slot" to mean a

"groove in the plunger that is longer than it is wide, having a bottom face, two side faces, and a back face." D.I. 184 at 22, 61. UltraSert's plunger does not have a "bottom face, two side faces, and a back face" and therefore does not meet the claim limitation literally. Likewise, Dr. Cameron's hypothetical claims—requiring "three side faces"—are not infringed by UltraSert, and HOYA failed to demonstrate that they do not ensnare the prior art, thus precluding HOYA's doctrine of equivalents theory. Accordingly, the Court should grant summary judgment of noninfringement.

### a. UltraSert's Plunger Does Not Have a "Bottom Face, Two Side Faces, and a Back Face"

After carefully considering the intrinsic and extrinsic record, this Court determined that the claims of the '647 patent require the use of a "slot" or "elongate slot" that has a "bottom face, two side faces, and a back face." There is no genuine dispute that UltraSert only has *one* "side face," not "*two* side faces" and a "bottom face." Because UltraSert does not practice the "slot"/"elongate slot" limitations under the Court's construction, there is no literal infringement as a matter of law.

UltraSert uses a plunger to fold the IOL and push it through the nozzle and into a patient's eye. *See supra* § I.A.4. As Alcon's technical expert, Mr. Bumbalough, explains, UltraSert's plunger "captures the haptic of an IOL laying *horizontal* inside of the injector and pushes the rear haptic up a ramp." DA83–85 (Bumbalough Reb. Rpt.) ¶ 61. This results in folding of the rear haptic up and over the lens such that, as the IOL passes through the nozzle, the IOL is folded in the shape of a "taco." *See supra* § I.A.4.



By contrast, the '647 patent is directed to IOL insertion devices that catch the tip of an IOL's haptic from *below*, using a U-shaped plunger tip with *two* "side faces" and a "bottom face." DA1547, 52–54 ('647 Pat.) at 3:10–3:15, 7:59–8:10, Figs. 5A, 5A'. The '647 patent provides that an IOL is "folded into two by use of tweezers" and inserted into the claimed device, at which time the haptics "hang down" from either side of the lens. *Id.* at 7:32–47, 8:1–11 ("the trailing supporting portion 7b which is hanging down…"). To catch the "hanging down" haptic, the '647 patent proposes plunger designs that include *two* faces on either side of a "groove" with a "bottom face":



*Id.*, DA1546–49, Figs. 4, 7, 6B'. The '647 patent includes numerous additional figures like side view 6B' above illustrating how these *two*-side-faced plunger designs manipulate the "hanging down" haptic from below, much like how a shovel or dust bin scoops up material. *Id.* Figs. 5A'–5C', 6A'–6C'. Indeed, as this Court recognized, the "problem" solved by the '647 patent was "to

24

control the trailing loop haptic" and "it is the groove with its ***faces*** that provides this solution." D.I. 184 at 16. However, having "***two*** side faces" on either side of the "bottom face" to control the rear haptic is ***not*** how UltraSert is designed—instead, UltraSert only has ***one*** side face adjacent to a bottom face.

HOYA does not—and cannot—point to any evidence that UltraSert has "two side faces" on either side of the "bottom face" but, despite losing this issue at claim construction, HOYA continues to pursue two meritless infringement arguments.



In doing so, Dr. Cameron renders the descriptors "bottom" and "side" meaningless, reading

25

██████████████████████████████

onto any "face" regardless of its orientation, which ignores the Court's construction and is improper. *Id.* "No party may contradict the court's construction to a jury" and "[o]nce a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). After considering the intrinsic and extrinsic record, the Court determined that "slot" includes a "***bottom*** face" and "two ***side*** faces." D.I. 184 at 14–17. Dr. Cameron's attempt to re-argue claim construction is improper, and her infringement theory based on it should be rejected. *See Not Dead Yet Mfg., Inc. v. Pride Sols., LLC*, 222 F. Supp. 3d 657, 661–62 (N.D. Ill. 2016) (excluding expert's "interpretation of the language used in [claims] in light of the language used in the patent's specification"); *Icon-IP Pty Ltd. v. Specialized Bicycle Comps., Inc.*, 87 F. Supp. 3d 928, 945 (N.D. Cal. 2015) (similar); *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 2020 WL 7263266, at *4–7 (S.D. Tex. Dec. 10, 2020) (excluding expert testimony that conflicted with court's construction).

████████████████████████████████████

████████████████████████████████████ Not

so. UltraSert's DFU contemplates that, in very limited circumstances, rotation may be appropriate, but even then, the ***entire device*** is rotated—not just the plunger tip. DA1637 (DX-108) ("rotate device"). The orientation of the claimed "bottom face" and "two side faces" are relative to the device, not to the eye, thus the single "side face" of UltraSert remains the only "side face"—not a bottom face—even when the entire device is rotated. DA87–90 (Bumbalough Reb. Rpt.) ¶¶ 68–70. Further, HOYA ignores that the claimed "slot" / "elongate slot" appear in method claims that require a portion of the haptic to be in the "slot" "while being bent toward the nozzle." D.I. 184 at 16; DA87–90 (Bumbalough Reb. Rpt.) ¶¶ 68–70. Even in the limited circumstance where a doctor

██████████████████████████████
████████████████████████████

is instructed to rotate the entire device, the doctor is only instructed to rotate the device *after* the rear haptic has been folded. DA1636–37 (DX-108). Only then, when an IOL is in the nozzle and the forward haptic has not folded over the optic, does the DFU instruct a user to temporarily rotate the device. *Id.* at 167. Thus, even if UltraSert is rotated per the DFU, any rotation occurs *after* the "trailing loop haptic" has been "bent toward the nozzle" and the IOL is in "the nozzle with the plunger," *not* "while being bent toward the nozzle." Thus, UltraSert still does not meet the requirements of the method claims of the '647 patent even under HOYA's incorrect interpretation.

Accordingly, the Court should grant summary judgment of no literal infringement.

### b.   HOYA's Hypothetical Claims Fail the Ensnarement Test and Preclude HOYA's Doctrine of Equivalents Theory

Because HOYA knows UltraSert does not have a "slot"/"elongate slot," HOYA advances the backup argument that UltraSert allegedly infringes under the doctrine of equivalents. HOYA's equivalency theory fails as a matter of law because HOYA's hypothetical claims are not met by UltraSert, and HOYA failed to show they do not ensnare the prior art.

To test the scope of equivalency, a patentee may draft a "hypothetical claim that is sufficiently broad in scope to literally encompass the accused product." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000). ███████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████. HOYA

had the burden of persuasion to establish that the hypothetical claims "literally cover[] the accused device" and also "would not ensnare the prior art." *Deputy Spine*, 567 F.3d at 1323–25; *see also id.* at 1325 ("[I]f such a [hypothetical] claim would be unpatentable under 35 U.S.C. §§ 102 or 103, then the patentee has overreached, and the accused device is noninfringing as a matter of law."); *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999) ("…the burden of

persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee");

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001) (similar).

As the accused infringer, Alcon bears only "[t]he burden of producing evidence of prior art to challenge a hypothetical claim." *Interactive Pictures*, 274 F.3d at 1380.

HOYA failed as a matter of law to draft a hypothetical claim literally covering UltraSert. As discussed above, UltraSert has only **one** "side face," not three. *See supra* § III.B.5.a. It defies logic for HOYA to argue that where UltraSert does not literally infringe because it lacks a "slot" with a "bottom face, **two side faces**, and a back face"—the only scenario where doctrine of equivalents would be considered—that UltraSert literally meets a claim requiring "**three side faces**." HOYA's expert provides **no analysis whatsoever** supporting literal infringement of the hypothetical claims, just a one-sentence conclusory opinion:

Further, HOYA failed to prove that the hypothetical claims do not ensnare the prior art. Alcon identified five prior art references that are ensnared by HOYA's equivalency theory: Monarch II with the Monarch II loading forceps (*see supra* § I.A.1), AcrySert (*see supra* § I.A.2), AcrySert C (*see supra* § I.A.3), the Brown Patent (DA449 (DX-19)), and U.S. Pat. No. 5,275,604 (DA1644 (DX-109). Dr. Cameron failed to conduct **any** obviousness or anticipation analysis of the prior art to the hypothetical claims. DA190–91, 193 (Cameron Op. Rpt.) ¶¶ 296, 299–300. But **HOYA** was required to prove whether

the hypothetical claims are patentable over the prior art.[4] HOYA's failure to put forward evidence that its hypothetical claims do not ensnare the prior art under 35 U.S.C. §§ 102 and 103 is dispositive, and the Court should grant summary judgment of noninfringement under the doctrine of equivalents. *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1368 (Fed. Cir. 1999) (affirming grant of summary judgment where plaintiff "d[id] not show any genuine disputes of material fact to satisfy its burden to prove that the range of equivalents which it seeks would not ensnare the prior art"); *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 2018 WL 10910845, at *3-4, 36 (D. Mass. July 30, 2018) (granting summary judgment of noninfringement based on ensnarement where hypothetical claim would have been obvious over the prior art), *aff'd*, 796 F. App'x 741 (Fed. Cir. 2020).

## IV.   HOYA CANNOT PROVE WILLFUL INFRINGEMENT AS A MATTER OF LAW

### A.    Legal Standard

"To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021). "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Id.* at 988. Willfulness requires deliberate or intentional infringement. *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020).

### B.    Argument

HOYA has put forth no evidence that Alcon knew of the '647, '718, '826, or '442 patents before HOYA filed this suit. DA1848 (Alcon's ROG 4 Resp.). In addition, HOYA only sets forth

---

[4] Even if Alcon were required to "show" invalidity of HOYA's hypothetical claim—it is not—the virtually identical nature of the prior art is readily apparent (*see supra* §§ I.A.1–I.A.3) and Alcon's expert explained why the prior art is ensnared. DA103–07 (Bumbalough Reb. Rpt.) ¶¶ 175–180.

████████████████████████████████████

speculative and conclusory theories that Alcon deliberately or intentionally infringed any asserted patent, which fail as a matter of law. Finally, HOYA never disclosed any evidence or argument of purported willful blindness in its interrogatory response, also rendering that issue undisputed. DA1653–56 (HOYA's ROG 23 Resp.). Alcon is therefore entitled to summary judgment of no willful infringement.

### 1. There Is No Evidence of Pre-Suit Knowledge of the '647, '718, '826, or '442 Patents

There is no genuine dispute that Alcon had no knowledge whatsoever—much less knowledge of infringement—of the '647, '718, '826, or '442 patents until HOYA filed this action.[5] As this Court has recognized, "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." D.I. 69 at 3 (citing *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990)). "Willful infringement impliedly requires knowledge of the patent in suit." *Arigna Tech. Ltd. v. Nissan Motor Co.*, 2022 WL 17978913, at *1 (E.D. Tex. Oct. 5, 2022). ████████████████████████

████████████████████████████████████████

██████████████████████████████. Moreover, Alcon developed and released UltraSert years before the asserted patents even issued. *See Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020) (finding "no willfulness as a matter of law" where product was launched in 2016 but asserted patents not issued until 2017).

████████████████████████████████████████

████████████████████████████████████████

---

[5] Alcon admits it was aware of the existence of the '668 and '811 patents as of February 12, 2019. However, as discussed below, knowledge of either patent is not enough, and there is no evidence of conduct amounting to deliberate or intentional infringement of either patent as a matter of law.

███████████████████████████████████████

███████████████████████████████████████ But the notion that a party gains the requisite "knowledge" of asserted patents through awareness of ***unasserted*** patents has been squarely rejected. *CUPP Cybersecurity, LLC v. Trend Micro, Inc.*, No. 3:18-CV-1251, D.I. 329, at *38–41 (N.D. Tex. Jan. 18, 2023) (Lynn, J.) (granting summary judgment of no willfulness where defendant knew of related patents, but no knowledge of asserted patents); *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 1987172, at *2 (E.D. Tex. Apr. 12, 2019) ("knowledge of the parent of one of the asserted patents or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient," recommending grant of summary judgment of no willfulness), *adopted*, 2019 WL 1979866 (E.D. Tex. May 3, 2019).

Through its expert, Dr. Cameron,



███████████████ Such testimony does not create a genuine dispute over whether Alcon had knowledge of the asserted patents. *Hemphill*, 805 F.3d at 538; *see also bioMerieux, S.A. v. Hologic, Inc.*, 2020 WL 759546, at *13 (D. Del. Feb. 7, 2020) (granting summary judgment of no

---

[6] Dr. Cameron's opinions as to Alcon's purported mental state are improper, and Alcon intends to move to exclude them. *See, e.g., Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (concluding that expert's "conclusory assertions regarding [defendant's] state of mind would not be helpful to a jury, were not admissible, and cannot be relied upon by plaintiffs to prevent summary judgment"); *GREE, Inc. v. Supercell OY*, 2020 WL 4059550, at *2 (E.D. Tex. July 27, 2020) ("it is improper for an *expert* to opine as to the subjective belief or intent of a corporate entity"); *X-Tra Light MFG Inc. v. Acuity Brands, Inc.*, 2007 WL 7117888, at *1 (S.D. Tex. Feb. 13, 2007) (granting motion to exclude expert testimony that infringement was willful).

willfulness where plaintiffs contested defendant's lack of knowledge of patents "only with speculation"). Accordingly, there is no genuine dispute that Alcon did not have pre-suit knowledge of the '647, '718, '826, or '442 patents, let alone the requisite the intent to infringe.

**2.      There Is No Evidence of Deliberate or Intentional Infringement After Awareness of Any Asserted Patent**

Whether it learned of the patents through the Complaint or otherwise, the crux of HOYA's willfulness allegation, *i.e.*, Alcon's continued sale of UltraSert, is insufficient as a matter of law to establish willful infringement. The Federal Circuit has routinely rejected the notion that merely selling a product—even after learning of a patent—demonstrates willfulness. *Bayer*, 989 F.3d at 988 (affirming JMOL of no willful infringement where evidence "merely demonstrate[d] Baxalta's knowledge of the [patent] and Baxalta's direct infringement of the asserted claims"); *SRI Int'l Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308–09 (Fed. Cir. 2019) (vacating denial of JMOL of no willfulness where evidence demonstrated "nothing more than proof that Cisco directly infringed").

Likewise, district courts routinely grant motions for summary judgment where, as here, the thrust of a willfulness allegation is mere continued sale of an accused device following suit. *See bioMerieux*, 2020 WL 759546, at *12 (granting summary judgment of no willful infringement where "post-suit activities . . . consist of little more than continued sales of accused products"); *Firtiva Corp. v. Funimation Glob. Grp., LLC*, No. 2:21-CV-00111-JRG-RSP, D.I. 163, at *2–3 (E.D. Tex. June 1, 2022) (recommending summary judgment of no willfulness where plaintiff "simply argue[d] that the jury could infer willfulness based on [defendant] continuing to offer the accused product"); *Intell. Ventures I LLC v. Symantic Corp.*, 234 F. Supp. 3d 601, 611–612 (D. Del. Feb. 13, 2017) (granting summary judgment of no willful infringement there was "no evidence of behavior beyond typical infringement"), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018); *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 421–

32

422 (D. Del. May 22, 2018) (finding post-suit selling of accused products "insufficient" and granting summary judgment of no willfulness), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019).

There is no genuine dispute that Alcon has not exhibited conduct supporting a finding of "deliberate or intentional" infringement as merely selling UltraSert does not amount to willful infringement as a matter of law. Indeed, that Alcon was selling UltraSert for years before the asserted patents' issuance further prevents a finding of willfulness. *See supra* §§ I.A.4, I.B. Accordingly, the Court should grant summary judgment of no willful infringement.

## V.   CLAIMS 1-6 OF THE '826 PATENT ARE ANTICIPATED AS A MATTER OF LAW BY ALCON'S ACRYSERT PRODUCT

### A.   Legal Standard

"Although anticipation under 35 U.S.C. § 102 is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008). "A patent claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference." *Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1038 (Fed. Cir. 2011). "[T]he dispositive question is whether a skilled artisan would 'reasonably understand or infer' from a prior art reference that every claim limitation is disclosed in that single reference." *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373 (Fed. Cir. 2020).

### B.   Argument

There is no genuine dispute that AcrySert anticipates asserted claims 1–6 of the '826 Patent.[7] Further, if the Court were to deny Alcon's motion for summary judgment of noninfringement with respect to claims 1, 4, and 8–11 of the '718 patent and find that the claims

---

[7] Documents in this section refer to two versions of AcrySert: "2005 AcrySert" and "2007 AcrySert." Both devices independently anticipate claims 1–6 of the '826 patent.

are broad enough to encompass pushing any portion of the rear haptic (*see supra* § III.B.4), AcrySert also anticipates those claims. Accordingly, Alcon should be granted summary judgment of invalidity under 35 U.S.C. § 102.

### 1.      It Is Undisputed that AcrySert Is Prior Art to the '718 and '826 Patents

The evidence confirms this: both the 2005 and 2007 versions of AcrySert were on sale in the U.S. more than one year before January 7, 2009, HOYA's earliest claimed priority date of the '826 and '718 Patents,[8] making both versions prior art under pre-AIA 35 U.S.C. § 102(b). *See supra* § I.A.2.

### 2.      Despite Being Aware of AcrySert, HOYA Did Not Disclose the Device to the USPTO

---

[8] Alcon disputes HOYA is entitled to these dates, and it is HOYA's burden to show its entitlement to such dates. However, even under the earliest alleged priority date, AcrySert is still prior art.

██████████████████

██████████████████████████████████████████████

█████████████████████                    Thus, the USPTO never had a chance to consider

AcrySert prior to issuing the asserted patents. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111

(2011) ("[I]f the PTO did not have all material facts before it, its considered judgment may lose

significant force.").

### 3.  Claims 1–6 of the '826 Patent Are Anticipated by AcrySert

Claim 1 of the '826 patent is an independent claim to a method of using an IOL insertion

device. Claims 2–6 depend from claim 1 and add steps or details to the claimed method. There is

no genuine dispute that AcrySert clearly and convincingly discloses each and every element of

claims 1–6 of the '826 patent and thus anticipates those claims. Indeed, HOYA does not (and

cannot) dispute the vast majority of the limitations of claims 1-6 are in fact disclosed by AcrySert.

Instead, HOYA's expert, Dr. Cameron, argues that Alcon has allegedly not shown two limitations

related to the claimed plunger's "indentation" are met (DA280–83 (Cameron Reb. Rpt.) ¶¶ 754–

762), but her positions are without merit, as explained below.

### a.  Claim 1 of the '826 Patent Is Anticipated by AcrySert.

Claim 1 of the '826 Patent recites:

*1. A method performed by an intraocular lens insertion device on an intraocular lens, the intraocular lens including an optic, a forward haptic having an end and a rear haptic having an end, the insertion device including a nozzle, a transition section and a plunger having a forward region with a side wall and a bottom wall that together define an indentation and is configured to receive a portion of the rear haptic, the method comprising the steps of:*

*pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic;*

*pushing the rear haptic such that the end of the rear haptic passes over the optic, while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger in such a manner that the rear haptic is bent and a portion of the rear haptic is received in the indentation;*

*folding a portion of the optic such that there is a space between folded portions of the optic; and*

*pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic.*

Under the Court's construction, "bottom wall" is defined as the "wall defining the lowest lateral side of the slot or indention," and "side wall" is defined as the "wall defining a lateral side of the slot or indention extending upwardly from the bottom wall." D.I. 184 at 61.

First, there is no dispute that AcrySert is "an intraocular lens insertion device" that medical practitioners use to perform a method on an intraocular lens. DA465, 468–470 (AcrySert DFU); DA1221 (DX-71); DA598 (DX-27); DA542 (Cameron Dep.) at 323:21–325:7; DA425 (Brown Dep.) at 84:22–25. As discussed above, AcrySert includes the AcrySof lens—the same lens that is in UltraSert device. *See* DA465 (AcrySert DFU); DA651 (DX-34); DA418–19 (DX-17)at 0:00– 0:11; DA1224 (DX-71) (annotated). The AcrySof lens includes an optic, a forward haptic having an end and a rear haptic having an end (see below right). *See supra* § I.A.; *see also* DA324 (DX-8); DA25, 28, 45–46 (Bumbalough Op. Rpt.) ¶¶ 54, 96, 749. AcrySert also includes a "nozzle," a "transition section," and a "plunger." DA465 (AcrySert DFU) (annotated, below left); *id.* at DA469–470; *see also* DA1236–37 (DX-72); DA1221–12 (DX-71) Slides 2–3; DA497, 506–507, 508–09 (DX-23); DA576 (Olson Dep.) at 103:21–105:3; DA534 (Cameron Dep.) at 276:10–12; DA45–47 (Bumbalough Op. Rpt.) ¶¶ 749–750.



████████████████████████████

AcrySert's plunger includes "a forward region with a side wall and a bottom wall that together define an indentation," as shown at right. DA341 (DX-8) (annotated, showing 2007 AcrySert plunger on left, 2005 AcrySert plunger on



right); DA1786–89 (Brown Decl.) ¶¶13–18; DA482–84 (DX-20) (showing 2005 AcrySert and 2007 AcrySert plungers); DA508–09 (DX-23); 26 DA48–50 (Bumbalough Op. Rpt.) ¶ 752.

This indentation is "configured to receive a portion of the rear haptic," as shown below. DA600 (DX-27) (annotated, left); *see also* DA433–34 (Brown Dep.) at 125:18–126:4; DA1699 (DX-115, Brown Ex. 50) (showing 2005 AcrySert and 2007 AcrySert plungers, with red circle indicating indentation for rear haptic on 2007 AcrySert); DA1786–89 (Brown Decl.) ¶¶13–18, 23–25; DA48–50 (Bumbalough Op. Rpt.) ¶ 752; DA469–70 (AcrySert DFU) (AcrySert DFU at Steps 7 and 8, annotated, right).



And while HOYA's expert, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ as shown above, that opinion is contradicted by the evidence, and her unsupported assertion is insufficient to avoid summary judgment. *TechSearch*, 286 F.3d at 1372; *Phillips Petroleum*, 157 F.3d at 876.

████████████████████████████████

There is also no genuine dispute that AcrySert performs each of the claimed method steps. First, AcrySert performs the step of "pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic." The end of the rear haptic sits on a ramp inside AcrySert. Ex. 125 (ALCON_NDTX_00008446) at Slide 1; DA1224, 35 (DX-71); DA1703–05 (DX-116); DA503–04 (DX-23); DA433 (Brown Dep.) at 122:16–125:1; DA1699 (DX-115, Brown Ex. 50) (showing main body of 2005 AcrySert and 2007 AcrySert, with red circle indicating ramp on 2005 AcrySert); DA1789 (Brown Decl.) ¶20. As the plunger for AcrySert is advanced, the rear haptic is pushed forward and the end of the haptic travels forwardly and upwardly along the ramp, meaning the rear haptic moves upwardly and forwardly relative to the optic. *See* EDA526, 543 (Cameron Dep.) at 191:25–194:2, 326:7–327:9; DA430, 433 (Brown Dep.) at 112:5–18, 122:16–125:1; DA1789 (Brown Decl.) ¶¶20–22; Ex. 127 (HOYA00580306) at 309; DA51–53 (Bumbalough Op. Rpt.) ¶ 753. The result is that AcrySert's rear haptic is folded upward and forward above the lens. DA469–470 (AcrySert DFU) (at Steps 7 and 8); DA514 (DX-23) ("The plunger can then be pushed and the device will automatically place the trailing haptic onto the optic and then fold and deliver the lens."); DA1789 (Brown Decl.) ¶22, 26; ███████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

AcrySert also discloses "pushing the rear haptic such that the end of the rear haptic passes over the optic, while the portion of the optic over which the rear haptic passes remains unfolded, with the forward region of the plunger in such a manner that the rear haptic is bent and a portion of the rear haptic is received in the indentation." As Mr. Brown explained and is shown in the AcrySert documentation, the rear haptic is pushed over the optic before the optic is folded, with

the forward region of the plunger such that the rear haptic is bent and a portion of it is received in the indentation on the AcrySert plunger tip. DA1789 (Brown Decl.) ¶¶21–26; DA431–34 (Brown Dep.) at 116:22–118:5, 120:2–23, 122:16–124:2, 125:2–126:4; DA1699 (DX-115, Brown Ex. 50) (showing the 2005 and 2007 AcrySert plunger, with red circle indicating indentation for the rear haptic on 2007 AcrySert); *see also* DA514 (DX-23) ("The plunger can then be pushed and the device will automatically place the trailing haptic onto the optic ***and then fold and deliver the lens***."); 26DA53–58 (Bumbalough Op. Rpt.) ¶¶ 754–755; DA1707–08 (DX-117) at 0:02; DA418–19 (DX-17); DA689, 698 (Watanabe Dep.) 136:17–137:6, at 214:11–16; DA1693–94 (DX-114). This makes sense because when AcrySert is operated, the plunger first contacts and begins to bend the rear haptic before it contacts the optic and before the optic is folded. DA1707–08 (DX-117) at 0:02; DA53–58 (Bumbalough Op. Rpt.) ¶¶ 754–755. As Mr. Brown explains and the documentation shows, the indentation on the tip of the plunger provides space for the haptic to sit while the folding occurs. DA431–34 (Brown Dep.) at 116:22–118:5, 120:2–23, 125:2–126:4; DA1789 (Brown Decl.) ¶¶18, 23–25; DA482–84 (DX-20):



This is the only other element that HOYA even disputes, and its expert, Dr. Cameron, argues that Alcon has not shown that AcrySert discloses the rear haptic going into a slot or indentation, or that "a portion of the rear haptic is received in the indentation."



These admissions, in addition to the evidence cited above, doom HOYA's argument that AcrySert is not anticipatory. HOYA cannot avoid summary judgment based on Dr. Cameron's conclusory assertions—which are directly contradicted by her own testimony and the evidence. *TechSearch*, 286 F.3d at 1372; *Phillips Petroleum*, 157 F.3d at 876.

AcrySert also discloses "folding a portion of the optic such that there is a space between folded portions of the optic." After the rear haptic is moved over the optic, the plunger pushes the optic forward and into the narrowing transition section, which folds the optic such that there is a space between the folded portions of the optic. DA1707–08 (DX-117) at 0:06–0:15; DA418–19 (DX-17) at 0:37– 0:45; DA430, 433 (Brown Dep.) at 112:5–113:2, 122:16–124:6; DA469–470 (AcrySert DFU); 26 DA56–58 (Bumbalough Op. Rpt.) ¶ 756;

█████████████████████████████████ DA689 (Watanabe Dep.) 136:17–137:6;

DA1693–94 (DX-114); DA1683–84 (Inoue Dep.) at 112:22–114:4; DA543 (Cameron Dep.) at

327:10–328:8. ████████████████████████████████████

████████████████████

AcrySert also discloses the last claimed step of "pushing the intraocular lens through the

nozzle with the forward region of the plunger while the end of the rear haptic is in the space

between the folded portions of the optic." As the AcrySert plunger is advanced, it pushes the folded

IOL through the nozzle with the plunger's forward region. *See* DA469–470 (AcrySert DFU) (at

Steps 7–8); DA600 (DX-27); DA514 (DX-23) ("The lens is delivered through a nozzle tip the size

of the current MONARCH® II B cartridge nozzle tip and is folded in the same anterior up

orientation as in the MONARCH® II cartridges."); DA1707–8 (DX-117) at 0:12–0:48; DA418–

19 (DX-17) at 0:50–1:01. As Mr. Brown explained, when the IOL is pushed through the nozzle,

the haptics are folded over the optic, which itself is folded around the haptics in a "taco" shape.

DA430, 433 (Brown Dep.) at 112:5–113:2, 122:16–124:6; DA1789–90 (Brown Decl.) ¶¶26–28.

Thus, the haptics are "in the space between the folded portions of the optic." DA430, 433 (Brown

Dep.) at 112:5–113:2, 122:16–124:6. Alcon's technical expert, Mr. Bumbalough, also opined that

AcrySert discloses these limitations. DA58–60 (Bumbalough Op. Rpt.) ¶¶ 757–759. HOYA's

expert does not dispute that AcrySert discloses this claim element. DA280–83 (Cameron Reb. Rpt)

¶¶ 754–762. There is no genuine dispute that AcrySert discloses every element of claim 1.

Because there is no genuine dispute that AcrySert clearly and convincingly discloses every

limitation of Claim 1 of the '826 Patent, summary judgment should be granted that AcrySert

anticipates Claim 1 of the '826 Patent.

41

**b.      Claims 2–6 of the '826 Patent Are Anticipated by AcrySert**

There is no genuine dispute that the other limitations in dependent claims 2–6 of the '826 patent are anticipated by AcrySert. Indeed, HOYA and its expert do not dispute these limitations, merely arguing that claim 1 is allegedly not met. DA283 (Cameron Reb. Rpt.) ¶ 764.

Dependent claim 2 adds "wherein folding a portion of the optic comprises folding a portion of the optic with the transition section such that there is a space between folded portions of the optic." AcrySert's operation includes folding the IOL as it moves through the device. DA430, 433 (Brown Dep.) at 112:5–113:2, 122:16–124:6; DA1789–90 (Brown Decl.) ¶¶ 19–28; DA1707–08 (DX-117) at 0:06–0:15; DA418–19 (DX-17) at 0:37– 0:45; DA543–44 (Cameron Dep.) at 327:10– 328:8; DA469–470 (AcrySert DFU); DA60–62 (Bumbalough Op. Rpt.) ¶¶ 760–761.

Dependent claim 3 adds "pushing the intraocular lens through the nozzle comprises pushing the intraocular lens through the nozzle with the forward region of the plunger while the end of the rear haptic is in the space between the folded portions of the optic and the end of the rear haptic faces in a lens travelling direction." The AcrySert DFU, advertisements, testimony from Mr. Brown, and videos show that the IOL is pushed through the nozzle with the plunger, while (1) the end of the rear haptic is in the space between the folded portions of the optic and (2) the end of the rear haptic faces the direction the lens is travelling:

 

DA470 (AcrySert DFU) (annotated, arrow indicating lens travelling direction); DA600 (DX-27); *see also* DA430, 433 (Brown Dep.) at 112:5–113:2, 122:16–124:6; DA1789–90 (Brown Decl.)

¶¶19–28; DA63–64 (Bumbalough Op. Rpt.) ¶¶ 762–64; DA543–44 (Cameron Dep.) at 327:10–328:8.

Dependent claim 4 adds "bending the forward haptic such that the end of the forward haptic moves into the space between the folded portions of the optic." As shown below and not disputed by HOYA, this is met by the AcrySert:



DA469–470 (AcrySert DFU); DA600 (DX-27); DA1789–90 (Brown Decl.) ¶¶¶19–28; DA1707–08 (DX-117) at 0:06–0:17; DA430, 433 (Brown Dep.) at 112:5–113:2, 122:16–124:6; DA64–66 (Bumbalough Op. Rpt.) ¶¶ 765–766; DA543–44 (Cameron Dep.) at 327:10–328:8, 329:9–20.

Dependent claim 5 adds "wherein the intraocular lens insertion device defines a lens travelling axis" and "the method further comprises the step of storing the lens in the insertion device with the optic parallel to the lens travelling axis and the rear haptic positioned at a different angle than the forward haptic relative to the lens travelling axis." As illustrated below-left and not disputed by HOYA, AcrySert defines a lens travelling axis. DA465 (AcrySert DFU) (annotated); 26DA48, DA67 (Bumbalough Op. Rpt.) ¶¶ 751, 767.



There is no dispute that the IOL is stored within AcrySert such that the optic is parallel to the lens travelling axis and the rear haptic is positioned at a different angle than the forward haptic relative to the lens travelling axis (see above, right). DA1160 (DX-71) (annotated), Slide 5; *see also* DA586 (DX-26); DA67–70 (Bumbalough Op. Rpt.) ¶¶ 767–771; DA1789 (Brown Decl.) ¶¶20–22.

Dependent claim 6 adds "wherein the intraocular lens insertion device defines a lens travelling axis" and "pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic comprises pushing the rear haptic such that the end of the rear haptic moves upwardly and forwardly relative to the optic while the end of the rear haptic is on a surface that is not parallel to the lens travelling axis." As discussed above, AcrySert includes a "lens travelling axis" and a ramp (a "surface not parallel to the lens travelling axis") that assists in moving the rear haptic upward and forward, over the optic. DA1151 (DX-71); DA1703–05 (DX-116); DA1707–08 (DX-117) at 0:02; DA1236–37 (DX-72); DA543 (Cameron Dep.) at 326:7–12, 327:2–9; DA70–75 (Bumbalough Op. Rpt.) ¶¶ 772–776. As Mr. Brown explained and the undisputed evidence shows, the plunger pushes the rear haptic up and onto the optic aided by a ramp. DA430, 433 (Brown Dep.) at 112:5–18, 122:16–124:6; DA1699 (DX-115, Brown Ex. 50) (showing 3D rendering of main body for 2005 AcrySert and 2007 AcrySert, each with ramp); DA1789 (Brown Decl.) ¶¶19–22.

Accordingly, the Court should grant summary judgment that AcrySert anticipates claims 2–6 of the '826 Patent.

### 4. If Alcon's Motion for Summary Judgment of Noninfringement of the '718 Patent Is Denied, Then Claims 1, 4, and 8–11 of the '718 Patent Are Also Anticipated by AcrySert

As discussed above, Alcon should be granted summary judgment of noninfringement of claims 1, 4, and 8–11 of the '718 patent because the undisputed evidence demonstrates that operating UltraSert does not push "***the end*** of the rear haptic upwardly and forwardly relative to the optic." *See supra* § III.B.4. The only material difference between claim 1 of the '826 patent and claim 1 of the '718 patent is that the '718 patent requires "***pushing the end*** of the rear haptic," rather than "pushing the rear haptic." The other textual differences between the '826 and '718 patents are immaterial (*e.g.*, use of "indentation" versus "slot"); the claims are identical in scope.

Should the Court find that the "pushing the end" limitation is broad enough to encompass pushing any part of the rear haptic, rather than just the end, then AcrySert also anticipates claims 1, 4, and 8–11 of the '718 patent for the same reasons as the '826 patent. *See supra* § V.B.3. Indeed,

Accordingly, should the Court deny Alcon's motion for summary judgment with respect to noninfringement of the '718 patent, then it should grant summary judgment of invalidity because there is no genuine dispute that AcrySert anticipates claims 1, 4, and 8–11 of the '718 patent.

## VI. THE '647 PATENT IS NOT ENTITLED TO CLAIM PRIORITY TO JP2007-182535

HOYA asserts that the '647 patent is entitled to claim priority to JP2007-182535 ("JP '535"), filed in Japan in 2007. However, there is no genuine dispute that the '647 patent is not entitled as a matter of law to claim priority to JP '535 because an intermediate application in its application chain does not include a specific reference to JP '535 as required by law, thereby

████████████████████████████

breaking the priority chain.

To claim priority to an earlier patent application, a patent must include a "specific reference to the earlier filed application." 35 U.S.C. § 120. This requires "each application in the chain of priority to refer to the prior applications." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010); *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363–64 (Fed. Cir. 2014) (finding priority claim invalid where intermediate applications "failed to specifically reference the earlier filed applications in the priority chain"). "Section 120 places the burden on the patent owner to provide a clear, unbroken chain of priority." *Droplets, Inc. v. E*Trade Bank*, 887 F.3d 1309, 1317–1318 (Fed. Cir. 2018).

The '647 patent was filed on July 29, 2015, and purports to be a continuation of U.S. Pat. App. No. 12/667,510, which was filed as PCT/JP2008/062382 on July 9, 2008 and issued as U.S. Pat. 9,114,006 ("'006 patent"). However, the '647 patent is not entitled to claim priority to JP '535 because the '006 patent—to which the '647 claims priority—does not include a specific reference to JP '535. DA302–03 (Kunin Rpt.) ¶¶ 53–54. ████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████ While HOYA might be able to seek correction of the missing priority claim, it has not done so. Regardless, the correction (if ever sought, and if ever granted by the PTO) would have no legal effect on this litigation: the Federal Circuit has confirmed that under 35 U.S.C. 255, a "certificate of correction is only effective for causes of action ***arising after*** it was issued." *Sw. Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1294 (Fed. Cir. 2000); *see also* 35

U.S.C. § 255 (certificates of correction only have effect "for ***causes thereafter arising***"); *Novo Indus., LP v. Micro Molds Corp.*, 350 F.3d 1348, 1356 (C.D. Cal. 2003). "For causes of action that arise ***before*** the correction becomes effective, the patent must be considered ***without*** the benefit of the certificate of correction." *Novo*, 350 F.3d at 1356; *see also H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1334 (Fed. Cir. 2014). Accordingly, there is no genuine dispute that the '647 patent is not entitled to claim priority to JP '535, and summary judgment should be granted.

## VII.   HOYA CANNOT MEET ITS EVIDENTIARY BURDEN TO ESTABLISH PRE-SUIT NOTICE OF ALLEGED INFRINGEMENT

### A.   Background on HOYA's Allegedly Covered Products

### B.   Legal Standard

Under 35 U.S.C. § 287(a), "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented" by marking their

47

products in a manner provided by the statute. 35 U.S.C. § 287(a). "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017) (quoting 35 U.S.C. § 287(a)). "A patentee who makes or sells patented articles can satisfy the notice requirement of § 287 either by providing constructive notice—*i.e.*, marking its products—or by providing actual notice to an alleged infringer." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020). "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

### C.     Argument

This Court should grant summary judgment that HOYA is not entitled to damages for alleged infringement of the '442, '668, and '811 patents prior to December 11, 2020, when HOYA filed its complaint for patent infringement ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



49



if

Accordingly, the Court should grant summary judgment that HOYA is not entitled to pre-suit damages for alleged infringement of the '442, '668, and '811 patents. *Arctic Cat*, 950 F.3d at 864 (affirming summary judgment of no pre-suit damages where licensee sold unmarked products); *VLSI Tech. v. Intel Corp.*, 2021 WL 2773013, at *3-4 (W.D. Tex. Apr. 12, 2021).

## VIII.   CONCLUSION

For the above reasons, the Court should grant partial summary judgment in favor of Alcon on the following issues: (1) UltraSert does not infringe the asserted claims of the '647, '442, '668, '811, and '718 patents, or claims 12–14 and 16 of the '826 patent; (2) Alcon did not willfully infringe the asserted patents; (3) claims 1–6 of the '826 patent are invalid under pre-AIA 35 U.S.C. § 102(b) as anticipated by Alcon's prior art AcrySert device; (4) the '647 patent is not entitled to claim priority to JP2007-182535; and (5) HOYA may not recover pre-suit damages for alleged infringement of the '442, '668, and '811 patents.

Respectfully submitted,                    Dated: August 18, 2023

                                           */s/ Ryan Kane*

Jeremy A. Fielding
Texas Bar No. 24040895
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Tel: (214) 972-1754
Fax: (214) 972-1771
jeremy.fielding@kirkland.com

Gregg F. LoCascio (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20005
Tel: (202) 389-5000
Fax: (202) 389-5200
gregg.locascio@kirkland.com

Jeanne M. Heffernan (*pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Tel: (512) 678-9100
Fax: (512) 678-9200
jheffernan@kirkland.com

Ryan Kane (*pro hac vice*)
Mark McLennan (*pro hac vice*)
Peter Evangelatos (*pro hac vice*)
Matt Hershkowitz (*pro hac vice*)
N. Kaye Horstman (*pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
Tel: (212) 446-4800
Fax: (212) 446-4900
ryan.kane@kirkland.com
mark.mclennan@kirkland.com
peter.evangelatos@kirkland.com
matt.hershkowitz@kirkland.com
kaye.horstman@kirkland.com

Noah S. Frank (*pro hac vice*)
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 385-7500
Fax: (617) 385-7501
noah.frank@kirkland.com

ATTORNEYS FOR DEFENDANTS
ALCON INC., ALCON LABORATORIES,
INC., ALCON RESEARCH, LLC, and
ALCON VISION LLC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 18, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

/s/ Ryan Kane

Ryan Kane